DAVID B. GOLUBCHIK (State Bar No. 185520)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYG.COM; CTP@LNBYG.COM

(Proposed) Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| In re | Case No.: 8:26-bk-11202-SC |
|---|---|
| ANDREW STUPIN and JULIE STUPIN, | Chapter 11 Case |
| Debtors and Debtors in Possession. | **APPLICATION OF CHAPTER 11 DEBTORS TO EMPLOY FORCE TEN ADVISORS, LLC AS FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. § 327(a) WITH COMPENSATION PURSUANT TO 11 U.S.C. §§ 330, 331; DECLARATION OF NICHOLAS RUBIN IN SUPPORT THEREOF** |
| | [No hearing required unless requested] |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE:**

Andrew and Julie Stupin, debtors and debtors in possession in the above-referenced chapter 11 bankruptcy case (the "Debtors"), respectfully submit this Application ("Application") for authority to employ Force Ten Advisors, LLC ("Force 10") as their financial advisor, pursuant to 11 U.S.C. § 327(a) with compensation pursuant to 11 U.S.C. § 330.  The Debtors seek to employ Force 10 effective as of April 17, 2026, the date of the Debtors' bankruptcy filing.

///

## I.

## <u>CASE BACKGROUND</u>

1.      Andrew Stupin ("<u>Andrew</u>") is a real estate investor.  Codebtor Julie Stupin ("<u>Julie</u>") is Andrew's wife.   Andrew and Julie commenced their bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "<u>Bankruptcy Code</u>") on April 17, 2026 (the "<u>Petition Date</u>").  The Debtors continue to manage their financial affairs, operate their business, and administer their bankruptcy estate as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      Andrew was born in 1947 in San Gabriel, California, and shortly thereafter moved to Monterey Park, where he excelled in school and sports.  Wanting to be a professional baseball player, Andrew excelled at his endeavors through high school and college where an injury forced him to change his future plans and aspirations.

3.      Although Andrew's initial aspirations after sports were become an attorney, his interests turned to teaching, so he pursued and obtained a secondary teaching credential after his B.A. Degree, including teaching Sunday School at his family church where he grew up.

4.      Andrew obtained a teaching position in the highly acclaimed Huntington Beach High School District at Edison High School right after receiving his teaching credential.  Although challenging, Andrew enjoyed his new career, including being voted "Teacher of the Year" several times.  In fact, Andrew helped start the Advanced Placement (AP) for Government in Orange County, where a student can take an AP class and take the national AP test to gain college credits while in high school. This program was very successful and has gained popularity over the years throughout the country.

5.      In the 1970's, Andrew started his journey in real estate. After saving money from his teaching career, Andrew bought his first investment for $28,000 – two (2) separate houses on two (2) lots. That was in 1972 and prices were starting to increase rapidly in the "Great Orange County" boom. Andrew lived in one house and rented out the other. The rent from the rental was more than the mortgage. It was then that Andrew caught the real estate bug and thought this to be something to move forward on.

6.      Over the decades, Andrew invested in many properties not only throughout Orange County, but California and other states.  Andrew always focused on value added and income generating properties.  Over time, many friends and others asked to invest alongside Andrew in such investments.  His success continued to grow.

7.      Approximately 10 years ago, Andrew (and his friend and co-investor Gerald Marcil) were approached by a third party (Mahender Makhijani) who represented that he had connections with many lenders to acquire distressed loans and real estate.  He proposed to work together to acquire loans and properties.

8.      Through the parties' relationship, Mr. Makhijani maintained all relationships with lenders and financing sources and managed the investments.  Mr. Makhijani's staff at Continuum provided all accounting and documentation and financing with respect to such investments.

9.      In the last several years, Mr. Makhijani obtained numerous warehouse loans from lenders including, without limitation, approximately $98 million from Western Alliance Bank, and approximately $60 million from Zions Bank.  Mr. Makhijani represented to the lenders that the purpose of the loans was to refinance existing properties and acquire new properties.  The lenders assert that Andrew and Mr. Marcil signed guaranties for such debts.

10.     In the fall of 2025, Andrew learned that the foregoing banks have sued him on account of the alleged guaranties based on the follows:

    a.  Mr. Makhijani drew down on the entirety of the warehouse loans;

    b.  Mr. Makhijani did not use the proceeds of the warehouse loans to refinance the existing debt or to acquire new assets for the borrowers;

    c.  There is no information where the loan proceeds went or how they were utilized;

    d.  The lenders did not conduct title searches on any of the alleged properties to be refinances;

    e.  The lenders did not request or receive reconveyances of alleged liens that were to be refinanced;

    f.  The lenders did not open escrows for any of the financing; and

3

g.   The lenders did not conduct any due diligence while Mr. Makhijani withdrew almost $200 million without oversight, supervision or control.

11.   In addition to the foregoing, Andrew learned that Mr. Makhijani recorded fraudulent liens on Debtors' personal properties (held through wholly-owned LLC's) and pledged the fraudulent loans to Western Alliance Bank.

12.   The foregoing conduct resulted in protracted litigation.  It is important to point out that none of the collection lawsuits from the lenders have asserted that Andrew engaged in any wrongful conduct.  They simply assert that Andrew is obligated for their self-inflicted losses through the alleged guaranty.

13.   Approximately 90 days prior to the Petition Date, Zions Bank obtained a writ of attachment as to Debtors' assets.  The timing of this case was intended to terminate the writ of attachment and preserve all assets for the benefit of all creditors.

14.   Through this case, the Debtors intend to preserve and operate their assets while prosecuting claims against lenders and third parties for the damage caused to the Debtors and their assets.  Pending the resolution of such actions, the Debtors intend to comply with their obligations as debtors in possession.

**II.**

**EMPLOYMENT OF FINANCIAL ADVISOR**

15.   The Debtors require Force 10 to serve as their financial advisor in this case to render the following types of professional services:

a.   Assisting in the formulation and preparation of financial projections, supporting methodology, key assumptions, and rationale;

b.   Performing appropriate financial analysis and evaluation of Debtors' operations;

c.   Analyzing Debtors' existing debt, liens, and capital structure, and evaluating strategic alternatives available to Debtors, including refinancing, asset dispositions, and reorganization;

///

4

    d.      Preparing supporting financial statements, proforma budgets, and projections;

    e.      Providing periodic reporting to Debtors and other parties as appropriate;

    f.      Assisting in negotiations with creditors to restructure, compromise, or otherwise resolve Debtors' liabilities;

    g.      Assisting legal counsel and Debtors in connection with any court filings or proceedings,

    h.      Performing forensic accounting services, including the tracing, analysis, and reconstruction of financial transactions, accounts, and records;

    i.      Conducting issue analysis and financial review in support of pending or anticipated litigation;

    j.      Preparing expert reports, declarations, and other written analyses as required in connection with litigation or court proceedings;

    k.      Attending and participating in depositions and providing deposition and trial testimony as required; and

    l.      Such other tasks as may be mutually agreed upon by Force 10 and Debtors.

16.      Force 10 is a financial advisory services firm specializing in corporate restructuring, challenged business, litigation, and other special situations. Force 10 has substantial experience with providing financial advisory services for individuals in chapter 11 including analyzing business operations, financial modeling, operational analyses, capital raising, asset sales, serving in the capacity of financial advisor, and developing reorganization strategies. A copy of Force 10's resume is attached to the Declaration of Nicholas Rubin ("Rubin Declaration") as **Exhibit "1"** and is incorporated herein by this reference.

17.      The professionals who comprise Force 10 have a thorough understanding of the restructuring process, have substantial experience in restructurings and advising constituents in chapter 11, including debtor, shareholders, lenders, and creditor committees.

18.      Force 10 will render services to the Debtors at Force 10's regular hourly rates, which may be subject to adjustment from time to time, which will be paid for by Debtors' estate.

Force 10's current hourly rates are set forth in its engagement letter attached to the Rubin Declaration as **Exhibit "2."**

19.    Force 10 intends to apply to this Court for compensation in conformity with the requirements of Bankruptcy Code Sections 330 and 331.   Force 10 understands that its compensation in the Debtors' case will be subject to the approval of the Court.   At the conclusion of this case, Force 10 will file an appropriate application seeking final allowance of all fees and costs, regardless of whether interim compensation has been paid to Force 10.   Upon allowance of such fees and costs, the Debtors will pay to Force 10 the difference between the amounts allowed to Force 10 and any interim compensation paid to Force 10.   Force 10 understands and agrees that, if aggregate interim payments made to Force 10 exceed the amount that is ultimately allowed to Force 10, Force 10 will be required to, and will, promptly repay to the Debtors such difference.

20.    The Debtors and Force 10 agreed that Force 10 shall receive a retainer for this case of $371,855.89 (the "Retainer").   Force 10 received the foregoing payment prior to the commencement of this case.

21.    Except as described above, Force 10 has not been paid any other money by the Debtors at any other time.   Force 10 has placed the Retainer as of the Petition Date into a segregated account.

**III.**

**ADDITIONAL DISCLOSURES PURSUANT TO RULE 2014 OF THE FEDERAL RULES**

**OF BANKRUPTCY PROCEDURE**

22.    As set forth in the Rubin Declaration, Force 10 has conducted conflict checks with respect to the Debtors and the Debtors' creditors.   Based upon such conflicts checks, Force 10 believes that it does not hold or represent any interest adverse to the Debtors or the Debtors' estate that would impair Force 10's ability to perform objectively professional services for the Debtors, in accordance with Section 1103 of the Bankruptcy Code.

23.    To the best of Force 10's knowledge, neither Force 10 nor any of its professionals:  (i) is a creditor, an equity security holder, or an insider of the Debtors as of the Petition Date; (ii) is or was, within two (2) years before the Petition Date, a director, officer or

6

employee of the Debtors; (iii) is not and was not an investment banker for any outstanding security of the Debtors, (iv) been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors, or (v) had an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or for any other reason.

24.     None of the employees of Force 10 are related to any judge of the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to any person employed by the U.S. Trustee.  Force 10 has not agreed to share with any person or entity any compensation received by Force 10 in this case, except as among the members of Force 10.

25.     The Debtors believe that their employment of Force 10 upon the terms and conditions set forth above is in the best interest of the Debtors' estate.

**WHEREFORE,** the Debtors respectfully request that the Court approve the Debtors' employment of Force 10 as their financial advisor, effective April 17, 2026, upon the terms and conditions set forth above.

Dated: May 8, 2026

By: Andrew Stupin
Debtor and Debtor in Possession

By: Julie Stupin
Debtor and Debtor in Possession

Dated: May 8, 2026          LEVENE, NEALE, BENDER, YOO
                            & GOLUBCHIK L.L.P.

                    By:___/s/David Golubchik_____
                            DAVID B. GOLUBCHIK
                            CARMELA T. PAGAY
                            LEVENE, NEALE, BENDER,
                            YOO & GOLUBCHIK L.L.P.
                            (Proposed) Attorneys for Chapter 11 Debtors
                            and Debtors in Possession

7

**STATEMENT OF DISINTERESTEDNESS FOR EMPLOYMENT**

**OF PROFESSIONAL PERSON UNDER F.R.B.P. 2014**

1.      Name, address and telephone number of the professional ("Firm") submitting this Statement:

FORCE TEN ADVISORS, LLC
Nicholas Rubin
5271 California Avenue, Suite 270
Irvine, CA 92614
Telephone:    (949) 357-2360

2.      The services to be rendered by the Firm in this case are:

The Firm will serve as the Debtors' financial advisor in this case and assist with analyzing the Debtors' assets, liabilities, claims, and cash flows, develop near-term projected/pro forma and long-term operating performance in order to assess the ability to develop a plan of reorganization, assist with the preparation of chapter 11 compliance requirements, evaluate solicited offers to purchase or invest in the Debtors' assets, and other such other financial advisory activities as agreed upon between the Debtors and Force 10.

3.      The terms and source of the proposed compensation and reimbursement of the Firm are:

The Firm will render services to the Debtors at the Firm's regular hourly rates, which may be subject to adjustment from time to time, which will be paid for by the Debtor's estate.  The current hourly rates are listed in Force 10's resume attached as Exhibit "1."

4.      The nature and terms of retainer (i.e., nonrefundable versus an advance against fees) held by the Firm are:

The Firm has received a retainer in the amount of $371,855.89 for this case.

5.      The investigation of disinterestedness made by the Firm prior to submitting this Statement consisted of:

Submitted to the Firm's conflicts check system.

6.      The following is a complete description of all of the Firm's connections with the Debtors, principals of the Debtors, insiders, the Debtors' creditors, any other party or parties in interest, and their respective attorneys and accountants, or any person employed in the Office of the United States Trustee:

Pre-petition, the Firm provided certain financial advisory services for the Debtors.  Other than the foregoing, the Firm has not represented the Debtors and has no other connections.

7.      The Firm is not a creditor, an equity security holder or an insider of the Debtors.

8.      The Firm is not and was not an investment banker for any outstanding security of the Debtors.

9.      The Firm has not been within three (3) years before the date of the filing of the petition herein, an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

///

10.    The Firm is not and was not, within two (2) years before the date of the filing of the petition herein, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

11.    The Firm does not represent an individual or entity which holds an interest adverse to any of the Debtors.

12.    Name, address and telephone number of the person signing this Statement:
FORCE TEN ADVISORS, LLC
Nicholas Rubin, Partner
5271 California Avenue, Suite 220
Irvine, CA 92614
Telephone:    (949) 357-2360

13.    None of the Firm's partners or employees is related to the bankruptcy judge in this case.

14.    Total number of attached pages of supporting documentation: 25

15.    The Firm's engagement letter is attached as Exhibit "2".

After conducting or supervising the investigation described in Paragraph 5 above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct except that I declare that Paragraphs 2 through 13 are stated on information and belief.

Executed on the 12th day of May, 2026, at Newport Beach, California.

_____
                    NICHOLAS RUBIN

9

**DECLARATION OF NICHOLAS RUBIN**

I, Nicholas Rubin, declare as follows:

1.      I am a co-founder and partner of Force Ten Advisors, LLC ("Force 10"), the proposed financial advisor to Andrew and Julie Stupin, debtors and debtors in possession in the above-referenced chapter 11 bankruptcy case (the "Debtors"),  I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto.  I make this declaration in support of *Application to Employ Force Ten Advisors, LLC as Financial Advisor Pursuant to 11 U.S.C. § 327(a) With Compensation Pursuant to 11 U.S.C. §§ 330, 331* (the "Application").  Unless otherwise defined in this Declaration, all terms defined in the Application are incorporated herein by this reference.

2.      Force 10's resume is attached hereto as **Exhibit "1"** and is incorporated herein by this reference.

3.      A true and correct copy of Force 10's engagement letter with the Debtors, which includes Force 10's hourly rates, is attached hereto as **Exhibit "2."**

4.      Force 10 has conducted its conflict checks with respect to the Debtors and the Debtors' creditors.  Based upon such conflict checks, Force 10 believes that it does not hold or represent any interest adverse to the Debtors or the Debtors' estate that would impair Force 10's ability to perform objectively professional services for the 'Debtors, in accordance with section 1103 of the Bankruptcy Code.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 12 th day of May, 2026, at Newport Beach, California.

NICHOLAS  RUBIN

# EXHIBIT "1"



# FORCE 10
## PARTNERS

May 2026

# INTRODUCTION TO FORCE 10 PARTNERS



Force 10 is a nationally-recognized financial advisory firm that specializes in middle-market corporate restructuring, lender advisory, committee advisory, investment banking services, and other special situations.

# F10 Overview

– **01** Force 10 excels in restructuring companies with troubled operations, excessive leverage, complex capital structures, and contentious litigation.

– **02** Our insights benefit from decades of collective experience in crafting and negotiating creative solutions to advance our clients' objectives.

– **03** Our corporate restructuring methodology is process-oriented, leveraging our professionals' finance, forensic accounting, and litigation know-how.

– **04** Close coordination with our clients and their professionals is the cornerstone of our approach to designing and implementing value-maximizing solutions, both in and out of court.



FORCE 10 PARTNERS

3

# Full Range Of Services

**Our subject matter expertise is delivered to clients through the following core services:**

| DEBTOR ADVISORY | CREDIT ADVISORY | INVESTMENT BANKING SERVICES |
|---|---|---|
| We guide and operate companies through liquidity crises, strategic decisions, stakeholder negotiations, and reorganizations. | We advise lenders, administrative agents, official committees of creditors, lenders, and litigation claimants in maximizing recoveries. | We execute corporate sales, asset divestitures, raise capital, and advise on capital structure. |

| LITIGATION SUPPORT | FIDUCIARY SERVICES | FUND ADVISORY |
|---|---|---|
| We conduct due diligence, forensic accounting, financial analysis, expert testimony, and support litigation and other disputes. | Our professionals are retained as independent board directors, CROs, Trustees, Assignees, and Receivers to provide leadership and accountability. | We provide investment fund management services when investors or courts require replacing the investment manager or controlling party. |



4

# What Sets Us Apart

**Our teams draw upon a wealth of knowledge gained from working through numerous, complex cases.**

## Extensive Restructuring Experience

» Restructurings are not the time to climb the learning curve. We understand the entire process, in and out of bankruptcy court.

» Our expertise has been tested and strengthened by complex restructurings across a wide range of businesses and industries.

## Less Friction/Better Solutions

» Debtor and creditor parties in a restructuring face stressful, adversarial situations. We prepare our clients for hazards and pitfalls and reduce friction between constituents to design productive solutions.

» Our proven strategies reduce losses, increase liquidity, and produce superior outcomes.

## Customized Strategies

» To quickly stabilize crises, we evaluate each company's key business drivers, operating infrastructure, and competitive landscape.

» Our strategies leverage a deep understanding of multiple industries, complex capital structures, cross-collateralization, owner/shareholder/fiduciary conflicts of interest, and other challenges.

## Collaborative Approach

» We develop a holistic understanding of each business to build tailor-made, creative, realistic solutions for our clients.

» Working closely with other professionals, management teams, boards of directors, and investors, we develop and implement turnaround plans that deliver.



5

# Recent Accolades for Force 10

## Financial – Debtor

### 2024
### Restructuring Advisor

| Firm | Mandates | Staff |
|---|---|---|
| Alvarez & Marsal Holdings, LLC | 13 | 306 |
| AlixPartners LLP<br>- AP Services, LLC | 9 | 247 |
| Force 10 Partners, LLC | 7 | 21 |
| Ankura Consulting Group, LLC | 7 | 98 |
| Portage Point Partners, LLC<br>- Triple P RTS, LLC | 7 | 64 |
| Riveron Consulting, LLC | 6 | 269 |





6

# Real Estate Expertise

**Force 10 brings extensive experience across the Real Estate industry, supporting clients through a range of strategic, operational, and financial challenges.**

- » Extensive experience advising real estate owners, developers, investment funds, and stakeholders through complex operational, financial, and restructuring situations

- » Expertise in Chapter 11 restructurings, out-of-court workouts, Section 363 sales, and strategic recapitalizations across a wide range of real estate asset classes

- » Proven track record managing and monetizing distressed real estate assets, including master-planned communities, mobile home parks, golf courses, and entertainment destinations

- » Strong capabilities in stabilizing operations, restructuring liabilities, and implementing recovery strategies for highly leveraged or underperforming real estate projects

- » Experience serving as Chief Restructuring Officer, Financial Advisor, and Plan Trustee in complex real estate and investment fund restructurings

- » Demonstrated success in maximizing stakeholder recoveries through strategic asset sales, financing solutions, litigation support, and complex due diligence management

   



*Includes selected experience from current and prior firms*

7

# F10 | Team Members



# Force 10 Professionals

Force 10 partners each have over 20 years of experience. They actively manage engagements and remain accountable for the firm's day-to-day operations.

Our team of experts come from a wide range of value-added, multidisciplinary backgrounds that combine to form highly effective engagement teams:

>> Attorneys

>> CPAs

>> CFOs/Controllers/Treasury

>> Forensic Accountants

>> Healthcare Industry Managers

>> Information Technology

>> Investment Bankers

>> Operations

>> Valuation Specialists

*Graphic excludes healthcare management consultants and support staff*



# Nicholas Rubin

**Nicholas is a Partner and co-founder.**

Previously, he was a Senior Managing Director with GlassRatner. Nicholas has over 20 years of combined leadership experience in capital markets, financial planning, commercial real estate, and corporate finance.

He began his career at a leading international public accounting and auditing firm, where he worked with clients providing accounting, management accounting, and auditing services. In addition to his experience in accounting, he has served in many executive interim leadership roles as well as team leader in many business consulting assignments with a specialization in dispute resolution.

Nick has experience developing and leading teams that implement solutions designed to ensure optimal performance through financial planning, budgeting, profitability, and needs analysis. Nicholas's experience includes restructuring and corporate finance, including roles as a financial advisor and investment banker.

Nicholas works closely with clients to build comprehensive and strategic plans incorporating financial planning, consolidation, infrastructure, management reporting, and business intelligence to support growth. He has managed clients and businesses in the U.S., China, Hong Kong, Israel, and South Africa. His clients include corporations, banks, lenders and other secured and unsecured creditors, buyers, sellers, bankruptcy counsel, and litigators.



 nrubin@force10partners.com

10



# Brian Weiss

**Brian is a Partner and co-founder.**

Brian advises public and private companies with complex transactions, including business restructuring, crisis management, and acquisitions & divestitures.

Brian focuses on representing and restructuring businesses in- and out- of bankruptcy court, serving in various capacities, including financial advisor to both debtors and creditors, chief restructuring officer, plan/liquidating trustee, and expert witness. Brian also serves as state court Receiver and in other similar fiduciary capacities.

Brian represents clients in various industries, including manufacturing, restaurant/retail, technology, construction, and real estate. Brian provides logical and defensible solutions to complex situations and has delivered numerous effective results. His experience includes:

Before co-founding Force 10 in 2016, Brian was the principal of BSW & Associates, a firm he founded in 2006 that provided similar services. Earlier, Brian served in senior finance capacities, responsible for preparing companies for initial public offerings, financial planning, and leading the due diligence process for strategic transactions. Brian began his career at PricewaterhouseCoopers. He is a Certified Public Accountant and received his master's degree in Business Administration from the University of Southern California.

In 2022, Brian received an award and was named a "Top 25" restructuring consultant with a distinction in dealmaking by Global M&A Network.



 bweiss@force10partners.com

11

FORCE 10
PARTNERS

# Mike VanderLey

**As a Partner at Force 10, Mike leads the firm's real estate and real estate capital markets practice and helps manage the debtor advisory and litigation support practices.**

Mike is a career special situations, real estate, and capital markets leader with an extensive background managing equity and debt investments, with over two decades of financial advisory and restructuring experience. He works with owners and investors of publicly-traded and privately-held companies and domestic and international financial institutions on restructurings, asset and portfolio-level transactions, financings, joint ventures and M&A, litigation, and strategic issues affecting enterprise value.

Mike's transaction and restructuring experience includes every major real estate asset class and investment positions up and down the capital structure. Over his career, he has led or advised on financing and sale processes totaling over $5 billion. Since joining Force 10 in 2017, Mike has received the prestigious "Deal of the Year" award from the Global M&A Network on two occasions.

Mike frequently provides expert testimony in state and federal court litigation matters involving interest rates, chapter 11 plan feasibility, valuation, damages, partnership disputes, underwriting procedures, loan servicing and administration, and real estate capital markets conditions.

Prior to joining Force 10, Mike was a Senior Managing Director in the Corporate Finance segment of FTI Consulting, where, as part of the Real Estate Group, he led the Real Estate Capital Markets practice of FTI's investment banking subsidiary, FTI Capital Advisors. Before FTI, Mike held senior management roles as a lender and equity investor: with Archstone, Essex Property Trust, Calyon Corporate and Investment Bank (Credit Agricole Group), and Sagamore Equities.

He is a member of the American Bankruptcy Institute, CRE Finance Council, and Urban Land Institute.



 mvanderley@force10partners.com



# Chad Kurtz

**Chad is a Managing Director specializing in insolvency matters, buying and selling side M&A transactions, and complex modeling/financial analysis. Chad works closely with clients to develop cash collateral forecasts, analyze and improve business operations/cost structures, prepare bankruptcy compliance forms, develop bankruptcy plan projections, and analyze creditor claims.**

Prior to joining Force 10, Chad worked at BSW & Associates. Chad also spent 10 years at Ernst & Young LLP, including serving as a Director in its Corporate Finance practice, where he led restructuring advisory engagements. In that capacity, Chad has represented debtors, secured lenders, and creditors' committees, advising on businesses that ranged from start-ups to Fortune 500 companies. He started his career with Ernst & Young's audit department in New York City and ultimately transferred to the Los Angeles office, where he helped lead the West Coast restructuring group that was part of the Corporate Finance practice.

Chad received his MBA from New York University, Stern School of Business and his bachelor's degree from Williams College, and he is a CPA (inactive).



 ckurtz@force10partners.com

13



# Raymond Leiva

**Raymond joined Force 10 Partners' restructuring group as a Senior Associate in 2024, bringing a continually expanding expertise in financial modeling, valuation, secured debt financing, and capital optimization. His deep understanding of financial analysis and complex transactions makes him a key asset to the team.**

Raymond spent three years at Wells Fargo Capital Finance, where he quickly advanced within the Asset-Based Lending division. In this role, he supported middle-market and large corporate clients, focusing on credit analysis, underwriting, and liquidity support across industries with varying risk profiles. His work with distressed clients sparked his interest in bankruptcy and turnaround situations, paving the way for his career in restructuring.

Before his time at Wells Fargo, Raymond began his career at Deal Valuation, LLC. There, he performed enterprise valuations, conducted in-depth industry research, and provided ongoing transaction support, which honed his analytical skills.

Raymond holds a Bachelor of Science in Finance and a Master of Science in Finance from California State University—Long Beach.



 [rleiva@force10partners.com](mailto:rleiva@force10partners.com)

14



# Ryan Gatchalian

**Ryan advises Force 10 clients in engagements that demand expertise in real estate. He has over 20 years of experience in asset management, development, financing and monetization of real estate assets, including 17 years in leadership roles with the Lennar Corporation and its subsidiaries.**

Ryan's expertise in real estate accounting and finance, acquisitions and dispositions, asset management, development, operations, and risk management inform Force 10's approach across engagements where real estate is either central to or can help to resolve debtor/creditor conflicts. With his in-depth knowledge of commercial real estate operations and financing, Ryan understands the nature of financial distress in real estate. He helps Force 10 clients develop or evaluate workout proposals, address solvency issues, or manage through a bankruptcy process. Ryan understands the complexities of real estate, including how to develop viable business plans, obtain work-out financing, restructure joint ventures, execute full-cycle development, and reposition or dispose of non-performing assets.

Most recently, Ryan served as Division President of Southern California for Quarterra Multifamily, a wholly-owned development company of Lennar. During his tenure, Ryan led the sourcing, entitlement, development, financing, and operations of over $3 billion in land development, mixed-use and multifamily projects across Southern California and Las Vegas. He also held leadership roles responsible for repositioning/restructuring strategic assets and partnerships, and finance/accounting/risk management operations. Prior to joining Lennar, Ryan served in financial roles at Beazer Homes and management consulting roles with Accenture and Bearingpoint.

Ryan graduated from Florida State University with a degree in Finance and he is currently a board member of the USC Lusk Center for Real Estate, and is a past board member of the NAHB Multifamily Council.



 rgatchalian@force10partners.com

15

# EXHIBIT "2"

**FORCE 10**
P A R T N E R S

**FORCE 10 PARTNERS**
5271 CALIFORNIA
SUITE 270
IRVINE, CA 92617
(949) 357-2360

February 21, 2026

Andrew Stupin and Julie Stupin
The Stupin Family Trust
11 Offshore
Crystal Cove, CA 92657

**RE: Force Ten Engagement**

Dear Andrew and Julie:

This agreement confirms our understanding that Andrew Stupin and Julie Stupin, individually, the Stupin Family Trust, and any and all affiliated and related entities (collectively, the "Clients") are engaging Force Ten Advisors, LLC and its affiliates ("Force 10") to provide financial advisory and restructuring services in connection with the Clients' financial restructuring and out-of-court workout efforts. In the event that an out-of-court resolution is not achievable, Force 10 shall assist the Clients with preparation for and, if necessary, the filing of voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and shall seek retention as financial advisor in such Chapter 11 cases, subject to approval of the Bankruptcy Court.

**Scope of Services**

Force 10 shall provide financial advisory and restructuring services, including, without limitation:

(a) Assisting in the formulation and preparation of financial projections, supporting methodology, key assumptions, and rationale;
(b) Performing appropriate financial analysis and evaluation of the Clients' operations;
(c) Analyzing the Clients' existing debt, liens, and capital structure, and evaluating strategic alternatives available to the Clients, including out-of-court restructuring, refinancing, asset dispositions, and Chapter 11 reorganization;
(d) Preparing supporting financial statements, proforma budgets, and projections;
(e) Providing periodic reporting to the Clients and other parties as appropriate;
(f) Assisting in negotiations with creditors to restructure, compromise, or otherwise resolve the Clients' liabilities;
(g) Assisting legal counsel and the Clients in connection with any court filings or proceedings, including preparation for the commencement of Chapter 11 cases if an out-of-

court resolution is not achievable;

(h) Performing forensic accounting services, including the tracing, analysis, and reconstruction of financial transactions, accounts, and records;

(i) Conducting issue analysis and financial review in support of pending or anticipated litigation;

(j) Preparing expert reports, declarations, and other written analyses as required in connection with litigation or court proceedings;

(k) Attending and participating in depositions and providing deposition and trial testimony as required; and

(l) Such other tasks as may be mutually agreed upon by Force 10 and the Clients.

## Reliance

The Clients shall use their best efforts to furnish Force 10 with all data, material, and information that Force 10 reasonably requests. Force 10 shall be entitled to rely upon all data, material, and information supplied by or on behalf of the Clients without independently verifying the accuracy, completeness, or veracity thereof. Force 10 shall not be responsible for any inaccuracies or omissions in such data, material, or information. Force 10 is under no obligation to update any advice or recommendation previously given to the Clients.

## Projections

With respect to any projections or forward-looking statements provided by Force 10, it is acknowledged that the projections and other forward-looking statements are based on numerous assumptions, and that actual results may differ materially from the projections. In preparing such information, Force 10 shall be entitled to rely upon estimates and judgments of the Clients' management, and Force 10 shall have no liability for the reasonableness of such estimates and judgments or the achievement of any projected results.

## Confidentiality

Force 10 and its personnel shall keep confidential all non-public, confidential, or proprietary information received from the Clients in connection with this engagement and shall not disclose such information to any third party except as expressly authorized by the Clients or their legal counsel; as required by applicable law, regulation, subpoena, or other legal process; or as reasonably necessary to perform the services contemplated by this engagement, provided that any such disclosure shall be limited to persons who have a need to know such information and who are subject to confidentiality obligations no less restrictive than those set forth herein. All confidentiality obligations shall cease with respect to any portion of such information that is or becomes publicly available other than as a result of a breach of this provision by Force 10 or its personnel.

**Compensation for Services**

**Hourly Fees**

Force 10 will charge for services rendered in connection with this engagement based on its customary hourly rates. Force 10's hourly rates are subject to periodic adjustment in the ordinary course of business; provided, however, that the hourly rates applicable to this engagement shall not be adjusted prior to January 1, 2027.

| Professional | Rate Range |
|---|---|
| Partners | $890 - $995 |
| Managing Directors and Directors | $595 - $795 |
| Managers, Senior Associates, Associates, and Analysts | $340 - $595 |
| Staff | $255 - $520 |

**Travel Time**

Non-working travel time incurred by Force 10 personnel in connection with this engagement will be billed at fifty percent (50%) of the applicable professional's hourly rate. To the extent Force 10 personnel perform substantive work while traveling, such time will be billed at the applicable professional's full hourly rate.

**Technology Fee**

Force 10 may charge the Clients a separately itemized technology fee (the "Technology Fee") for the use of proprietary technology platforms, data analytics and processing tools, document management systems, financial modeling applications, and related technology resources utilized in connection with the services provided under this engagement.

The Technology Fee reflects the efficient use of such technology resources in this engagement and is intended to reduce overall professional fees and costs that would otherwise be incurred through additional professional time or third-party vendor expenses. The Technology Fee may include an element of profit to Force 10 and is not intended to duplicate professional fees or reimbursable expenses.

Any Technology Fee charged shall be reasonable, directly related to the services performed, separately itemized in Force 10's invoices, and subject to review and approval by the Clients.

## Expense Reimbursement

Force 10 shall be reimbursed for reasonable documented out-of-pocket expenses incurred in connection with the performance of services hereunder, including, without limitation, travel, lodging, duplicating, computer research, messenger services, and telephone charges.

## Payment Terms

Force 10 shall render invoices on a monthly basis. Payment shall be due within seven (7) business days of the Clients' receipt of invoice.

## Retainer

Upon execution of this agreement, the Clients shall pay Force 10 $150,000 as an advance payment retainer (the "Retainer"). The Retainer shall be non-interest bearing and shall be deposited in a general account of Force 10 and shall not be held as security or in escrow. Force 10 may apply the Retainer to any invoice rendered under this agreement. Any remaining balance of the Retainer shall be remitted to the Clients after termination and satisfaction of all outstanding obligations.

## Termination

The term of this engagement commences as of the date of this letter. It shall continue until the engagement is completed unless terminated with or without cause by either the Clients or Force 10 on thirty (30) days' prior written notice. In this event, all compensation and expenses owing to Force 10 through the date of such termination (including fees and expenses incurred before but invoiced after such termination) shall be immediately due and payable. All provisions of this engagement that by their nature extend beyond termination shall survive and continue to bind the parties.

Force 10 may withdraw from this engagement and terminate its obligations hereunder if the Clients take actions that render it unethical or unreasonably difficult for Force 10 or its personnel to fulfill the terms of this engagement or perform their duties hereunder.

## Applicable Law

This engagement shall be governed by and construed in accordance with the laws of the State of California, without reference to principles of conflicts of law.

## Conflicts

Force 10 is not currently aware of any relationship that would create a conflict of interest with the Clients or any party of which the Clients have made Force 10 aware. Because Force

4

10 is a financial advisory and consulting firm that represents clients in numerous matters and industries, both in and out of court, it is possible that Force 10 may have rendered services to, or may have business relationships with, other entities or individuals that have had, currently have, or may in the future have relationships with the Clients, including creditors or other parties-in-interest.

**No Third-Party Beneficiary**

The Clients acknowledge that all advice and work product given by Force 10 or any of its personnel in connection with this engagement is intended solely for the benefit and use of the Clients, including their authorized agents, in their capacities as such, for purposes of considering the matters to which this engagement relates. Without Force 10's specific case-by-case written approval, the Clients agree that the advice and any work product shall not be used for any other purposes and that they shall not be reproduced, disseminated, quoted or referred to other than for the exclusive purpose of accomplishing the tasks that are the subject matter of this engagement during the term of this engagement, except as otherwise required by law.

**No Audit**

Force 10 is not being engaged to perform an audit or review of any financial statements or any other attestation engagement in accordance with generally accepted auditing standards or any other attestation standards, and no such engagement is contemplated.

**Indemnification**

The Clients shall indemnify and hold harmless Force 10, its affiliates, and their respective present and former directors, officers, employees, agents, and controlling persons (each, an "Indemnified Party") from and against any and all losses, claims, damages, liabilities, and expenses (collectively, "Damages") arising from or in connection with any services contemplated by or the performance of services under this agreement, including without limitation any liability to or on account of any employees of the Clients.

The Clients shall reimburse each Indemnified Party for all fees and reasonable documented out-of-pocket expenses (including fees and expenses of counsel) as they are incurred in connection with investigating, preparing for, pursuing, or defending any threatened or pending claim, action, proceeding, or investigation arising from or in connection with the services contemplated by this agreement, whether or not in connection with pending or threatened litigation in which any Indemnified Party is a party.

The Clients shall not be liable under this section to a specific Indemnified Party to the extent that any such Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such

FORCE 10
PARTNERS

Indemnified Party.

No Indemnified Party shall have any liability to the Clients or to any person asserting claims on behalf of or in right of the Clients except to the extent that any such Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnified Party.

If the indemnity provided for herein is unavailable or insufficient, the Clients shall contribute to the amounts paid or payable by each Indemnified Party in such proportion as is appropriate to reflect the relative benefits to the Clients and/or their stakeholders, on the one hand, and Force 10, on the other hand, in connection with the Damages giving rise to such contribution. The relative benefits shall be deemed to be in the same proportion that the total value paid or received by the Clients and/or their stakeholders in connection with such Damages bears to the fees paid to Force 10 under this agreement. Notwithstanding the foregoing, the total contribution of all Indemnified Parties shall not exceed the amount of fees actually received and retained by Force 10 under this agreement, excluding reimbursement of expenses. The Clients shall have no obligation to contribute under this section to the extent that Damages result from the gross negligence or willful misconduct of such Indemnified Party.

The Clients shall not enter into any waiver, release, or settlement of any claim or proceeding relating to the services contemplated by this agreement without Force 10's prior written consent (which shall not be unreasonably withheld), unless such waiver, release, or settlement: (i) includes an unconditional release of Force 10 and all Indemnified Parties from all liability arising out of such claim or proceeding; and (ii) does not contain any factual or legal admission by or regarding Force 10 or any adverse statement with respect to the character, professionalism, expertise, or reputation of any Indemnified Party.

If any Indemnified Party is entitled to indemnification hereunder in respect of any action brought by a third party, the Clients shall be entitled to assume the defense thereof with counsel reasonably satisfactory to such Indemnified Party. Such Indemnified Party may participate in and retain its own counsel in connection with any such proceeding, the fees and expenses of which shall be borne by such Indemnified Party; provided, however, that the fees and expenses of such counsel shall be at the expense of the Clients if (i) so agreed by the Clients, (ii) the Clients have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner, or (iii) there are actual or potential conflicting interests between the Clients and the Indemnified Party. The Clients shall not be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Parties, except for local counsel as may reasonably be needed.

## Joint and Several Liability

The obligations of the Clients under this agreement, including without limitation the obligations to pay compensation and expenses and to indemnify Force 10 and the Indemnified Parties, shall be the joint and several obligations of each Client.

## Successors and Assigns

This agreement shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, legal representatives, successors, and assigns. This agreement may not be assigned by any party without the prior written consent of the other party, except that Force 10 may assign its rights and obligations to any affiliate without consent.

## Independent Contractor

Force 10, including all of its professionals and personnel, shall serve as an independent contractor to the Clients, and nothing in this agreement shall be construed to create an employer-employee relationship, partnership, joint venture, or agency relationship between Force 10 and the Clients. Force 10 shall not have the authority to bind the Clients except as specifically provided herein or as may be authorized in writing by the Clients.

## No Attorney-Client Relationship

Force 10 is not a law firm and does not provide legal advice or legal services. No attorney-client relationship, express or implied, shall be created between Force 10 and the Clients by virtue of this engagement or any services performed hereunder. The Clients should consult with their own legal counsel regarding any legal matters.

## Miscellaneous

This agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, whether written or oral. This agreement may be amended or modified only by a written instrument executed by all parties hereto. This agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page by electronic transmission shall be effective as delivery of a manually executed counterpart.

The foregoing accurately reflects the terms and conditions of the engagement of Force 10 by

FORCE 10
P A R T N E R S

the Clients. This engagement letter has been read, understood, and accepted by the under-signed, and shall be effective as of the date first written above. The undersigned represent and warrant that they are duly authorized to execute this engagement letter on behalf of the respective parties.

**AGREED AND ACCEPTED:**

**FORCE TEN ADVISORS, LLC**

By: _____
Name: Nicholas Rubin
Title: Authorized Signatory
Date: 3/1/2026

**AGREED AND ACCEPTED:**

**ANDREW STUPIN, individually**

By: _____
Name: Andrew Stupin
Date: 3/4/2026

**JULIE STUPIN, individually**

By: _____
Name: Julie Stupin
Date: March 3, 2026

**THE STUPIN FAMILY TRUST**

By: _____
Name: ANDREW STUPIN
Title: Trustee
Date: 3/4/2026

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION OF CHAPTER 11 DEBTORS TO EMPLOY FORCE TEN ADVISORS, LLC AS FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. § 327(a) WITH COMPENSATION PURSUANT TO 11 U.S.C. §§ 330, 331; DECLARATION OF NICHOLAS RUBIN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 13, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Raymond H. Aver     ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com;jesus@averlaw.com
- Jessica L Bagdanov     jbagdanov@bg.law, ecf@bg.law
- Michael E Bubman     mbubman@mbn.law, aacosta@mbnlawyers.com
- Greg P Campbell     ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Steven Casselberry     Steve.Casselberry@procopio.com, jessica.perez@procopio.com;emily.marsh@procopio.com;calendaringbankruptcy@procopio.com;evangelina.myers@procopio.com;lauren.hill@procopio.com
- David Coats     dacoats@raslg.com
- Dora Duru     dora.duru@bclplaw.com
- Amir Gamliel     agamliel@perkinscoie.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Craig S Ganz     ganzc@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Adam M Greely     agreely@fbfk.law, dstolar@vrslaw.net
- Steven T Gubner     sgubner@bg.law, ecf@bg.law
- Sarah Rose Hasselberger     shasselberger@marshackhays.com, shasselberger@ecf.courtdrive.com;cbastida@marshackhays.com;alinares@ecf.courtdrive.com
- Golsa Honarfar     ghonarfar@rutan.com, avaccaro@rutan.com;apineda@rutan.com
- Matthew J Marino     mmarino@allenmatkins.com, csandoval@allenmatkins.com
- Kenneth Misken     Kenneth.M.Misken@usdoj.gov
- John A Moe     john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
- Michael S Myers     myersm@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Alan I Nahmias     anahmias@mbn.law, jdale@mbn.law
- Aram Ordubegian     ordubegian.aram@arentfox.com
- David M Poitras     dpoitras@bg.law
- Joshua L Scheer     jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- Zev Shechtman     Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- Robyn B Sokol     robyn.sokol@stinson.com, lydia.moya@stinson.com;dennette.mulvaney@stinson.com;dbender@leechtishman.com;jnaiya.herd@stinson.com
- Martin W Taylor     martin.taylor@bclplaw.com
- Jennifer R Tullius     jtullius@tulliuslaw.com
- United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
- Sharon Z. Weiss     sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- David Wood     dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**: On (*date*) **May 13, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

Force 10
Nicholas Rubin
5271 California, Suite 270
Irvine, CA 92617

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 13, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 13, 2026 | D. Woo | /s/ D. Woo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**