DAVID GOLUBCHIK (State Bar No. 185520)
dbg@lnbyg.com
CARMELA T. PAGAY (State Bar No. 195603)
cto@lnbyg.com
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| In re: | Case No.: 8:26-bk-11202-SC |
|---|---|
| ANDREW STUPIN and JULIE STUPIN, | Chapter 11 Case |
| Debtors and Debtors in Possession. | **MOTION TO AMEND SCHEDULING ORDER REGARDING DEADLINE TO FILE A DISCLOSURE STATEMENT AND PLAN AND FOR AN EXTENSION OF THE EXCLUSIVITY PERIODS OF 11 U.S.C. § 1121; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF ANDREW STUPIN IN SUPPORT THEREOF** |
| | [No Hearing Required Pursuant to Local Bankruptcy Rule 9013-1(o)] |

1

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES:**

Andrew Stupin and Julie Stupin, debtors and debtors in possession in the above-referenced chapter 11 bankruptcy case (the "Debtors"), respectfully submit this motion ("Motion") for an order amending the Scheduling Order entered on June 4, 2026 to extend the deadline for the Debtors to file their disclosure statement and plan by 180 days and that the exclusivity periods for proposing and soliciting votes on a plan also be extended by 180 days. In support of the Motion, the Debtors submit the following memorandum of points and authorities and declaration of Andrew Stupin in support thereof.

**I.**

**CASE BACKGROUND**

1. Andrew Stupin ("Andrew") and Julie Stupin ("Julie," together with Andrew, the "Debtors") commenced their bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on April 17, 2026 (the "Petition Date"). Since the Petition Date, the Debtors have managed their affairs, operated their business, and administered their estate as debtors in possession.

2. On May 21, 2026, the United States Trustee appointed the Official Committee of Unsecured Creditors ("UCC").

3. On June 26, 2026, the UCC's application seeking authority to employ Pachulski, Stang, Ziehl and Jones LLP as counsel was filed [Doc 119]. On July 17, 2026, the order approving such application was entered [Doc 212].

4. The UCC also recently retained FTI Consulting, Inc. as financial advisor by application filed on July 20, 2026 [Doc 235]. Such application is pending.

5. Andrew is a real estate investor. Julie is Andrew's wife.

6. In the 1970's, Andrew started his journey in real estate. After saving money from his teaching career, Andrew bought his first investment for $28,000 – two (2) separate houses on two (2) lots. That was in 1972 and prices were starting to increase rapidly in the "Great Orange

2

County" boom. Andrew lived in one house and rented out the other. The rent from the rental was more than the mortgage. It was then that Andrew caught the real estate bug and thought this to be something to move forward on.

7. Over the decades, Andrew invested in many properties not only throughout Orange County, but California and other states. Andrew always focused on value added and income generating properties. Over time, many friends and others asked to invest alongside Andrew in such investments. His success continued to grow.

8. Approximately 10 years ago, Andrew (and his friend and co-investor Gerald Marcil) were approached by a third party (Mahender Makhijani) who represented that he had connections with many lenders to acquire distressed loans and real estate. He proposed to work together to acquire loans and properties.

9. Through the parties' relationship, Mr. Makhijani maintained all relationships with lenders and financing sources and managed the investments. Mr. Makhijani's staff at Continuum provided all accounting and documentation and financing with respect to such investments.

10. In the last several years, Mr. Makhijani obtained numerous warehouse loans from lenders including, without limitation, approximately $98 million from Western Alliance Bank, and approximately $60 million from Zions Bank. The Debtors understand that Mr. Makhijani represented to the lenders that the purpose of the loans was to refinance existing properties and acquire new properties. The lenders assert that Andrew and Mr. Marcil signed guaranties for such debts.

11. In the fall of 2025, Andrew learned that the foregoing banks have sued him on account of the alleged guaranties based on highly irregular activity by Mr. Makhijani and the lenders.

12. In addition to the foregoing, Andrew learned that Mr. Makhijani recorded fraudulent liens on Debtors' personal properties (held through wholly owned LLC's) and pledged the fraudulent loans to Western Alliance Bank.

///

3

13.    The foregoing conduct resulted in protracted litigation.  It is important to point out that none of the collection lawsuits from the lenders have asserted that Andrew engaged in any wrongful conduct.  They simply assert that Andrew is obligated for their self-inflicted losses through the alleged guaranties.

14.    In one of the litigations, plaintiff Zions Bancorporation N.A. ("Zions") obtained a writ of attachment as to Debtors' assets from a judicial referee, which was first issued on January 19, 2026.  Co-Defendants in that action have appealed the writ of attachment. The Debtors filed bankruptcy within 90 days of the issuance of that writ of attachment.  The timing of this case was intended to statutorily terminate the writ of attachment and preserve all assets for the benefit of all creditors.

15.    The Debtors have substantial assets, consisting of directly owned real property and LLC interests that hold real properties.  Other than two breach of guaranty actions related to the foregoing fraudulent conduct which the Debtors believe was orchestrated by Deba Shyam and Mr. Makhijani, the Debtors have relatively manageable debts which can be easily addressed through continued operations of the Debtors' holdings.  The Debtors believe that, once the breach of guaranty litigation is resolved in favor of the Debtors, this estate is solvent with all creditors to be paid in full.

16.    At the initial status conference held in this Court on June 3, 2026, the Court ordered, among other things, that the Debtors must file their disclosure statement and plan by August 17, 2026 which is also the deadline for the Debtors to have the exclusive ability to propose a plan.  The Scheduling Order was entered on June 4, 2026 [Doc 74].  During the June 3, 2026 hearing, the Debtors advised the Court that, due to the complex nature of this case and the numerous properties and investors associated therewith, it would be imprudent and impossible for the Debtors to propose a plan within such deadline and additional time will be necessary.  The Court advised the Debtors to see how the case is developing and file a motion should additional time be necessary.

///

4

17. During the first portion of this case, the Debtors worked cooperatively with the UCC to provide information with respect to the Debtors' assets. In connection with the foregoing, the Debtors are in the process of obtaining valuations of properties as well as broker proposals to commence marketing certain properties that have equity but are not cash flowing at this time. The UCC is being kept informed with respect to the foregoing process.

18. In addition, recently, the Court remanded the Zions litigation back to state court (rather, private referee presiding). Discovery and litigation therein is proceeding.

19. Many creditors have reached out to the Debtors to seek extensions of deadlines to assert Section 523 claims. In order to minimize needless litigation, the Debtors have stipulated to such extensions. All such extensions run through September 15-18, 2026 time period.

20. Finally, the Debtors and UCC have stipulated to extend the deadline for the UCC to assert objections to claims of exemptions. In connection with the foregoing, the UCC has requested certain information from the Debtors with respect to their personal property assets, which the Debtors are compiling.

21. As the Court is aware, this is a very unusual case. It is not the typical case where a business must be restructured or sold and then claims analyzed. This case consists of many decades of successful real estate investment by Andrew Stupin, who has amassed a substantial real estate portfolio. Virtually all real property holdings have equity and are stable, without concern for immediate disposition or monetization to avoid deterioration in value. Rather, this case is more about claims analysis and prosecution to identify the world of claims that must be addressed and serviced through this case. Without more certainty as to what claims should be allowed, the Debtors are unable to formulate a plan that they can present as being in the best interests of the creditors. Accordingly, the Debtors require an extension of time to file their plan and disclosure statement and to solicit acceptances of a plan and believe that an extension of the deadlines for 180 days is appropriate. In the meantime, as discussed above, the Debtors are complying with their obligations as debtors in possession and using best efforts to work cooperatively with all creditors in connection with the administration of their estate.

## II.

## LEGAL ARGUMENT

A chapter 11 debtor has the exclusive right to file a plan during the first 120 days of a bankruptcy case and to obtain acceptance of its plan during the first 180 days of the case. See 11 U.S.C. § 1121. Section 1121 is critical to the chapter 11 process, promoting the orderly and consensual reorganization of the debtor's affairs. Congress intended that the debtor be afforded a reasonable opportunity to negotiate and propose a consensual plan of reorganization without interference from creditors or the threat of a competing plan. *See In re Clamp-All Corp.*, 233 B.R. 198, 207 (Bankr. D. Mass. 1999); *see also In re Texaco, Inc.*, 81 B.R. 806, 809 (Bankr. S.D.N.Y. 1988) (citing H.R. Rep. No. 595, 95th Cong., 2d Sess. 221-22, reprinted in 1978 U.S.C.C.A.N. 5787).

A bankruptcy court can extend the exclusivity periods for "cause." "Cause" is not defined by the Bankruptcy Code. Nonetheless, in determining whether to extend the exclusivity periods, courts typically consider the following non-exhaustive list of nine factors:

      1.      The size and complexity of the case;

      2.      The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

      3.      The existence of good faith progress toward reorganization;

      4.      The fact that the debtor is paying its bills as they become due;

      5.      Whether the debtor has demonstrated reasonable prospects for filing a viable plan;

      6.      Whether the debtor has made progress in negotiations with its creditors;

      7.      The amount of time which has elapsed in the case;

      8.      Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

      9.      Whether an unresolved contingency exists.

*See In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (cited

6

with approval by *In re Henry Mayo Newhall Memorial Hosp.*, 282 B.R. 444, 452 (9th Cir. BAP 2002)); *In re Adelphia Comm. Corp.*, 352 B.R. 578, 587 (Bank. S.D.N.Y. 2006); *In re Matter of Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005).

These nine factors are simply a starting point, the debtor need not satisfy every single factor, and courts are free to consider other relevant factors based on the unique facts of this case. *See Adelphia*, 352 B.R. at 583, 587.  The decision to grant a request to extend the exclusivity deadlines lies within the sound discretion of the bankruptcy court. *See In re Gibson & Cushman*, 101 B.R. 405, 409 (E.D.N.Y. 1989). "[A] transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolutions." *Henry Mayo*, 282 B.R. at 453.

With respect to modification of the Scheduling Order, a party may request an extension of a deadline set by the Court by making the request prior to the expiration of the deadline "for cause shown." Fed. R. Bankr. Proc. 9006(b)(1).

Here, the Debtors respectfully submit that the nine factors can be satisfied:

1.      This case is extremely complex and is large in terms of assets and liabilities, as well as secured and unsecured creditors and investors.

2.      In light of the complexity and size of this case, it will take additional time for the Debtors to prepare adequate information and thereafter negotiate with the UCC.

3.      The Debtors are actively analyzing their real property assets to determine which can be monetized efficiently and for maximum value in order to be able to formulate consensual terms of reorganization.

4.      The Debtors are paying bills as they become due, subject to the consent of their lenders for use of cash collateral.

5.      In addition to the ongoing analysis of their real property assets, the Debtors are proceeding with litigation to be able to identify the world of claims that must be addressed and serviced through this case.

6.      The Debtors have commenced discussions with the UCC, which is also

conducting its own investigation with its counsel and financial advisor, concerning the terms of a plan.

7.    The case was filed less than four months ago, and this is the Debtors' first request for an extension.

8.    The Debtors are not seeking an extension of exclusivity in order to pressure creditors to submit to their reorganization demands but rather to have adequate time to evaluate all their options and be able to propose a confirmable plan.

9.    The outcomes of the pending litigation matters commenced by Western Alliance Bank  and Zions Bankcorp will have a significant effect on any plan proposed by the Debtors.

Based on the foregoing nine factors, the Debtors request that the Court modify the Scheduling Order and extend exclusivity to provide that the Debtors may have until February 15, 2027 to file their disclosure statement and plan, and until April 14, 2027, to solicit acceptances of the plan.

**III.**

**CONCLUSION**

**WHEREFORE**, the Debtors request that the Court enter an order:

1.    Amending the Scheduling Order to provide that the Debtors shall file their disclosure statement and plan on or before February 15, 2027, subject to further extension for cause shown;

2.    Extending the deadlines in 11 US.C. § 1121(d) by 180 days, to February 15, 2027, and April 14, 2027, respectively; and

3.    Granting such other relief as the Court may deem just and appropriate.

Dated: July 27, 2026                         LEVENE, NEALE, BENDER, YOO
                                                         & GOLUBCHIK L.L.P.

                                             By:___*/s/ David B. Golubchik*_____
                                                    DAVID B. GOLUBCHIK
                                                    CARMELA T. PAGAY
                                                    Attorneys for Chapter 11 Debtors and
                                                    Debtors in Possession

## DECLARATION OF ANDREW STUPIN

I, Andrew Stupin, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am one of the chapter 11 debtors and debtors-in-possession in the above-captioned chapter 11 bankruptcy case.

3. I make this declaration in support of the foregoing motion (the "Motion") to which it is attached.

4. My wife, Julie Stupin ("Julie"), and I commenced our bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on April 17, 2026 (the "Petition Date"). Since the Petition Date, we have managed our affairs, operated our business, and administered our estate as debtors in possession.

5. I am a real estate investor. In the 1970's, I started my journey in real estate. After saving money from his teaching career, I bought my first investment for $28,000 – two (2) separate houses on two (2) lots. That was in 1972 and prices were starting to increase rapidly in the "Great Orange County" boom. I lived in one house and rented out the other. The rent from the rental was more than the mortgage. It was then that I caught the real estate bug and thought this to be something to move forward on.

6. Over the decades, I invested in many properties not only throughout Orange County, but California and other states. I always focused on value added and income generating properties. Over time, many friends and others asked to invest alongside me in such investments. My success continued to grow.

7. Approximately 10 years ago, my friend and co-investor Gerald Marcil and I were approached by a third party (Mahender Makhijani) who represented that he had connections with many lenders to acquire distressed loans and real estate. He proposed to work together to acquire loans and properties.

8.    Through the parties' relationship, Mr. Makhijani maintained all relationships with lenders and financing sources and managed the investments. Mr. Makhijani's staff at Continuum provided all accounting and documentation and financing with respect to such investments.

9.    In the last several years, Mr. Makhijani obtained numerous warehouse loans from lenders including, without limitation, approximately $98 million from Western Alliance Bank, and approximately $60 million from Zions Bank. Mr. Makhijani represented to the lenders that the purpose of the loans was to refinance existing properties and acquire new properties. The lenders assert that Mr. Marcil and I signed guaranties for such debts.

10.    In the fall of 2025, I learned that the foregoing banks have sued him on account of the alleged guaranties based on highly irregular activity by Mr. Makhijani and the lenders.

11.    In addition to the foregoing, I learned that Mr. Makhijani recorded fraudulent liens on our personal properties (held through wholly owned LLC's) and pledged the fraudulent loans to Western Alliance Bank.

12.    The foregoing conduct resulted in protracted litigation. It is important to point out that none of the collection lawsuits from the lenders have asserted that I engaged in any wrongful conduct. They simply assert that I am obligated for their self-inflicted losses through the alleged guaranties.

13.    In one of the litigations, plaintiff Zions Bancorporation N.A. ("Zions") obtained a writ of attachment as to our assets from a judicial referee, which was first issued on January 19, 2026. Co-Defendants in that action have appealed the writ of attachment. Julie and I filed bankruptcy within 90 days of the issuance of that writ of attachment. The timing of this case was intended to statutorily terminate the writ of attachment and preserve all assets for the benefit of all creditors.

14.    Julie and I have substantial assets, consisting of directly owned real property and LLC interests that hold real properties. Other than two breach of guaranty actions related to the foregoing fraudulent conduct which we believe was orchestrated by Deba Shyam and Mr. Makhijani, we have relatively manageable debts which can be easily addressed through

continued operations of our holdings. I believe that, once the breach of guaranty litigation is resolved in our, this estate is solvent with all creditors to be paid in full.

15. During the first portion of this case, with the assistance of our professionals, we worked cooperatively with the UCC to provide information with respect to our assets. In connection with the foregoing, we are in the process of obtaining valuations of properties as well as broker proposals to commence marketing certain properties that have equity but are not cash flowing at this time.

22. In addition, recently, the Court remanded the Zions litigation back to state court (rather, private referee presiding). Discovery and litigation therein is proceeding.

23. Many creditors have reached out to us to seek extensions of deadlines to assert claims. In order to minimize needless litigation, we have stipulated to such extensions. All such extensions run through September 15-18, 2026 time period.

24. Finally, the UCC has requested certain information from us with respect to our personal property assets, which we are compiling.

25. I believe that this case in not a troubled business that needs to be reorganized, but rather to determine claims being asserted against us as a result of fraud of third parties that we were not aware of and, unfortunately, improper actions of certain lenders in furtherance of such fraud. This case consists of many decades of my successful real estate investments. Virtually all real property holdings have equity and are stable, without concern for immediate disposition or monetization to avoid deterioration in value. Rather, I believe that this case is more about claims analysis and prosecution to identify the world of claims that must be addressed and serviced through this case. As a result, additional time is needed in order to allow us to formulate a feasible reorganization strategy.

16. I respectfully submit that the requested extension is appropriate based on the following:

a. This case is extremely complex and is large in terms of assets and liabilities, as well as secured and unsecured creditors and investors.

11

b.  In light of the complexity and size of this case, it will take additional time for us to prepare adequate information and thereafter negotiate with the UCC.

c.  We are actively analyzing our real property assets to determine which can be monetized efficiently and for maximum value in order to be able to formulate consensual terms of reorganization.

d.  We are paying bills as they become due, subject to the consent of their lenders for use of cash collateral.

e.  In addition to the ongoing analysis of their real property assets, we are proceeding with litigation to be able to identify the world of claims that must be addressed and serviced through this case.

f.  With the assistance of our professionals, we have commenced discussions with the UCC, which is also conducting its own investigation with its counsel and financial advisor, concerning the terms of a plan.

g.  The case was filed less than four months ago, and this is our first request for an extension.

h.  We are not seeking an extension of exclusivity in order to pressure creditors to submit to their reorganization demands but rather to have adequate time to evaluate all our options and be able to propose a confirmable plan.

i.  The outcomes of the pending litigation matters commenced by Western Alliance Bank and Zions Bankcorp will have a significant effect on any plan to be proposed.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on July 27, 2026, at Newport Beach, California.

_____
ANDREW STUPIN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION TO AMEND SCHEDULING ORDER REGARDING DEADLINE TO FILE A DISCLOSURE STATEMENT AND PLAN AND FOR AN EXTENSION OF THE EXCLUSIVITY PERIODS OF 11 U.S.C. § 1121; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF ANDREW STUPIN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 27, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Scott R Albrecht    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Kyra E Andrassy    kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- Raymond H. Aver    ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com;jesus@averlaw.com
- Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law
- John Bistritz    jack.bistritz@afslaw.com
- Michael E Bubman    mbubman@mbn.law, aacosta@mbnlawyers.com
- Greg P Campbell    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Steven Casselberry    Steve.Casselberry@procopio.com, jessica.perez@procopio.com;emily.marsh@procopio.com;calendaringbankruptcy@procopio.com;evangelina.myers@procopio.com;lauren.hill@procopio.com
- David Coats    dacoats@raslg.com
- Marcus Colabianchi    mcolabianchi@duanemorris.com, marcus-colabianchi-2595@ecf.pacerpro.com
- Michael G D'Alba    mgd@lnbyg.com
- Dora Duru    dora.duru@bclplaw.com, verlisa.lewis@bclplaw.com,dora-duru-0321@ecf.pacerpro.com
- Amir Gamliel    amir.gamliel@ashurstperkins.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Craig S Ganz    ganzc@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Nichole Glowin    bankruptcy@zbslaw.com, nglowin@ecf.courtdrive.com
- David B Golubchik    dbg@lnbyg.com, dbg@lnbyg.com
- Arnold L Graff    agraff@wrightlegal.net, nvbkfiling@wrightlegal.net;jpowell@wrightlegal.net
- Adam M Greely    agreely@fbfk.law, dstolar@vrslaw.net
- Steven T Gubner
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Sarah Rose Hasselberger    shasselberger@marshackhays.com, shasselberger@ecf.courtdrive.com;cbastida@marshackhays.com;alinares@ecf.courtdrive.com
- Golsa Honarfar    ghonarfar@rutan.com, dmircheff@rutan.com
- Mark S Horoupian    mark.horoupian@gmlaw.com, mhoroupian@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;karen.files@gmlaw.com;courtmail@gmlaw.com
- Robert B. Kaplan    rkaplan@jeffer.com, rbk@ecf.courtdrive.com
- Ira David Kharasch    ikharasch@pszjlaw.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com;courtmail@gmlaw.com
- Marc A Lieberman    marc.lieberman@flpllp.com, addy@flpllp.com,ethan@flpllp.com
- Aaron J Malo    amalo@sheppardmullin.com, hudenka@sheppard.com;mlinker@sheppard.com
- Sam Maralan    sm@maralanlaw.com
- Matthew J Marino    mmarino@allenmatkins.com, csandoval@allenmatkins.com
- Elissa Miller    elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;courtmail@gmlaw.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- John A Moe    john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

- Michael S Myers    myersm@ballardspahr.com,
  BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Carmela Pagay    ctp@lnbyg.com
- David M Poitras    dpoitras@bg.law
- Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Joseph M Rothberg    jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
- Joshua L Scheer    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com
- Zev Shechtman    Zev.Shechtman@saul.com,
  Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- Robyn B Sokol    robyn.sokol@stinson.com,
  lydia.moya@stinson.com;dennette.mulvaney@stinson.com;dbender@leechtishman.com;jnaiya.herd@stinson.com;michelle.hemer@stinson.com
- Michael G Spector    mgspector@aol.com, mgslawoffice@aol.com
- Martin W Taylor    marty.taylor@bclplaw.com, shawn.williams@bclplaw.com,marty-taylor-5681@ecf.pacerpro.com
- Alan G Tippie    Alan.Tippie@gmlaw.com,
  atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- Jennifer R Tullius    jtullius@tulliuslaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Christopher A Ward    cward@lowenstein.com, lsuprum@lowenstein.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- David Wood    dwood@marshackhays.com,
  dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

**2. SERVED BY UNITED STATES MAIL**: On (*date*) **July 27, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July 27, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL**
Honorable Scott C. Clarkson
United States Bankruptcy Court
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 27, 2026 | D. Woo | /s/ D. Woo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                   **F 9013-3.1.PROOF.SERVICE**