DAVID B. GOLUBCHIK (State Bar No. 185520)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:   (310) 229-1244
Email: DBG@LNBYG.COM; CTP@LNBYG.COM

[Proposed] Attorneys for Chapter 11
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | ) Case No.: 8:26-bk-11202-SC |
| | ) |
| ANDREW STUPIN and JULIE STUPIN, | ) Chapter 11 Case |
| | ) Subchapter V |
| Debtors and Debtors in Possession. | ) |
| | ) **NOTICE OF MOTION AND MOTION** |
| | ) **FOR ORDER APPROVING** |
| | ) **STIPULATION AND AUTHORIZING** |
| | ) **USE OF CASH COLLATERAL AND** |
| | ) **PROVIDING ADEQUATE** |
| | ) **PROTECTION PURSUANT TO** |
| | ) **SECTIONS 361 AND 363 OF THE** |
| | ) **BANKRUPTCY CODE;** |
| | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES; DECLARATION OF** |
| | ) **ANDREW STUPIN IN SUPPORT** |
| | ) |
| | ) **SECURED CREDITOR: FIRST** |
| | ) **BANK** |
| | ) |
| | ) Hearing on Regular Notice: |
| | ) Date:   August 26, 2026 |
| | ) Time:   1:30 p.m. |
| | ) Place:  Courtroom 5C |
| | )             411 West Fourth Street |
| | )             Santa Ana, CA 92701 |
| | ) |
| | ) |
| | ) |
| | ) |

1

**PLEASE TAKE NOTICE** that at the above-captioned date, time, and location, the Honorable Scott C. Clarkson, United States Chief Bankruptcy Judge for the Central District of California (the "Court"), will hold a hearing (the "Hearing") to consider the "Notice of Motion and Motion for Order Approving Stipulation and Authorizing Use of Cash Collateral and Providing Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code" (the "Motion") filed by Andrew Stupin and Julie Stupin (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, chapter 11 bankruptcy case, in relation to the cash collateral of secured creditor First Bank ("Secured Creditor").

The Motion is made pursuant to Rules 4001-2 and 9013-1 of the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California* (the "Local Rules"), 11 U.S.C. §§ 361 and 363(c) and Rules 4001 and 9014 of the *Federal Rules of Bankruptcy Procedure* (the "Bankruptcy Rules").  The bases of the Motion include this Notice, the Motion, the memorandum of points and authorities and declaration of Andrew Stupin (the "Declaration") annexed to the Motion, the stipulation (the "Stipulation") attached to the Declaration, the record in this case, the docket in this case, all matters of which the Court may properly take judicial notice, and the oral arguments and statements of counsel for the Debtor to be made at the Hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion seeks Court approval of the Stipulation and authority for the Debtors to use the cash collateral of Secured Creditor in accordance with the Stipulation annexed as **Exhibit 1** and the budget (the "Budget") annexed as **Exhibit 2** to the Declaration, and entry of an order in substantially the form as attached as **Exhibit 3** to the Declaration.

The Debtors commenced their bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on April 17, 2026, (the "Petition Date").  The Debtors continue to manage their financial affairs, operate their businesses, and administer their bankruptcy estate as debtors in possession.  The Debtors are individuals who own in their own personal names several residential and commercial rental properties at 209 5th Street, Huntington

Beach, California, 309 5th Street, Huntington Beach, California, and 311 5th Street, Huntington Beach, California (collectively, the "Rental Properties") that generate rental income that is the collateral and cash collateral of First Bank ("Secured Creditor"). In order to maintain and operate the Rental Properties and continue to provide further rental income to the estate, the Debtors require the use of cash collateral.

Pursuant to the Motion, the Debtors seek Court authority to use cash collateral in order to pay the expenses of maintaining and operating the Rental Properties, as set forth in the Budget. The Budget reflects the Debtor's ordinary and necessary operating expenses that must be paid post-petition to preserve the Rental Properties and to keep the mortgage debt service current, which will inure to the benefit of the entire estate by preventing the accrual of unpaid interest, late fees, default fees, and attorneys' fees and costs that could be added if the loans become delinquent. While the Budget represents the Debtors' best estimates of such expenses, the needs of Rental Properties may fluctuate. Thus, the Debtors seek authority to deviate from the total expenses contained in the Budget by no more than 15%, on a cumulative basis, and to deviate by category (provided the Debtors does not pay expenses outside any of the categories) without the need for further Court order.

The Debtors submit that the Debtors' Secured Creditor is adequately protected in multiple respects. The Secured Creditor is protected by the ongoing maintenance, operations, and rental of the Rental Properties. The Secured Creditor is protected by substantial equity cushions. The Debtors are proposing to pay monthly regular mortgage payments to the Secured Creditor as further adequate protection.

If the Debtors are not permitted to use their cash collateral to maintain and operate their Rental Properties, then they will fall into disrepair, post-petition interest, late fees, default interest, and expenses will accrue value for the estate will be lost, and the estate will be harmed.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in detail in the accompanying Memorandum of Points and Authorities, the proposed use of cash collateral and the post-petition financing do not include any of the provisions set forth in Bankruptcy Rule

4001(c)(1)(B)(i) – (xi) or Local Bankruptcy Rule 4001-2(b) except as set forth in the table below:

| Provision | Cash Coll. |
|---|---|
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), | No |

4

| Provision | Cash Coll. |
|---|---|
| 544, 545, 547, 548 and 549. | |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, the Stipulation does not specify how the payments will be applied or whether those payments will be applied to principal, interest, fees, costs, or other items. |
| Findings of fact on matters extraneous to the approval process. | No |

The Debtors have served notice of the Motion on the United States Trustee, secured creditors or their counsel, the Official Committee of Unsecured Creditors, and parties requesting special notice.

A copy of the proposed order granting the Motion is attached as **Exhibit 3** hereto.

**WHEREFORE,** the Debtors respectfully request that this Court enter an order:

(1)    affirming the adequacy of the Notice given herein;

(2)    granting the Motion on a final basis;

(3)    entering an order substantially in the form of the proposed order attached as **Exhibit 3** hereto;

(4)    approving the Stipulation attached as **Exhibit 1** hereto;

(5)    Authorizing the Debtors to use cash collateral to pay all of the expenses set forth in the Budget attached as **Exhibit 2** hereto, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis;

(6)    waiving the stay of FRBP 6004; and

5

(7)    granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: August 5, 2026                    Levene, Neale, Bender, Yoo & Golubchik L.L.P.

By: ___*/s/ David Golubchik*_____
DAVID GOLUBCHIK
CARMELA T. PAGAY
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

6

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. STATEMENT OF FACTS**

**A. General Background**

1. Andrew Stupin ("Andrew") and Julie Stupin ("Julie") (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession herein, commenced their bankruptcy cases by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on April 17, 2026, (the "Petition Date").

2. The Debtors continue to manage their financial affairs, operate their businesses, and administer their bankruptcy estate as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**B. Events Leading to the Debtors' Bankruptcy Filing**

3. Andrew is a real estate investor. Codebtor Julie is Andrew's wife.

4. Andrew was born in 1947 in San Gabriel, California, and shortly thereafter moved to Monterey Park, where he excelled in school and sports. Wanting to be a professional baseball player, Andrew excelled at his endeavors through high school and college where an injury forced him to change his future plans and aspirations.

5. Although Andrew's initial aspirations after sports were to become an attorney, his interests turned to teaching, so he pursued and obtained a secondary teaching credential after his B.A. Degree, including teaching Sunday School at his family church where he grew up.

6. Andrew obtained a teaching position in the highly acclaimed Huntington Beach High School District at Edison High School right after receiving his teaching credential. Although challenging, Andrew enjoyed his new career, including being voted "Teacher of the Year" several times. In fact, Andrew helped start the Advanced Placement (AP) for Government in Orange County, where a student can take an AP class and take the national AP test to gain college credits while in high school. This program was very successful and has gained popularity over the years throughout the country.

7.    In the 1970's, Andrew started his journey in real estate. After saving money from his teaching career, Andrew bought his first investment for $28,000 – two (2) separate houses on two (2) lots. That was in 1972 and prices were starting to increase rapidly in the "Great Orange County" boom. Andrew lived in one house and rented out the other. The rent from the rental was more than the mortgage. It was then that Andrew caught the real estate bug and thought this to be something to move forward on.

8.    Over the decades, Andrew invested in many properties not only throughout Orange County, but California and other states.  Andrew always focused on value added and income generating properties.  Over time, many friends and others asked to invest alongside Andrew in such investments.  His success continued to grow.

9.    Approximately 10 years ago, Andrew (and his friend and co-investor Gerald Marcil) were approached by a third party (Mahender Makhijani) who represented that he had connections with many lenders to acquire distressed loans and real estate.  He proposed to work together to acquire loans and properties.

10.    Through the parties' relationship, Mr. Makhijani maintained all relationships with lenders and financing sources and managed the investments.  Mr. Makhijani's staff at Continuum provided all accounting and documentation and financing with respect to such investments.

11.    In the last several years, Mr. Makhijani obtained numerous warehouse loans from lenders including, without limitation, approximately $98 million from Western Alliance Bank, and approximately $60 million from Zions Bank.  Mr. Makhijani represented to the lenders that the purpose of the loans was to refinance existing properties and acquire new properties.  The lenders assert that Andrew and Mr. Marcil signed guaranties for such debts.

12.    In the fall of 2025, Andrew learned that the foregoing banks have sued him on account of the alleged guaranties based on the follows:

   a.  Mr. Makhijani drew down on the entirety of the warehouse loans;

   b.  Mr. Makhijani did not use the proceeds of the warehouse loans to refinance the existing debt or to acquire new assets for the borrowers;

8

c. There is no information where the loan proceeds went or how they were utilized;

d. The lenders did not conduct title searches on any of the alleged properties to be refinanced;

e. The lenders did not request or receive reconveyances of alleged liens that were to be refinanced;

f. The lenders did not open escrows for any of the financing; and

g. The lenders did not conduct any due diligence while Mr. Makhijani withdrew almost $200 million without oversight, supervision or control.

13. In addition to the foregoing, Andrew learned that Mr. Makhijani recorded fraudulent liens on Debtors' personal properties (held through wholly-owned LLC's) and pledged the fraudulent loans to Western Alliance Bank.

14. The foregoing conduct resulted in protracted litigation. It is important to point out that none of the collection lawsuits from the lenders have asserted that Andrew engaged in any wrongful conduct. They simply assert that Andrew is obligated for their self-inflicted losses through the alleged guaranty.

15. Approximately 90 days prior to the Petition Date, Zions Bank obtained a writ of attachment as to Debtors' assets. The timing of this case was intended to terminate the writ of attachment and preserve all assets for the benefit of all creditors.

16. Through this case, the Debtors intend to preserve and operate their assets while prosecuting claims against lenders and third parties for the damage caused to the Debtors and their assets. Pending the resolution of such actions, the Debtors intend to comply with their obligations as debtors in possession

17. Accordingly, the Debtors determined in their reasonable business judgment that it was in the best interest of their estate to file this current bankruptcy case.

9

**C.      Secured Creditor and Cash Collateral**

18.      The Debtors are individuals who own in their own personal names several residential and commercial rental properties at 209 5th Street, Huntington Beach, California, 309 5th Street, Huntington Beach, California, and 311 5th Street, Huntington Beach, California (collectively, the "Rental Properties") that generate rental income that is the collateral and cash collateral of First Bank ("Secured Creditor").

19.      In order to maintain and operate the Rental Properties and continue to provide further rental income to the estate, the Debtors require the use of cash collateral.

20.      Prepetition, the Debtors entered into loan agreements with Secured Creditor as follows:

       a. Loan xxx226672 (the "226672 Loan"): Promissory Note dated August 3, 2007, in the original principal sum of $530,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreement dated March 30, 2023; Secured by Deed of Trust dated August 3, 2007, recorded in the Office Records of Orange County on August 10, 2007, as Instrument No. 200700501864 encumbering the real property located at 311 5th St., Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $3,079.54 due on the 3rd day of each month.  The unpaid principal balance as of June 15, 2026 is $196,335.18.  True and correct copies of the Promissory Note, Change in Terms Agreement and Deed of Trust in connection with the 226672 Loan (collectively, the "226672 Loan Documents") are attached as Exhibits A through C to the Stipulation and incorporated herein by this reference.

       b. Loan xxx252465 (the "252465 Loan"): Promissory Note dated September 18, 2008, in the original principal sum of $1,000,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreements dated May 20, 2014, April 30, 2015, September 18, 2018, September 18, 2023 and December 18,

10

2023; Secured by Deed of Trust dated September 18, 2008, recorded in the Official Records of Orange County on September 25, 2008, as Instrument No 2008000448677 encumbering the real property located at 209 5th Street, Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $6,668.90 due on the 18th day of each month. The unpaid principal balance as of June 15, 2026 is $449,928.81. True and correct copies of the Promissory Note, each of the Change in Terms Agreements dated May 20, 2014, April 30, 2015, September 18, 2018, September 18, 2023 and December 18, 2023 and the Deeds of Trust (collectively, the "252465 Loan Documents") are attached as Exhibits D through J to the Stipulation and incorporated herein.

c.  Loan 276086 (the "276086 Loan"): Promissory Note dated April 30, 2015 in the original principal sum of $340,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreements dated April 30, 2020 and April 30, 2025; Deed of Trust dated April 30, 2015, recorded in the Official Records of Orange County on May 5, 2015, as Instrument No. 2015000230312 encumbering real property located at 309 5th Street, Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $1,961.36 due on the 30th day of each month. The unpaid principal balance as of June 15, 2026 is $234,846.59. True and correct copies of the Promissory Note, both Change In Terms Agreements and the Deed of Trust (collectively, the "276086 Loan Documents") are attached as Exhibits K through N to the Stipulation and incorporated herein.

d.  Loan No xxx 314444 (the "314444 Loan"): Promissory Note dated March 30, 2023 in the original principal sum of $2,000,000.00; Change in Terms Agreements dated March 29, 2024, March 28, 2025 and March 27, 2026, extending the loan on the same terms and conditions in the ordinary course of

business, with a new Maturity Date of September 27, 2026; Deed of Trust dated September 18, 2008, recorded in the Official Records of Orange County on September 25, 2008, as Instrument No. 2008000448677 encumbering real property located at 209 5th Street, Huntington Beach, CA 92648; Monthly payments of interest only in the amount of $12,047.28 are due on the 28th day of each month.    The unpaid principal balance as of June 15, 2026, is $1,998,627.00.   True and correct copies of the Promissory Note, each of the Change in Terms Agreements and Deed of Trust are attached as Exhibits O through S to the Stipulation and incorporated herein by this reference.

     e.  Loan No. xxx316663 (the "316663 Loan"): Promissory Note dated January 12, 2024 in the original principal sum of $1,000,000.00; Change in Terms Agreements dated March 29, 2024, March 28, 2025 and March 27, 2026, extending the loan on the same terms and conditions in the ordinary course of business, with a new Maturity Date of September 27, 2026; Deed of Trust dated January 12, 2024, recorded in the Official Records of Orange County on January 18, 2024, as Instrument No. 2024000011789 encumbering real property located at 311 5th Street, Huntington Beach, CA 92648; Monthly payments of interest only in the amount of $6,027.73 due on the 29th day of each month.   The unpaid principal balance as of June 15, 2026 is $999,992.00.   True and correct copies of the Promissory Note, Change in Terms Agreements and Deed of Trust (collectively, the "316663 Loan Documents") are attached as Exhibits T through X to the Stipulation and incorporated herein by this reference.

21.     The rent generated from the Rental Properties constitutes the cash collateral ("Cash Collateral") of Secured Creditor, pursuant to 11 U.S.C. §§ 361, 362, 363(a), (c)(2), and (e).

12

22.    The Debtors and Secured Creditor has stipulated to the use of cash collateral and providing of adequate protection as set forth in the Stipulation.

23.    Subject to the terms and conditions of the Stipulation, the Parties agree that the Debtors are authorized to use Cash Collateral for the ordinary and necessary expenses (the "Expenses") set forth in the cash flow projections (the "Budget") attached as **Exhibit 2** hereto.

24.    The Debtors shall remit adequate protection payments to Secured Creditor in the amount of net rents ("Net Rents") calculated as the gross rents actually collected, minus the Expenses actually paid, with such adequate protection payments to Secured Creditor paid no later than the 15th of each month.  The first payment shall be made by no later than three business days after the entry of an order (the "Order Date") approving the Stipulation, and shall include all the Net Rents from the Petition Date to the Order Date.

25.    The Debtors' use of Cash Collateral may be renewed upon subsequent stipulation with the Secured Creditor or by order of this Court.

26.    As adequate protection, Secured Creditor shall receive a replacement lien (the "Replacement Lien") on all post-petition revenue generated from the Rental Properties to the same extent, priority, and validity that Secured Creditor's lien attached to the Cash Collateral. The Replacement Lien is valid, perfected, and enforceable and shall not be subject to dispute, avoidance, or subordination, and this Replacement Lien need not be subject to additional recording.  The Secured Creditor is authorized to file a certified copy of any cash collateral order and any other necessary and related documents to further perfect its lien.  Notwithstanding any of the foregoing, the Replacement Lien shall not include any liens or claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549.

27.    Nothing in the Stipulation shall be construed as or constitute a waiver or acquiescence of either Party's respective rights under the Loan Documents.

28.    The Debtors shall maintain insurance on the Rental Properties and designate Secured Creditor as a loss payee or additional insured in accordance with the terms of the Loan Documents.

13

## II.    **COMPLIANCE WITH FRBP 4001(c) & LBR 4001-2**

Pursuant to Rules 4001(b), 4001(c)(1)(B), and 4001(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 4001-2(b) and (d), the Debtors submit that the relief requested by the Debtors pertaining to the Stipulation and use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| Provision | Cash Coll. |
| --- | --- |
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those | No |

14

| **Provision** | **Cash Coll.** |
|---|---|
| for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, the Stipulation does not specify how the payments will be applied or whether those payments will be applied to principal, interest, fees, costs, or other items. |
| Findings of fact on matters extraneous to the approval process. | No |

## III.   DISCUSSION

**A.      The Debtors Must Be Authorized to Use Cash Collateral to Operate, Maintain and Preserve the Property and Estate in Accordance with the Budget**

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

A debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under
> section. . .1108. . . of this title and unless the court orders otherwise,
> the trustee may enter into transactions, including the sale or lease of

15

> property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C.§ 363(c)(l). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. See 11 U.S.C. §§1107 & 1108.

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ." 11 U.S.C. §363(a). Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A) each entity that has an interest in such cash collateral consents; or
> (B)     the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr.C.D.Cal.1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir.B.A.P.1991). In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr.D.N.H.1993), quoting In re Stein, 19 B.R. 458, 459. (Bankr.E.D.Pa.1982).

One source of revenue available to the Debtors to use to maintain and operate the Rental Properties is their cash on hand and cash collateral generated from the rents of the Rental Properties. If the Debtors are not permitted to use cash collateral to maintain and operate the Rental Properties, it is a virtual certainty that the Rental Properties will fall into disrepair, the value of the Rental Properties will drop, and the estate and creditors will be harmed.

16

The Rental Properties' operating expenses that the Debtors must be able to pay during the pendency of this case are set forth in the Budget through October 23, 2026.  The Budget reflects the Debtors' ordinary and necessary operating expenses for the Rental Properties that must be paid postpetition to preserve the Rental Properties' value and prevent post-petition interest, fees, costs, and penalties from accruing unnecessarily.  While the Budget represents the Debtors' best estimates of such expenses, the needs of the Rental Properties may fluctuate.  Thus, the Debtors seek authority to deviate from the total expenses contained in the Budget by no more than 15% on a line-item and cumulative basis without the need for further Court order.

**B.    Secured Creditor Is Adequately Protected**

To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code.  Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected.  In re Mellor, 734 F.2d 1396, 1400 (9th Cir.1984).  See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir.1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr.C.D.Cal.l988) ("McCombs").

The concept of adequate protection is derived from the Fifth Amendment protection of property interests.  Wright v. Union Central Life Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); Louisville Joint Stock Land Lender v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).  The principle of adequate protection reconciles the competing interests of the debtor, who needs time to reorganize free from harassing creditors, and the secured creditor, which is entitled to constitutional protection for its bargained-for property interest.  See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), 1978 U.S. Code Cong. & Admin. News, p. 5787; In re Jug End in the Berkshires, Inc., 46 B.R. 892 (Bankr.D.Mass.1985).  Although the notion of adequate protection is derived from constitutional grounds, it also encompasses sound policy considerations.  Secured creditors should not be deprived of the benefit of their bargain.  In re Jug End in the Berkshires, Inc. at 899; In re Winslow Center Associates, 32 B.R. 685, 688 (Bankr. E.D. Pa. 1983).

17

Pursuant to the Supreme Court case of <u>United Savings Association v. Timbers of Inwood Forest Associates</u>, 108 S.Ct. 626, 629 (1988) and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim.  108 S.Ct. at 630.  <u>See</u> <u>also</u> <u>McCombs</u>, <u>Id.</u>, at 266.  Section 506(a) "limit[s] the secured status of a creditor (*i.e.*, the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." <u>McCombs</u>, <u>Id.</u>, at 266.  If an entity's claim exceeds the value of its interest in the property, only the interest is entitled to protection; the remainder of the claim is unsecured and does not give rise to an interest in property that requires protection. *See* 11 U.S.C. § 506(a); *Wright v. Union Central Life Ins. Co.*, 311 U.S. 278, 278; 61 S.Ct. 196, 199 (1940).  Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 266 (Bankr. C.D. Cal. l988).

The Secured Creditor's secured interests will be adequately protected by the Debtors' ongoing maintenance of the properties that are their collateral.  The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. <u>In re Triplett</u>, 87 B.R. 25 (Bankr.W.D.Tex.1988). <u>See also</u> <u>In re Stein</u>, 19 B.R. 458 (Bankr.E.D.Pa.1982).  The <u>Stein</u> Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. <u>See</u> <u>also,</u> <u>In re McCombs</u>, <u>supra</u>, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

As reflected in the Budget, the Debtors' continued maintenance of the properties will adequately protect the Secured Creditor as the Debtors will continue to generate new revenue and preserve the value of the estate as a going concern.  Other courts have determined that a debtor's continued business operations can constitute the adequate protection of a secured

18

creditor.  See Matter of Pursuit Athletic Footwear, Inc., 193 B.R. 713 (Bankr.D.Del.1996); In re Newark Airport/Hotel Ltd. Partnership, 156 B.R. 444, 450 (Bankr.D.N.J.1993); In re Dynaco, 162 B.R. 389, 394-5 (Bankr.D.N.H.1993); In re Immenhausen Corp., 164 B.R. 347, 352 (Bankr.M.D.Fla.1994).

Additionally, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization.

In In re O'Connor, supra, the Tenth Circuit stated:

> "In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization.  This quest is the ultimate goal of Chapter 11.  Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end.  Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

808 F.2d at 1937.

The use of cash collateral is critical to the Debtors' ability to implement an effective reorganization strategy for the benefit of all creditors.  As demonstrated herein, the use of the Debtors' cash collateral, in accordance with the Budget, will preserve and maximize the Debtors' assets for the benefit of the estate and all creditors.  If the Debtors are not permitted to use cash collateral to operate and maintain their properties, then value will be eviscerated to the severe prejudice of all the creditors of the estate.

**E.     Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2.**

Pursuant to Rules 4001(b) and 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 4001-2(b) and (d), the Debtor submits that the relief requested by the Debtor pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

19

| **Provision** | **Cash Coll.** |
|---|---|
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash | No |

20

| Provision | Cash Coll. |
|---|---|
| collateral in the absence of the secured party's consent | |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, the Stipulation does not specify how the payments will be applied or whether those payments will be applied to principal, interest, fees, costs, or other items. |
| Findings of fact on matters extraneous to the approval process. | No |

Pursuant to Bankruptcy Rules 4001(b)(1)(C) and 4001(c)(1)(C), the Debtors required to serve a copy of the Motion on any entity with an interest in the Debtors' cash collateral, Official Committee of Unsecured Creditors, and any other entity that the Court directs.  The Debtors have complied with the foregoing by serving a copy of the Motion, the proposed order, the supporting declarations and other pleadings on the secured creditors, the Official Committee of Unsecured Creditors, the United States Trustee, and parties requesting special notice.

In addition, in compliance with Local Bankruptcy Rule 4001-2, the Debtors have filed concurrently herewith the mandatory Court-approved Form F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which discloses whether the proposed Order contains certain provisions of findings of fact.  Accordingly, the Motion complies with the procedural requirements of Local Bankruptcy Rule 4001-2.

### F.    Waiver of Any Applicable Stay is Appropriate

The Debtors request a waiver of the 14-day stay provided for under Bankruptcy Rule 6004 because the Debtors need to use cash collateral transaction as soon as possible to maintain the Debtors' properties for the benefit of the Debtors' estate.  The Debtors request that any

21

applicable stay, including the stay provided under Bankruptcy Rule 6004, be waived to allow Order on this Motion to become immediately effective.

### IV. CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter an order:

(1) affirming the adequacy of the Notice given herein;

(2) granting the Motion on a final basis;

(3) entering an order substantially in the form of the proposed order attached as **Exhibit 3** hereto;

(4) approving the Stipulation attached as **Exhibit 1** hereto;

(5) Authorizing the Debtors to use cash collateral to pay all of the expenses set forth in the Budget attached as **Exhibit 2** hereto, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis;

(6) waiving the stay of FRBP 6004; and

(7) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: August 5, 2026        Levene, Neale, Bender, Yoo & Golubchik L.L.P.

By: ___*/s/ David Golubchik*___
        DAVID GOLUBCHIK
        CARMELA T. PAGAY
        LEVENE, NEALE, BENDER,
        YOO & GOLUBCHIK L.L.P.
        [Proposed] Attorneys for Chapter 11
        Debtor and Debtor in Possession

22

**<u>DECLARATION OF ANDREW STUPIN</u>**

I, Andrew Stupin, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am one of the chapter 11 debtors and debtors-in-possession in the above-captioned chapter 11 bankruptcy case.

3. I make this declaration in support of the Motion to which it is attached. Unless otherwise stated with specificity or implied by context, initial capitalized defined terms used in this declaration have the same meanings as ascribed to them in the Motion.

4. A true and correct copy of the Stipulation is attached as **Exhibit 1** hereto.

5. A true and correct copy of the Budget is attached as **Exhibit 2** hereto.

6. A true and correct copy of the proposed Order is attached as **Exhibit 3** hereto.

7. My wife, Julie Stupin ("<u>Julie</u>") (a "<u>Debtor</u>" and, collectively with me, "<u>Debtors</u>"), commenced our bankruptcy case by filing a voluntary petition under chapter on April 17, 2026, (the "<u>Petition Date</u>").

8. We continue to manage our financial affairs, operate our businesses, and administer our bankruptcy estate as debtors in possession.

9. I am a real estate investor.

10. I was born in 1947 in San Gabriel, California, and shortly thereafter moved to Monterey Park, where I excelled in school and sports. Wanting to be a professional baseball player, I excelled at my endeavors through high school and college where an injury forced me to change my future plans and aspirations.

11. Although my initial aspirations after sports were to become an attorney, my interests turned to teaching, so I pursued and obtained a secondary teaching credential after my B.A. Degree, including teaching Sunday School at my family church where I grew up.

12. I obtained a teaching position in the highly acclaimed Huntington Beach High School District at Edison High School right after receiving my teaching credential. Although

challenging, I enjoyed my new career, including being voted "Teacher of the Year" several times.  I helped start the Advanced Placement (AP) for Government in Orange County, where a student can take an AP class and take the national AP test to gain college credits while in high school. This program was very successful and has gained popularity over the years throughout the country.

13.    In the 1970's, I started my journey in real estate. After saving money from my teaching career, I bought my first investment for $28,000 – two (2) separate houses on two (2) lots. That was in 1972 and prices were starting to increase rapidly in the "Great Orange County" boom. I lived in one house and rented out the other. The rent from the rental was more than the mortgage. It was then that I caught the real estate bug and thought this to be something to move forward on.

14.    Over the decades, I invested in many properties not only throughout Orange County, but California and other states. I always focused on value added and income generating properties.  Over time, many friends and others asked to invest alongside me in such investments.  My success continued to grow.

15.    Approximately 10 years ago, my friend and co-investor, Gerald Marcil, and I were approached by a third party (Mahender Makhijani) who represented that he had connections with many lenders to acquire distressed loans and real estate.  He proposed to work together to acquire loans and properties.

16.    Through our relationship, Mr. Makhijani maintained all relationships with lenders and financing sources and managed the investments.  Mr. Makhijani's staff at Continuum provided all accounting and documentation and financing with respect to such investments.

17.    In the last several years, Mr. Makhijani obtained numerous warehouse loans from lenders including, without limitation, approximately $98 million from Western Alliance Bank, and approximately $60 million from Zions Bank.  Mr. Makhijani represented to the lenders that the purpose of the loans was to refinance existing properties and acquire new properties.  The lenders assert that Mr. Marcil and I signed guaranties for such debts.

24

18. In the fall of 2025, I learned that the foregoing banks have sued me on account of the alleged guaranties based on the following:

    a. Mr. Makhijani drew down on the entirety of the warehouse loans;

    b. Mr. Makhijani did not use the proceeds of the warehouse loans to refinance the existing debt or to acquire new assets for the borrowers;

    c. There is no information where the loan proceeds went or how they were utilized;

    d. The lenders did not conduct title searches on any of the alleged properties to be refinanced;

    e. The lenders did not request or receive reconveyances of alleged liens that were to be refinanced;

    f. The lenders did not open escrows for any of the financing; and

    g. The lenders did not conduct any due diligence while Mr. Makhijani withdrew almost $200 million without oversight, supervision or control.

19. In addition to the foregoing, I learned that Mr. Makhijani recorded fraudulent liens on my personal properties (held through wholly-owned LLC's) and pledged the fraudulent loans to Western Alliance Bank.

20. The foregoing conduct resulted in protracted litigation. It is important to point out that none of the collection lawsuits from the lenders have asserted that I engaged in any wrongful conduct. They simply assert that I am obligated for their self-inflicted losses through the alleged guaranty.

21. Approximately 90 days prior to the Petition Date, Zions Bank obtained a writ of attachment as to my assets. The timing of this case was intended to terminate the writ of attachment and preserve all assets for the benefit of all creditors.

22. Through this case, we intend to preserve and operate our assets while prosecuting claims against lenders and third parties for the damage caused to us and our assets. Pending the resolution of such actions, we intend to comply with our obligations as debtors in possession.

23. Accordingly, we determined in our reasonable business judgment that it was in the best interest of our estate to file this current bankruptcy case.

24. Julie and I own in our own personal names several residential and commercial rental properties at 209 5th Street, Huntington Beach, California, 309 5th Street, Huntington Beach, California, and 311 5th Street, Huntington Beach, California (collectively, the "Rental Properties") that generate rental income that is the collateral and cash collateral of First Bank ("Secured Creditor").

25. In order to maintain and operate the Rental Properties and continue to provide further rental income to the estate, the Debtors require the use of cash collateral.

26. Prepetition, we entered into loan agreements with Secured Creditor as follows:

    a. Loan xxx226672 (the "226672 Loan"): Promissory Note dated August 3, 2007, in the original principal sum of $530,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreement dated March 30, 2023; Secured by Deed of Trust dated August 3, 2007, recorded in the Office Records of Orange County on August 10, 2007, as Instrument No. 200700501864 encumbering the real property located at 311 5th St., Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $3,079.54 due on the 3rd day of each month. The unpaid principal balance as of June 15, 2026 is $196,335.18. True and correct copies of the Promissory Note, Change in Terms Agreement and Deed of Trust in connection with the 226672 Loan (collectively, the "226672 Loan Documents") are attached as Exhibits A through C to the Stipulation and incorporated herein by this reference.

    b. Loan xxx252465 (the "252465 Loan"): Promissory Note dated September 18, 2008, in the original principal sum of $1,000,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreements dated May 20, 2014, April 30, 2015, September 18, 2018, September 18, 2023 and December 18,

26

2023; Secured by Deed of Trust dated September 18, 2008, recorded in the Official Records of Orange County on September 25, 2008, as Instrument No 2008000448677 encumbering the real property located at 209 5th Street, Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $6,668.90 due on the 18th day of each month. The unpaid principal balance as of June 15, 2026 is $449,928.81. True and correct copies of the Promissory Note, each of the Change in Terms Agreements dated May 20, 2014, April 30, 2015, September 18, 2018, September 18, 2023 and December 18, 2023 and the Deeds of Trust (collectively, the "252465 Loan Documents") are attached as Exhibits D through J to the Stipulation and incorporated herein.

c. Loan 276086 (the "276086 Loan"): Promissory Note dated April 30, 2015 in the original principal sum of $340,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreements dated April 30, 2020 and April 30, 2025; Deed of Trust dated April 30, 2015, recorded in the Official Records of Orange County on May 5, 2015, as Instrument No. 2015000230312 encumbering real property located at 309 5th Street, Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $1,961.36 due on the 30th day of each month. The unpaid principal balance as of June 15, 2026 is $234,846.59. True and correct copies of the Promissory Note, both Change In Terms Agreements and the Deed of Trust (collectively, the "276086 Loan Documents") are attached as Exhibits K through N to the Stipulation and incorporated herein.

d. Loan No xxx 314444 (the "314444 Loan"): Promissory Note dated March 30, 2023 in the original principal sum of $2,000,000.00; Change in Terms Agreements dated March 29, 2024, March 28, 2025 and March 27, 2026, extending the loan on the same terms and conditions in the ordinary course of

27

business, with a new Maturity Date of September 27, 2026; Deed of Trust dated September 18, 2008, recorded in the Official Records of Orange County on September 25, 2008, as Instrument No. 2008000448677 encumbering real property located at 209 5th Street, Huntington Beach, CA 92648; Monthly payments of interest only in the amount of $12,047.28 are due on the 28th day of each month.    The unpaid principal balance as of June 15, 2026, is $1,998,627.00.    True and correct copies of the Promissory Note, each of the Change in Terms Agreements and Deed of Trust are attached as Exhibits O through S to the Stipulation and incorporated herein by this reference.

e.    Loan No. xxx316663 (the "316663 Loan"): Promissory Note dated January 12, 2024 in the original principal sum of $1,000,000.00; Change in Terms Agreements dated March 29, 2024, March 28, 2025 and March 27, 2026, extending the loan on the same terms and conditions in the ordinary course of business, with a new Maturity Date of September 27, 2026; Deed of Trust dated January 12, 2024, recorded in the Official Records of Orange County on January 18, 2024, as Instrument No. 2024000011789 encumbering real property located at 311 5th Street, Huntington Beach, CA 92648; Monthly payments of interest only in the amount of $6,027.73 due on the 29th day of each month.    The unpaid principal balance as of June 15, 2026 is $999,992.00.    True and correct copies of the Promissory Note, Change in Terms Agreements and Deed of Trust (collectively, the "316663 Loan Documents") are attached as Exhibits T through X to the Stipulation and incorporated herein by this reference.

27.    The rent generated from the Rental Properties constitutes the Cash Collateral of Secured Creditor.

28.    The Secured Creditor and I have stipulated to the use of cash collateral and providing of adequate protection as set forth in the Stipulation.

28

29. Subject to the terms and conditions of the Stipulation, Secured Creditor and I agree that I am authorized to use Cash Collateral for the ordinary and necessary expenses (the "Expenses") set forth in the cash flow projections (the "Budget") attached as **Exhibit 2** hereto.

30. I shall remit adequate protection payments to Secured Creditor in the amount of net rents ("Net Rents") calculated as the gross rents actually collected, minus the Expenses actually paid, with such adequate protection payments to Secured Creditor paid no later than the 15th of each month. The first payment shall be made by no later than three business days after the entry of an order (the "Order Date") approving the Stipulation, and shall include all the Net Rents from the Petition Date to the Order Date.

31. My use of Cash Collateral may be renewed upon subsequent stipulation with the Secured Creditor or by order of this Court.

32. As adequate protection, Secured Creditor shall receive a replacement lien (the "Replacement Lien") on all post-petition revenue generated from the Rental Properties to the same extent, priority, and validity that Secured Creditor's lien attached to the Cash Collateral. The Replacement Lien is valid, perfected, and enforceable and shall not be subject to dispute, avoidance, or subordination, and this Replacement Lien need not be subject to additional recording. The Secured Creditor is authorized to file a certified copy of any cash collateral order and any other necessary and related documents to further perfect its lien. Notwithstanding any of the foregoing, the Replacement Lien shall not include any liens or claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549.

33. Nothing in the Stipulation shall be construed as or constitute a waiver or acquiescence of either Party's respective rights under the Loan Documents.

34. I shall maintain insurance on the Rental Properties and designate Secured Creditor as a loss payee or additional insured in accordance with the terms of the Loan Documents.

35. I submit that the relief requested pertaining to the Stipulation and use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| Provision | Cash Coll. |
| --- | --- |

29

| **Provision** | **Cash Coll.** |
|---|---|
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash | No |

30

| Provision | Cash Coll. |
|---|---|
| collateral in the absence of the secured party's consent | |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, the Stipulation does not specify how the payments will be applied or whether those payments will be applied to principal, interest, fees, costs, or other items. |
| Findings of fact on matters extraneous to the approval process. | No |

36.    I request that the Court grant the Motion.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on July 𝐇, 2026, at Huntington Beach, California.

ANDREW STUPIN

31

# EXHIBIT "1"

DAVID B. GOLUBCHIK (State Bar No. 185520)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: DBG@LNBYG.COM; CTP@LNBYG.COM

[Proposed] Attorneys for Chapter 11
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION**

|  |  |
|---|---|
| In re:<br><br>ANDREW STUPIN and JULIE STUPIN,<br><br>    Debtors and Debtors in Possession. | Case No.: 8:26-bk-11202-SC<br><br>Chapter 11 Case<br><br>**STIPULATION AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANDREW STUPIN IN SUPPORT THEREOF**<br><br>**SECURED CREDITOR: FIRST BANK**<br><br>Hearing on Regular Notice:<br>Date:    August 26, 2026<br>Time:    1:30 p.m.<br>Place:    Courtroom 5C<br>           411 West Fourth Street<br>           Santa Ana, CA 92701 |

Andrew Stupin and Julie Stupin (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, chapter 11 bankruptcy case, on the one hand, and First Bank ("Secured Creditor") on the other hand, by and through their respective undersigned counsel of record, hereinafter each a "Party" and, collectively, the "Parties," hereby stipulate and agree as follows:

**RECITALS**

A.     The Debtors commenced their bankruptcy cases by filing a voluntary petition under chapter 11 of title 11, sections 101, *et seq.* of the United States Code (the "Bankruptcy Code") on April 17, 2026, (the "Petition Date").

B.     The Debtors continue to manage their financial affairs, operate their businesses, and administer their bankruptcy estate as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.     Recitals Regarding Loan Documents between Debtors and First Bank

1.     Loan xxx226672 (the "226672 Loan")

Promissory Note dated August 3, 2007, in the original principal sum of $530,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreement dated March 30, 2023; Secured by Deed of Trust dated August 3, 2007, recorded in the Office Records of Orange County on August 10, 2007, as Instrument No. 200700501864 encumbering the real property located at 311 5th St., Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $3,079.54 due on the 3rd day of each month.  The unpaid principal balance as of June 15, 2026 is $196,335.18.  True and correct copies of the Promissory Note, Change in Terms Agreement and Deed of Trust in connection with the 226672 Loan (collectively, the "226672 Loan Documents") are attached hereto as Exhibits A through C and incorporated herein by this reference.

2.     Loan xxx252465 (the "252465 Loan")

Promissory Note dated September 18, 2008, in the original principal sum of $1,000,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreements dated May 20, 2014, April 30, 2015, September 18, 2018, September 18, 2023 and December 18, 2023; Secured by Deed of Trust dated September 18, 2008, recorded in the Official Records of Orange

2

County on September 25, 2008, as Instrument No 2008000448677 encumbering the real property located at 209 5th Street, Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $6,668.90 due on the 18th day of each month.  The unpaid principal balance as of June 15, 2026 is $449,928.81.  True and correct copies of the Promissory Note, each of the Change in Terms Agreements dated May 20, 2014, April 30, 2015, September 18, 2018, September 18, 2023 and December 18, 2023 and the Deeds of Trust (collectively, the "252465 Loan Documents") are attached hereto as Exhibits D through J and incorporated herein by this reference.

   3. Loan 276086 (the "276086 Loan")

   Promissory Note dated April 30, 2015 in the original principal sum of $340,000.00, executed by Debtors in favor of First Bank; Change in Terms Agreements dated April 30, 2020 and April 30, 2025; Deed of Trust dated April 30, 2015, recorded in the Official Records of Orange County on May 5, 2015, as Instrument No. 2015000230312 encumbering real property located at 309 5th Street, Huntington Beach, CA 92648; Monthly installments of principal and interest in the amount of $1,961.36 due on the 30th day of each month.  The unpaid principal balance as of June 15, 2026 is $234,846.59.  True and correct copies of the Promissory Note, both Change In Terms Agreements and the Deed of Trust (collectively, the "276086 Loan Documents") are attached hereto as Exhibits K through N and incorporated herein by this reference.

   4. Loan No xxx 314444 (the "314444 Loan")

   Promissory Note dated March 30, 2023 in the original principal sum of $2,000,000.00; Change in Terms Agreements dated March 29, 2024, March 28, 2025 and March 27, 2026, extending the loan on the same terms and conditions in the ordinary course of business, with a new Maturity Date of September 27, 2026; Deed of Trust dated September 18, 2008, recorded in the Official Records of Orange County on September 25, 2008, as Instrument No. 2008000448677 encumbering real property located at 209 5th Street, Huntington Beach, CA 92648; Monthly payments of interest only in the amount of $12,047.28 are due on the 28th day of each month.  The unpaid principal balance as of June 15, 2026, is $1,998,627.00.  True and correct copies of the Promissory Note, each of the Change in Terms Agreements and Deed of Trust are attached hereto as Exhibits O through S and incorporated herein by this reference.

<div align="center">3</div>

5.    Loan No. xxx316663 (the "316663 Loan")

Promissory Note dated January 12, 2024 in the original principal sum of $1,000,000.00; Change in Terms Agreements dated March 29, 2024, March 28, 2025 and March 27, 2026, extending the loan on the same terms and conditions in the ordinary course of business, with a new Maturity Date of September 27, 2026; Deed of Trust dated January 12, 2024, recorded in the Official Records of Orange County on January 18, 2024, as Instrument No. 2024000011789 encumbering real property located at 311 5th Street, Huntington Beach, CA 92648; Monthly payments of interest only in the amount of $6,027.73 due on the 29th day of each month. The unpaid principal balance as of June 15, 2026 is $999,992.00. True and correct copies of the Promissory Note, Change in Terms Agreements and Deed of Trust (collectively, the "316663 Loan Documents") are attached hereto as Exhibits T through X and incorporated herein by this reference.

D.    The Debtors' require the use of rents generated from the Rental Properties and that are Secured Creditor's cash collateral to operate the Rental Properties, which are the collateral for the Secured Creditor's secured claim.

E.    Based upon the Secured Creditor's secured liens against the Rental Properties, including but not limited to, rent and cash collateral, the Debtors have requested that the Secured Creditor stipulate and permit the Debtors to use cash collateral through October 23, 2026, on the terms and conditions set forth below.

F.    Pursuant to this Stipulation and subject to further order of this Court, the Secured Creditor has agreed to permit the Debtors to use cash collateral consistent with the terms and conditions set forth below.

**<u>STIPULATION</u>**

1.    The recitals set forth above are incorporated herein by reference as though set forth in full.

2.    Subject to the terms and conditions of this Stipulation, the Parties agree that the rent generated from the Rental Properties constitutes the cash collateral ("<u>Cash Collateral</u>") of Secured Creditor, pursuant to 11 U.S.C. §§ 361, 362, 363(a), (c)(2), and (e).

4

3. Subject to the terms and conditions of this Stipulation, the Parties agree that the Debtors are authorized to use Cash Collateral for the ordinary and necessary expenses (the "Expenses") set forth in the cash flow projections (the "Budget") attached as **Exhibit 1** hereto for the dates set forth therein.

4. The Debtors shall remit adequate protection payments to Secured Creditor in the amount of net rents ("Net Rents") calculated as the gross rents actually collected, minus the Expenses actually paid, with such adequate protection payments to Secured Creditor paid no later than the 15th of each month. The first payment shall be made by no later than three business days after the entry of an order (the "Order Date") approving this Stipulation, and shall include all the Net Rents from the Petition Date to the Order Date.

5. The Debtors' use of Cash Collateral may be renewed upon subsequent stipulation with the Secured Creditor or by order of this Court.

6. As adequate protection, Secured Creditor shall receive a replacement lien (the "Replacement Lien") on all post-petition revenue generated from the Rental Properties to the same extent, priority, and validity that Secured Creditor's lien attached to the Cash Collateral. The Replacement Lien is valid, perfected, and enforceable and shall not be subject to dispute, avoidance, or subordination, and this Replacement Lien need not be subject to additional recording. The Secured Creditor is authorized to file a certified copy of any cash collateral order and any other necessary and related documents to further perfect its lien. Notwithstanding any of the foregoing, the Replacement Lien shall not include any liens or claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549.

7. Nothing in this Stipulation shall be construed as or constitute a waiver or acquiescence of either Party's respective rights under the Loan Documents.

8. The Debtors shall maintain insurance on the Rental Properties and designate Secured Creditor as a loss payee or additional insured in accordance with the terms of the Loan Documents.

9. This Stipulation shall inure to the benefit of and shall be binding upon the Parties, their successors, and assigns.

5

10.    The Parties to this Stipulation represent and warrant that each has reviewed and understands its terms and contents.  The Parties to this Stipulation further represent and warrant that each has the power to execute, deliver, and perform this Stipulation, that each has taken all necessary action to authorize the execution, delivery, and performance of this Stipulation, and that this Stipulation is enforceable in accordance with its terms.

11.    The terms of this Stipulation may not be modified, altered, or changed without the express written consent of the Parties.

12.    This Stipulation contains the entire understanding between the Parties, supersedes any prior written or oral agreements between them respecting the subject matter contained herein, and all prior negotiations concerning such subject matter are merged into this Stipulation.  There are no representations, agreement, arrangements, or understandings, oral or written, between the Parties relating to the subject matter of this Stipulation that are not fully expressed herein.

13.    This Stipulation may be executed in any number of identical counterparts, each of which together shall be deemed to be an original, and all of which together shall be deemed to be one and the same instrument when each party has signed one such instrument.

14.    Facsimile or electronic mail signature to this Stipulation shall be sufficient to bind the party and will have the same force and effect as an original.

15.    The Court shall retain jurisdiction to resolve any disputes arising regarding the enforcement and interpretation of this Stipulation.

16.    The Parties will bear their own attorneys' fees, costs, and expenses in connection with this Stipulation, except to the extent that the Loan Documents otherwise allow for attorneys' fees and costs between the Parties.

Dated: July __, 2026

LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.


By: ___/s/ David Golubchik_____
DAVID GOLUBCHIK
CARMELA T. PAGAY
Attorneys for Chapter 11
Debtors and Debtors in Possession

6

132245/00000070/10914319.1

CASE No. 8:26-bk-11202-SC

Dated: July 22, 2026

PROCOPIO CORY HARGREAVES &
    SAVITCH, LLP

By: *Steve Casselberry*
_____
STEVE CASSELBERRY
Attorney for First Bank

7

# Exhibit A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $530,000.00 | 08-03-2007 | 08-03-2032 | 404074226672 | 91M FB&T | | 785 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Andrew Stupin
Julie Kristine Stupin
5671 Ocean Terrace Drive
Huntington Beach, CA 92648-7511

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**Principal Amount: $530,000.00** **Initial Rate: 7.460%** **Date of Note: August 3, 2007**

**PROMISE TO PAY.** Andrew Stupin and Julie Kristine Stupin ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Thirty Thousand & 00/100 Dollars ($530,000.00), together with interest on the unpaid principal balance from August 3, 2007, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 300 payments of $3,940.80 each payment. Borrower's first payment is due September 3, 2007, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 3, 2032, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the London InterBank Offered Rate (the "Index"). Independ Index. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Five (5) Years. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 5.210%.** The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 2.250 percentage points over the Index, resulting in an initial rate of 7.460%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, 110 Woodmere Road, Suite 150 Folsom, CA 95630.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** To the extent permitted by applicable law, Lender and Borrower hereby waive the right to any jury trial in any action,

PROMISSORY NOTE
(Continued)

Loan No: 404074226672

Page 2

proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated August 3, 2007, to a trustee in favor of Lender on real property located in Orange County, State of California. That agreement contains the following due on sale provision. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**Successor Interests.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**General Provisions.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X _____
Andrew Stupin

X _____
Julie Kristina Stupin

LASER PRO Lending, Ver. 5.38.00    Copr. Harland Financial Solutions, Inc. 1997, 2007.   All Rights Reserved.   - CA  L:\CFI\LPL\D20.FC  TR-137732  PR-204

# Exhibit B

*0000044074226672-1096003302023*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $268,056.51 | 03-30-2023 | 08-03-2032 | 44074226672-1 | 01E2 / X1 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**Principal Amount: $268,056.51** **Date of Agreement: March 30, 2023**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated August 3, 2007 in the original principal amount of $530,000.00, as amended.

**DESCRIPTION OF COLLATERAL.** Real property secured by a Deed of Trust dated August 3, 2007 with property located at 311 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.** Modify the interest rate from 5.188% variable to 5.776% variable as described in the paragraph "Variable Interest Rate".

**PROMISE TO PAY. ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Sixty-eight Thousand Fifty-six & 51/100 Dollars ($268,056.51), together with interest on the unpaid principal balance from March 30, 2023, until paid in full.**

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 113 payments of $3,079.54 each payment. Borrower's first payment is due April 3, 2023, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on August 3, 2032, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the most recently-available weekly average yield on U.S. Treasury Securities adjusted to a constant maturity of five years as reported by the Federal Reserve Board Data Download Program 45 days prior to the interest rate change (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each five years. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 3.526% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.776%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this loan be less than 0.000% per annum or more than the maximum rate allowed by applicable law. Whenever changes occur in the interest rate, Lender, at its option, may do one or more of the following: (A) change Borrower's payments by setting a new payment amount calculated by amortizing the outstanding principal balance at the new interest rate over the remaining term of the loan, (B) increase Borrower's payments to cover accruing interest if the interest rate adjustment is an increase, (C) change the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and change Borrower's final payment amount.

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00**. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this loan shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

## CHANGE IN TERMS AGREEMENT
Loan No: 44074226672-1                              (Continued)                                    Page 2

of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated August 3, 2007, to a trustee in favor of Lender on real property located in Orange County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the Indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the Indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P.O. Box 790269 St. Louis, MO 63179-0269.

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 44074226672-1                                                                        Page 3

MISCELLANEOUS PROVISIONS. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

x _____                         x _Julie K. Stupin_____
  ANDREW STUPIN                                         JULIE K. STUPIN

LENDER:

FIRST BANK

x _____
  Authorized Signer

LaserPro, Ver. 23.6.1.059, Copr. Finastra USA Corporation 1997, 2023. All Rights Reserved. - CA  Z:\Loanpro\CFI\LPL\D20F.FC  TR-51462  PR-89L

# Exhibit C

**This Documer ___ vas electronically recorded by Orange Coast Title B**

**RECORDATION REQUESTED BY:**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Recording Requested by:
**Orange Coast Title**

‖‖‖‖‖‖‖‖‖‖‖‖‖ 33.00
2007000501864 04:30pm 08/10/07
113 49 D11 10
0.00 0.00 0.00 0.00 27.00 0.00 0.00 0.00

**WHEN RECORDED MAIL TO:**
First Bank
110 Woodmere Road, Suite 150
Folsom, CA  95630

**SEND TAX NOTICES TO:**
Andrew Stupin
Julie Kristine Stupin
5671 Ocean Terrace Drive
Huntington Beach, CA  92648-7511

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated August 3, 2007, among Andrew Stupin and Julie K. Stupin; Husband and Wife as Community Property with Right to Survivorship ("Trustor"); First Bank, whose address is Huntington Beach, 501 Main Street, Suite H, Huntington Beach, CA  92648 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and First Bank & Trust    , whose address is 3400 W. Warner Avenue, Suite I, Santa Ana, CA  92704 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Orange County, State of California:

Lot 11 in Block 305 of Huntington Beach, in the City of Huntington Beach, County of Orange, State of California, as per map recorded in Book 3, Pages 36, Inclusive of Miscellaneous Maps in the Officer of the County Recorder of said County.

The Real Property or its address is commonly known as  311 5th Street, Huntington Beach, CA  92648.  The Assessor's Parcel Number for the Real Property is 024-142-14.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property; (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.

Duty to Maintain. Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property;

TE Follow-Up
Date____ 44

SEP 0 6 2007

**DEED OF TRUST**
**(Continued)**

and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person.  The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances.  Trustor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor.  The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Trustor agrees neither to abandon or leave unattended the Property.  Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.**  Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.**  Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00.  Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.**  The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.**  Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount

## DEED OF TRUST
### (Continued)

sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**DEED OF TRUST**
**(Continued)**

Loan No: 404074226672                                              Page 4

Application of Net Proceeds. If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

Further Assurances. At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-In-Fact. If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

FULL PERFORMANCE. If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

EVENTS OF DEFAULT. Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

Payment Default. Trustor fails to make any payment when due under the Indebtedness.

Other Defaults. Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

Compliance Default. Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

Default on Other Payments. Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

Environmental Default. Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained

**DEED OF TRUST**
**(Continued)**

in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**DEED OF TRUST**
**(Continued)**

Loan No: 404074226672

Page 6

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Orange County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered,

**DEED OF TRUST**
(Continued)

Loan No: 404074226672

Page 7

when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury. To the extent permitted by applicable law, all parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Andrew Stupin and Julie Kristine Stupin and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**DEED OF TRUST**

Loan No: 404074226672
**(Continued)**

Page 8

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means First Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated August 3, 2007, **in the original principal amount of $530,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means First Bank & Trust  , whose address is 3400 W. Warner Avenue, Suite I, Santa Ana, CA  92704 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Andrew Stupin and Julie Kristine Stupin.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE-RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
Andrew Stupin

X _____
Julie Kristine Stupin

# DEED OF TRUST
## (Continued)

Loan No: 404074226672

Page 9

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_

COUNTY OF _Orange_ ) SS

On _August 9_, 20 _07_ before me, _CLAIRE H LAND, Notary Public_
_(here insert name and title of the officer)_

personally appeared Andrew Stupin, husband and wife as community property, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

> CLAIRE H. LAND
> COMM. # 1659321
> NOTARY PUBLIC - CALIFORNIA
> ORANGE COUNTY
> COMM. EXPIRES APRIL 18, 2010

(Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_

COUNTY OF _Orange_ ) SS

On _August 7_, 20 _07_ before me, _CLAIRE H. LAND Notary Public_
_(here insert name and title of the officer)_

personally appeared Julie Kristine Stupin, husband and wife as community property, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

> CLAIRE H. LAND
> COMM. # 1659321
> NOTARY PUBLIC - CALIFORNIA
> ORANGE COUNTY
> COMM. EXPIRES APRIL 18, 2010

(Seal)

**DEED OF TRUST**
**(Continued)**

Loan No: 404074226672

Page 10

---

**(DO NOT RECORD)**
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____   _____   Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 5.35.00.004 Copr. Harland Financial Solutions Inc. 1997, 2007   All Rights Reserved   CA C:\CFI\LPL\G01.FC TR-127752 PR-504

## Government Code 27361.7 .

Name of Notary_____ *Clare H. Land.*

Date commission expires:_____ *April 18, 2010.*

Commission Number:_____ *1659321.*

County where Bond is filed:_____ *Orange.*

Manufacturer/Vendor No.:_____ *YMC, C1*

Place of execution:_____ Santa Ana_____

Date:_____ *8/10/07*

Signature_____ *B Molina*

Orange Coast Title

# Exhibit D

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 09-18-2008 | 09-18-2018 | 404084252465 | 91M | | 4129 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Andrew Stupin
Julie K. Stupin
215 5th Street, #A
Huntington Beach, CA 92648

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**Principal Amount: $1,000,000.00** **Initial Rate: 6.130%** **Date of Note: September 18, 2008**

**PROMISE TO PAY.** Andrew Stupin and Julie K. Stupin ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00), together with interest on the unpaid principal balance from September 18, 2008, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 119 regular payments of $6,576.88 each and one irregular last payment estimated at $775,166.39. Borrower's first payment is due October 18, 2008, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 18, 2018, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the London InterBank Offered Rates (LIBOR) (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each Five (5) Years. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.630%. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 2.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.130%. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.000% or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of

**PROMISSORY NOTE**
(Continued)

Loan No: 404084252465

Page 2

the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated September 18, 2008, to a trustee in favor of Lender on real property described as "Real Property located at 818 Palm Ave, Huntington Beach, CA 92648" and located in Orange County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) a Deed of Trust dated September 18, 2008, to a trustee in favor of Lender on real property described as "Real Property located at 209 - 5th Street, Huntington, CA 92648" and located in Orange County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**INTEREST RATE PROVISION SUPPLEMENT.** The words "at the rate of [applicable rate] % per annum" for the purposes hereof shall mean the interest at such rate for a three hundred sixty day (360) period consisting of twelve (12) thirty (30) day months. The calculation of interest on this basis will result in a higher interest rate for a three hundred sixty-five (365) or three hundred and sixty-six (366) day period.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
Andrew Stupin

X _____
Julie K. Stupin

# Exhibit E

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $883,986.26 | 05-20-2014 | 09-18-2018 | 404084252465 | 01M | | 8129 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   Andrew Stupin
Julie K. Stupin
215 5th Street, Suite A
Huntington Beach, CA  92648

**Lender:**   First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

**Principal Amount: $883,986.26**                               **Date of Agreement:  May 20, 2014**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated September 18, 2008, in the original principal amount of $1,000,000.00, as amended.

**DESCRIPTION OF COLLATERAL.** Real property described in a Deed of Trust dated September 18, 2008, with a property address of 209 5th Street, Huntington Beach, CA 92648, and Real property described in a Deed of Trust and an Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.** Remove real property described in a Deed of Trust dated September 18, 2008, with a property address of 818 Palm Avenue, Huntington Beach, CA 92648 as Collateral, and add real property described in a Deed of Trust and an Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648 as Collateral.

**PROMISE TO PAY.** Andrew Stupin and Julie K. Stupin ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Eighty-three Thousand Nine Hundred Eighty-six & 26/100 Dollars ($883,986.26), together with interest on the unpaid principal balance from May 20, 2014, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 51 regular payments of $6,475.28 each and one irregular last payment estimated at $772,171.09. Borrower's first payment is due June 18, 2014, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 18, 2018, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the annual rate (as determined by Bank from the most recently published Federal Reserve Statistical Release H.15 (519) published by the Board of Governors of the Federal Reserve System) as reported under the heading "Interest Rate Swaps" in such Federal Reserve Statistical Release H.15 (519) as the then prevailing average rate for the week ended as of the preceding Friday for interest rate swaps with a term equal to five years. In the event such applicable Federal Reserve Statistical Release H.15 (519) does not provide an interest rate swap prevailing weekly average rate for a five year period, then Bank may extrapolate such prevailing rate using the prevailing weekly average interest rate swap rates in such publication or in other industry publications available to Bank for terms longer and shorter than five years. Bank's determination of such prevailing weekly average interest rate swap rate through such extrapolation methods for the applicable period shall be conclusive absent manifest error (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each five years. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 1.810% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.500 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this loan be less than 6.000% per annum or more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this loan shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Indebtedness.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

**CHANGE IN TERMS AGREEME**

Loan No: 404084252465                                   **(Continued)**                                   Page 2

of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Real property described in a Deed of Trust dated September 18, 2008, with a property address of 209 5th Street, Huntington Beach, CA 92648, and Real property described in a Deed of Trust and an Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorsor, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(c) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or of the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(d) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released. Borrower and Guarantors, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses, (including, but not limited to, all attorneys' fees incurred by Lender and Released Parties including fees in bankruptcy and on appeal), based upon or arising in connection with a breach of this Section, including without limitation any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

(e) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**CHANGE IN TERMS AGREEMENT**

Loan No: 404084252465                          **(Continued)**                              Page 3

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

X _____
Andrew Stupin

X _____
Julie K. Stupin

**LENDER:**

**FIRST BANK**

X _____
Authorized Signer

LASER PRO Lending, Ver. 14.1.0.021 Copr. Harland Financial Solutions, Inc. 1997, 2014. All Rights Reserved.   CA C:\CFI\LPL\D20C.FC  TR-177432  PR-502

# Exhibit F

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $861,358.59 | 04-30-2015 | 09-18-2018 | 404084252465 | 01M | | 8129 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**   Andrew Stupin
Julie K. Stupin
215 5th Street, Suite A
Huntington Beach, CA  92648

**Lender:**   First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

---

**Principal Amount: $861,358.59**　　　　　　　　　　　　　　　**Date of Agreement:  April 30, 2015**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**  Promissory Note dated September 18, 2008 in the original principal amount of $1,000,000.00, as amended.

**DESCRIPTION OF COLLATERAL.**  Real property described in a Deed of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and real property described in a Deed of Trust and an Assignment of Rents dated May 20, 2014 with a property address of 309 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.**  Modify the interest rate from Swap Rate plus 2.500% variable with an interest rate floor of 6.000% to 4.500% fixed.

**PROMISE TO PAY.**  Andrew Stupin and Julie K. Stupin ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Sixty-one Thousand Three Hundred Fifty-eight & 59/100 Dollars ($861,358.59), together with interest on the unpaid principal balance from April 30, 2015, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.500%, until paid in full.  The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.**  Borrower will pay this loan in 40 regular payments of $5,745.45 each and one irregular last payment estimated at $756,428.61. Borrower's first payment is due May 18, 2015, and all subsequent payments are due on the same day of each month after that.  Borrower's final payment will be due on September 18, 2018, and will be for all principal and all accrued interest not yet paid.  Payments include principal and interest.  Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.**  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT; MINIMUM INTEREST CHARGE.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00.  Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  First Bank, Attn:  Payment Processing, P.O. Box 790269 St. Louis, MO  63179-0269.

**LATE CHARGE.**  If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT**  Upon default, the interest rate on this loan shall, if permitted under applicable law, immediately increase by 5.000 percentage points.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

　　**Payment Default.**  Borrower fails to make any payment when due under the Indebtedness.

　　**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

　　**Default in Favor of Third Parties.**  Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

　　**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

　　**Death or Insolvency.**  The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

　　**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

　　**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

　　**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

　　**Insecurity.**  Lender in good faith believes itself insecure.

　　**Cure Provisions.**  If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default:  (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.**  Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.**  Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.**  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of

**CHANGE IN TERMS AGREEML**
**(Continued)**

Loan No: 404084252465 — Page 2

California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instruments listed herein.

(A) a Deed of Trust dated September 18, 2008, to a trustee in favor of Lender on real property described as "Real Property located at 209 5th Street, Huntington Beach, CA 92648" and located in Orange County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) a Deed of Trust dated May 20, 2014, to a trustee in favor of Lender on real property described as "Real Property located at 309 5th Street, Huntington Beach, CA 92648" and located in Orange County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the Instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(c) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or of the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(d) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released. Borrower and Guarantors, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses, (including, but not limited to, all attorneys' fees incurred by Lender and Released Parties including fees in bankruptcy and on appeal), based upon or arising in connection with a breach of this Section, including without limitation any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

(e) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the Indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**CHANGE IN TERMS AGREEMENT**

Loan No: 404084252465                    (Continued)                           Page 3

---

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

X _____
Andrew Stupin

X _____
Julie K. Stupin

**LENDER:**

**FIRST BANK**

X _____
Authorized Signer

# Exhibit G

*0000044084252465-1096009182018*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $751,648.17 | 09-18-2018 | 09-18-2023 | 44084252465-1 | U1 | | 8109 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing '* * *' has been omitted due to text length limitations.

Borrower:  Andrew Stupin
Julie K. Stupin
215 5th Street
Huntington Beach, CA  92648

Lender:  First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

Principal Amount: $751,648.17          Date of Agreement: September 18, 2018

DESCRIPTION OF EXISTING INDEBTEDNESS. Promissory Note dated September 18, 2008 in the original principal amount of $1,000,000.00, as amended.

DESCRIPTION OF COLLATERAL. Real property described in a Deed of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and real property described in a Deed of Trust and an Assignment of Rents dated May 20, 2014 with a property address of 309 5th Street, Huntington Beach, CA 92648.

DESCRIPTION OF CHANGE IN TERMS. Extend the maturity date from September 18, 2018 to September 18, 2023 and modify the interest rate from 4.500% fixed to 5.090% fixed.

PROMISE TO PAY. Andrew Stupin and Julie K. Stupin ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Hundred Fifty-one Thousand Six Hundred Forty-eight & 17/100 Dollars ($751,648.17), together with interest on the unpaid principal balance from September 18, 2018, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.090%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in 59 regular payments of $6,008.21 each and one irregular last payment estimated at $568,209.12. Borrower's first payment is due October 18, 2018, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 18, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

PREPAYMENT; MINIMUM INTEREST CHARGE. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

LATE CHARGE. If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, the interest rate on this loan shall, if permitted under applicable law, immediately increase by 5.000 percentage points.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement:

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 44084252465-1                                                                                          Page 2

pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Real property described in a Deed of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and real property described in a Deed of Trust and an Assignment of Rents dated May 20, 2014 with a property address of 309 5th Street, Huntington Beach, CA 92648.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(c) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or of the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(d) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released. Borrower and Guarantors, and each of them, shall indemnity, defend and hold Lender and each of the other Released Parties harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses, (including, but not limited to, all attorneys' fees incurred by Lender and Released Parties including fees in bankruptcy and on appeal), based upon or arising in connection with a breach of this Section, including without limitation any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

(e) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations,

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 44084252465-1

Page 3

presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____
Andrew Stupin

X _____
Julie K. Stupin

LENDER:

FIRST BANK

X _____
Authorized Signer

LaserPro, Ver. 17.4.10.078  Copr. D.H USA Corporation 1997, 2011.  All Rights Reserved.  CA  C:\CFI\CFI\LPL\D10.FC  TR-19452  PR-921

# Exhibit H

*00000440842524b5-109600918,023*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $561,072.73 | 09-18-2023 | 12-18-2023 | 44084252465-1 | 01A2 / LD | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  ANDREW STUPIN
           JULIE K. STUPIN
           11 OFFSHORE
           NEWPORT COAST, CA  92657

Lender:  First Bank
           Huntington Beach
           501 Main Street, Suite H
           Huntington Beach, CA  92648

**Principal Amount: $561,072.73**           **Date of Agreement: September 18, 2023**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated September 18, 2008, in the original principal amount of $1,000,000.00 as amended.

**DESCRIPTION OF COLLATERAL.** Real property described in two (2) existing Deeds of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity from September 18, 2023 to December 18, 2023 and modify the interest rate from 5.090% fixed to 7.664% fixed.

**PROMISE TO PAY.** ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Sixty-one Thousand Seventy-two & 73/100 Dollars ($561,072.73), together with interest on the unpaid principal balance from September 18, 2023, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.664%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 2 regular payments of $6,741.00 each and one irregular last payment estimated at $558,399.78. Borrower's first payment is due October 18, 2023, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 18, 2023, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 120 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO  63179-0269.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by 5.000 percentage points. However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding in an amount determined by Lender in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

## CHANGE IN TERMS AGREEMENT
(Continued)

Loan No: 44084252465-1                                                                      Page 2

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated May 20, 2014 to a trustee in favor of Lender on real property described as "Real Property located at 209 5th Street, Huntington Beach, CA 92648" and located in Orange County, State of California. That agreement contains the following due on sale provision. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) a Deed of Trust dated May 20, 2014, to a trustee in favor of Lender on real property described as "Real Property located at 309 5th Street, Huntington Beach, CA 92648" and located in Orange County, State of California. That agreement contains the following due on sale provision. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(C) an Assignment of All Rents to Lender on real property described as "Real Property located at 309 5th Street, Huntington Beach, CA 92648" and located in Orange County, State of California.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien on any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns and each of them do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties") from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement; including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, or the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the

**CHANGE IN TERMS AGREEMENT**

Loan No: 44084252465-1                        (Continued)                                    Page 3

Indebtedness.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P O Box 790269 St. Louis, MO 63179-0269.

MISCELLANEOUS PROVISIONS. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X_____              X_____
ANDREW STUPIN                                    JULIE K STUPIN

LENDER:

FIRST BANK

X_____
Authorized Signer

# Exhibit I



"0000044084252465-1096012182023"

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $551,634.76 | 12-18-2023 | 12-18-2028 | 44084252465-1 | 01A2 / E1 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**Principal Amount: $551,634.76** **Date of Agreement: December 18, 2023**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated September 18, 2008, in the original principal amount of $1,000,000.00, as amended.

**DESCRIPTION OF COLLATERAL.** Real property described in two (2) existing Deeds of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity from December 18, 2023 to December 18, 2028 and modify the interest rate from 7.664% fixed to 7.418% fixed.

**PROMISE TO PAY. ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Fifty-one Thousand Six Hundred Thirty-four & 76/100 Dollars ($551,634.76), together with interest on the unpaid principal balance from December 18, 2023, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.418%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT. Borrower will pay this loan in 59 regular payments of $6,668.90 each and one irregular last payment estimated at $325,473.10. Borrower's first payment is due January 18, 2024, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on December 18, 2028, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The payment amounts are based on an amortization over 117 monthly payments. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

**PREPAYMENT FEE; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00. Upon prepayment of this Agreement, Lender is entitled to the following prepayment fee: One Percent (1%) of the total amount of prepayment, if such prepayment is to be made in whole or in part, directly or indirectly through credit obtained at another financial institution or through the sale of any property securing this Note. Partial prepayments shall be applied to the installments of principal of this Note in the inverse order of their stated maturities.** Other than Borrower's obligation to pay any minimum interest charge and prepayment fee, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by 5.000 percentage points. However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 44084252465-1                                                                 Page 2

continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated May 20, 2014, to a trustee in favor of Lender on real property described as "Real Property located at 209 5th Street, Huntington Beach, CA  92648" and located in Orange County, State of California.  That agreement contains the following due on sale provision:  Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) a Deed of Trust dated May 20, 2014, to a trustee in favor of Lender on real property described as "Real Property located at 309 5th Street, Huntington Beach, CA  92648" and located in Orange County, State of California.  That agreement contains the following due on sale provision:  Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(C) an Assignment of All Rents to Lender on real property described as "Real Property located at 309 5th Street, Huntington Beach, CA 92648" and located in Orange County, State of California.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor.  For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement,  Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge  Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein.  In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true.  Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed.  In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor's(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender.  Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition.  Borrower authorizes Lender to release information about it  to third parties as permitted by law.  Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**CHANGE IN TERMS AGREEMENT**

Loan No: 44084252465-1     (Continued)     Page 3

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us f we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P O  Box 790269 St. Louis, MO 63179-0269.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

X _____
ANDREW STUPIN

X _____
JULIE K. STUPIN

**LENDER:**

**FIRST BANK**

X _____
Authorized Signer

LaserPro. Ver 23 7.0.028  Copr Finastra USA Corporation 1997, 2623  All Rights Reserved  CA  C LaserProCFILFL3980L FC TR 318543  PR 980

# Exhibit J

FIDELITY NATIONAL TITLE COMPANY

**This Document was electronically recorded by
Fidelity National Major Accounts**

**RECORDATION REQUESTED BY:**
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||  30.00

**2008000448677 08:00am 09/25/08**

**WHEN RECORDED MAIL TO:**
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

113 92 D11 9
0.00 0.00 0.00 0.00 24.00 0.00 0.00 0.00

**SEND TAX NOTICES TO:**
Andrew Stupin
Julie K. Stupin
215 5th Street, #A
Huntington Beach, CA  92648

FOR RECORDER'S USE ONLY

ワ25117448-RJ

## DEED OF TRUST

THIS DEED OF TRUST is dated September 18, 2008, among Andrew Stupin and Julie K. Stupin, Husband and Wife as Community Property with Right of Survivorship; whose address is 215 5th Street, #A, Huntington Beach, CA  92648 ("Trustor"); First Bank, whose address is Huntington Beach, 501 Main Street, Suite H, Huntington Beach, CA  92648 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and First Bank, whose address is 501 Main Street, Suite H, Huntington Beach, CA  92648 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Orange County, State of California:

LOT 9 BLOCK 205 OF HUNTINGTON BEACH TRACT, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, AS PER MAP RECORDED IN BOOK 3, PAGE(S) 36, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

The Real Property or its address is commonly known as  209 - 5th Street, Huntington, CA  92648. The Assessor's Parcel Number for the Real Property is 024-146-14.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property  This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions.

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252466

Page 2

shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage

**DEED OF TRUST**
(Continued)

endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the Improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy, or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust.

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252465

Page 4

Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252466

Page 5

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252465                                                      Page 6

Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

Notice of Sale. Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Orange County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252465

Page 7

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Andrew Stupin and Julie K. Stupin and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default"

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252465

Page 8

Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means First Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated September 18, 2008, **in the original principal amount of $1,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means First Bank, whose address is 601 Main Street, Suite H, Huntington Beach, CA 92648 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Andrew Stupin and Julie K. Stupin.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

X _____
Andrew Stupin

X _____
Julie K. Stupin

**DEED OF TRUST**

Loan No: 404084252465                              (Continued)                              Page 9

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Calif'_                                    )
                                                     ) SS
COUNTY OF _Orange_                                   )

On _9-19_____, 20_08_ before me, _Susan L. Caine Notary Public._
                                          (here insert name and title of the officer)

personally appeared Andrew Stupin and Julie K. Stupin, husband and wife as community property, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Susan L. Caine_____

SUSAN L. CAINE
Commission # 1595755
Notary Public - California
Orange County
My Comm. Expires Aug 6 2009

(Seal)

---

## (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____          Beneficiary: _____
                                                          By: _____
                                                          Its: _____

LASER PRO Lending, Ver. 5.40.00.003    Copr. Harland Financial Solutions, Inc. 1997, 2008.    All Rights Reserved.    - CA
C:\CFI\LPL\G01.FC TR-147014 PR-504

# Exhibit K

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $340,000.00 | 04-30-2015 | 04-30-2020 | 404154276086 | 01M | | 8129 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "****" has been omitted due to text length limitations.

Borrower: Andrew Stupin
Julie K. Stupin
215 5th Street, Suite A
Huntington Beach, CA 92648

Lender: First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

Principal Amount: $340,000.00        Date of Note: April 30, 2015

**PROMISE TO PAY.** Andrew Stupin and Julie K. Stupin ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Forty Thousand & 00/100 Dollars ($340,000.00), together with interest on the unpaid principal balance from April 30, 2015, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.150%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $1,834.53 each and one irregular last payment estimated at $299,106.28. Borrower's first payment is due May 30, 2015, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 30, 2020, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT FEE; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Upon prepayment of this Note, Lender is entitled to the following prepayment fee: If repaid in full by refinance or borrowing of funds, a prepayment fee shall be paid by Borrower to Lender in the following percentages of the amount prepaid: Year One 5.00%; Year Two 4.000%; Year Three 3.000%; Year Four 2.000%; Year Five 1.000%. Other than Borrower's obligation to pay any minimum interest charge and prepayment fee, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by 5.000 percentage points.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

    **Payment Default.** Borrower fails to make any payment when due under this Note.

    **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

    **Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

    **Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

    **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

    **Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

    **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

    **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

    **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

    **Insecurity.** Lender in good faith believes itself insecure.

    **Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or

**PROMISSORY NOTE**
**(Continued)**

Loan No: 404154276086

Page 2

any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated April 30, 2015, to a trustee in favor of Lender on real property located in Orange County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Orange County, State of California.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) As to the matters released herein, Borrower and Guarantor, and each of them, expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, which provides as follows:"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(c) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under Section 1542 of the Civil Code of the State of California, and any similar law of any state, territory, commonwealth or possession of the United States, or of the United States, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(d) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released. Borrower and Guarantors, and each of them, shall indemnify, defend and hold Lender and each of the other Released Parties harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses, (including, but not limited to, all attorneys' fees incurred by Lender and Released Parties including fees in bankruptcy and on appeal), based upon or arising in connection with a breach of this Section, including without limitation any such prior assignment or transfer, or any such purported assignment or transfer, or any claims or other matters released herein.

(e) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PROMISSORY NOTE**
(Continued)

Loan No: 404154276086

Page 3

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
Andrew Stupin

X _____
Julie K. Stupin

# Exhibit L

*0000044154276086-1096004302020*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $297,850.05 | 04-30-2020 | 04-30-2025 | 44154276086-1 | 1C2A / R1 | | 404 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**Principal Amount: $297,850.05** **Date of Agreement: April 30, 2020**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated April 30, 2015 in the original principal amount of $340,000.00, as amended.

**DESCRIPTION OF COLLATERAL.** Real property described in an existing Deed of Trust and an Assignment of Rents dated April 30, 2015 with a property address of 309 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date from April 30, 2020 to April 30, 2025 and modify the interest rate from 4.150% fixed to 3.410% fixed.

**PROMISE TO PAY. ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-seven Thousand Eight Hundred Fifty & 05/100 Dollars ($297,850.05), together with interest on the unpaid principal balance from April 30, 2020, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 3.410%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**

**PAYMENT. Borrower will pay this loan in 59 regular payments of $1,721.23 each and one irregular last payment estimated at $243,157.64. Borrower's first payment is due May 30, 2020, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 30, 2025, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

**PREPAYMENT FEE; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00. Upon prepayment of this Agreement, Lender is entitled to the following prepayment fee: If repaid in full by refinance or borrowing of funds from a Lender other than First Bank, a Prepayment Fee shall be paid by Borrower(s) to Lender in the following percentages of the amount prepaid: Year One 5.000%; Year Two 4.000%; Year Three 3.000%; Year Four 2.000%; Year Five 1.000%.** Other than Borrower's obligation to pay any minimum interest charge and prepayment fee, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.**

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this loan shall, if permitted under applicable law, immediately increase by 5.000 percentage points.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 44154276086-1                                                                                      Page 2

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

COLLATERAL. Borrower acknowledges this Agreement is secured by real property described in an existing Deed of Trust and an Assignment of Rents dated April 30, 2015 with a property address of 309 5th Street, Huntington Beach, CA 92648.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

GENERAL RELEASE OF LENDER. (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement. Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States than it provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS). In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

PERIODIC REVIEW. Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

SUCCESSORS AND ASSIGNS. Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P.O. Box 790269 St. Louis, MO 63179-0269.

MISCELLANEOUS PROVISIONS. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed

**CHANGE IN TERMS AGREEMENT**

Loan No: 44154276086-1                    (Continued)                    Page 3

necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

x _____          x _____
ANDREW STUPIN                          JULIE K. STUPIN

LENDER:

FIRST BANK

x _____
Authorized Signer

# Exhibit M

*0000044154276086-1096004302025*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $240,642.16 | 04-30-2025 | 04-30-2030 | 44154276086-1 | 1C2A / R1 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | ANDREW STUPIN<br>JULIE K STUPIN<br>11 OFFSHORE<br>NEWPORT COAST, CA 92657 | Lender: | First Bank<br>Huntington Beach<br>501 Main Street, Suite H<br>Huntington Beach, CA 92648 |
|---|---|---|---|

**Principal Amount: $240,642.16**                                    **Date of Agreement: April 30, 2025**

**DESCRIPTION OF EXISTING INDEBTEDNESS**   Promissory Note dated April 30, 2015, in the original principal amount of $340,000.00, as amended

**DESCRIPTION OF COLLATERAL.**  Real property described in an existing Deed of Trust and Assignment of Rents dated April 30, 2015 with a property address of 309 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.**  Extend the maturity date from April 30, 2025 to April 30, 2030 and modify the interest rate from 3.410% fixed to 7.544% fixed.

**PROMISE TO PAY.**  ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Forty Thousand Six Hundred Forty-two & 16/100 Dollars ($240,642.16), together with interest on the unpaid principal balance from April 30, 2025, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 7.544%, until paid in full   The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.**  Borrower will pay this loan in 59 regular payments of $1,961.36 each and one irregular last payment estimated at $211,541.41. Borrower's first payment is due May 30, 2025, and all subsequent payments are due on the same day of each month after that.  Borrower's final payment will be due on April 30, 2030, and will be for all principal and all accrued interest not yet paid   Payments include principal and interest.  The payment amounts are based on an amortization over 240 monthly payments.  Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements, then to principal due, then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements, and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing

**INTEREST CALCULATION METHOD.**  Interest on this loan is computed on a 365/360 basis, that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents

**PREPAYMENT FEE; MINIMUM INTEREST CHARGE**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.   In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00.  Upon prepayment of this Agreement, Lender is entitled to the following prepayment fee   If repaid in full by refinance or borrowing of funds from a Lender other than First Bank, a Prepayment Fee shall be paid by Borrower(s) to Lender in the following percentages of the amount prepaid   Year One 5.000%; Year Two 4.000%; Year Three 3.000%; Year Four 2.000%; Year Five 1.000%.  Other than Borrower's obligation to pay any minimum interest charge and prepayment fee, Borrower may pay all or a portion of the amount owed earlier than it is due   Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule   Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments   Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language   If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender   All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  First Bank, Attn  Payment Processing, P.O  Box 790269 St. Louis, MO  63179-0269.

**LATE CHARGE.**  If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT**  Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by 5.000 percentage points  However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement

   **Payment Default**  Borrower fails to make any payment when due under the Indebtedness

   **Other Defaults**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower

   **Default in Favor of Third Parties.**  Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

   **False Statements**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   **Death or Insolvency**  The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower

   **Creditor or Forfeiture Proceedings**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute

   **Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired

   **Insecurity**  Lender in good faith believes itself insecure

   **Events Affecting Guarantor**  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note

   **Cure Provisions.**  If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default  (1) cures the default within fifteen (15) days, or  (2)  if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical

**CHANGE IN TERMS AGREEMEN.**
**(Continued)**

Loan No: 44154276086-1                                                                                    Page 2

**LENDER'S RIGHTS** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25 00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instruments listed herein

(A) a Deed of Trust dated April 30, 2015, to a trustee in favor of Lender on real property located in Los Angeles County, State of California. That agreement contains the following due on sale provision. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property, whether legal, beneficial or equitable, whether voluntary or involuntary, whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law

(B) an Assignment of All Rents to Lender on real property located in Los Angeles County, State of California

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise

**GENERAL RELEASE OF LENDER** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released "

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement

**SUCCESSORS AND ASSIGNS** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address. First Bank Attn. Client Services P O Box 790269 St. Louis, MO 63179-0269

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness, (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral, (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine, (e) release, substitute, agree not to sue, or deal with any one or

**HANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 44154276086-1

Page 3

more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose, and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower  Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor  Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral, or impair, fail to realize upon or perfect Lender's security interest in the collateral, and take any other action deemed necessary by Lender without the consent of or notice to anyone  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made  The obligations under this Agreement are joint and several

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER**

X_____           X_____
  ANDREW STUPIN                         JULIE K  STUPIN

**LENDER·**

**FIRST BANK**

X_____
  Authorized Signer

LaserPro  Ver  24 4 20 030 Copr  Finastra USA Corporation 1997 2025   All Rights Reserved   - CA  C:\LaserPro\CFI\LPL\D7E0 FC  TR-038903  PR-892

# Exhibit N

FNTC
23061465

**RECORDATION REQUESTED BY:**
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

**WHEN RECORDED MAIL TO:**
First Bank
Attn:  Collateral Management #M1-199-060
P.O. Box 790269
Saint Louis, MO  63179-0269

**SEND TAX NOTICES TO:**
First Bank
Attn:  RE Tax Department
P.O. Box 790269
St. Louis, MO  63179-0269

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

54.00
*$R0007497301$*
2015000230312 8:00 am 05/05/15
227 406 D11 F13    16
0.00 0.00 0.00 0.00 45.00 0.00 0.00 0.00

**FOR RECORDER'S USE ONLY**

## DEED OF TRUST

**MAXIMUM LIEN.  The lien of this Deed of Trust shall not exceed at any one time $340,000.00.**

**THIS DEED OF TRUST** is dated April 30, 2015, among Andrew Stupin and Julie K. Stupin, husband and wife as joint tenants, whose address is 215 5th Street, Suite A, Huntington Beach, CA  92648 ("Trustor"); First Bank, whose address is Huntington Beach, 501 Main Street, Suite H, Huntington Beach, CA  92648 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and First Bank, whose address is 600 James S. McDonnell Blvd., Hazelwood, MO  63042 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.**  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Orange County, State of California:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HUNTINGTON BEACH, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOTS 7 AND 9 IN BLOCK 305 OF HUNTINGTON BEACH, AS PER MAP RECORDED IN BOOK 3, PAGE 36 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.

EXCEPTING THE SOUTHWESTERLY 5 FEET OF LOT 7.

EXCEPTING THEREFROM ALL OIL, GAS, CASINGHEAD GAS, ASPHALTUM AND OTHER HYDROCARBONS AND ALL CHEMICAL GAS NOW OR HEREAFTER FOUND, SITUATED OR LOCATED IN ALL OR ANY PART OR PORTION OF THE LAND HEREIN DESCRIBED LYING MORE THAN 500 FEET BELOW THE SURFACE THEREOF, TOGETHER WITH THE RIGHT TO SLANT DRILL FOR AND REMOVE ALL OR ANY OF SAID OIL, GAS, CASINGHEAD GAS, ASPHALTUM AND OTHER HYDROCARBON, AND CHEMICAL GAS LYING BELOW A DEPTH OF MORE THAN 500 FEET BELOW THE SURFACE OF BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY LAND OR UPON ANY PART OR SAID LANDS WITHIN 500 FEET VERTICAL DISTANCE BELOW THE SURFACE THEREOF.

The Real Property or its address is commonly known as  309 5th Street, Huntington Beach, CA  92648. The Assessor's Parcel Number for the Real Property is 024-142-1B.

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Deed of Trust secures all obligations, debts and

TE Follow-Up
43      Date JUL 01 2015 555

FNTC
. 23061465

RECORDATION REQUESTED BY:
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

WHEN RECORDED MAIL TO:
First Bank
Attn:  Collateral Management #M1-199-060
P.O. Box 790269
Saint Louis, MO  63179-0269

SEND TAX NOTICES TO:
First Bank
Attn:  RE Tax Department
P.O. Box 790269
St. Louis, MO  63179-0269

_____    FOR RECORDER'S USE ONLY

## DEED OF TRUST

**MAXIMUM LIEN.  The lien of this Deed of Trust shall not exceed at any one time $340,000.00.**

THIS DEED OF TRUST is dated April 30, 2015, among Andrew Stupin and Julie K. Stupin, husband and wife as joint tenants, whose address is 215 5th Street, Suite A, Huntington Beach, CA  92648 ("Trustor"); First Bank, whose address is Huntington Beach, 501 Main Street, Suite H, Huntington Beach, CA  92648 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and First Bank, whose address is 600 James S. McDonnell Blvd., Hazelwood, MO  63042 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.**  For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Orange County, State of California:

> THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HUNTINGTON BEACH, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:
>
> LOTS 7 AND 9 IN BLOCK 305 OF HUNTINGTON BEACH, AS PER MAP RECORDED IN BOOK 3, PAGE 36 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA.
>
> **EXCEPTING THE SOUTHWESTERLY 5 FEET OF LOT 7.**
>
> EXCEPTING THEREFROM ALL OIL, GAS, CASINGHEAD GAS, ASPHALTUM AND OTHER HYDROCARBONS AND ALL CHEMICAL GAS NOW OR HEREAFTER FOUND, SITUATED OR LOCATED IN ALL OR ANY PART OR PORTION OF THE LAND HEREIN DESCRIBED LYING MORE THAN 500 FEET BELOW THE SURFACE THEREOF, TOGETHER WITH THE RIGHT TO SLANT DRILL FOR AND REMOVE ALL OR ANY OF SAID OIL, GAS, CASINGHEAD GAS, ASPHALTUM AND OTHER HYDROCARBON, AND CHEMICAL GAS LYING BELOW A DEPTH OF MORE THAN 500 FEET BELOW THE SURFACE OF BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY LAND OR UPON ANY PART OR SAID LANDS WITHIN 500 FEET VERTICAL DISTANCE BELOW THE SURFACE THEREOF.

The Real Property or its address is commonly known as  309 5th Street, Huntington Beach, CA  92648. The Assessor's Parcel Number for the Real Property is 024-142-1B.

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Deed of Trust secures all obligations, debts and

## DEED OF TRUST
### (Continued)

Loan No: 404154276086 Page 2

liabilities, plus interest thereon, of Trustor to Lender, or any one or more of them, as well as all claims by Lender against Trustor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Trustor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless

## DEED OF TRUST
### (Continued)

Loan No: 404154276086                                                                 Page 3

Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a

**DEED OF TRUST**
**(Continued)**

Loan No: 404154276086

Page 4

good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust.

**DEED OF TRUST**
**(Continued)**

Loan No: 404154276086

Page 5

Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

## DEED OF TRUST
**Loan No: 404154276086**
### (Continued)

Page 6

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**DEED OF TRUST**

Loan No: 404154276086    **(Continued)**    Page 7

---

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)   Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and  (2)   the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense.  For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.  Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or

**DEED OF TRUST**
**(Continued)**

Loan No: 404154276086

Page 8

lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and

**DEED OF TRUST**
**(Continued)**

Loan No: 404154276086

Page 9

place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law.  Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.  After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of:  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.**  With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.**  Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.**  If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either  (1)  pay a reasonable rental for the use of the Property, or  (2)  vacate the Property immediately upon the demand of Lender.

**Other Remedies.**  Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.**  Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made.  Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.  Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.**  To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled.  In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.  Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**DEED OF TRUST**
**(Continued)**

Loan No: 404154276086

Page 10

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Orange County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change

**DEED OF TRUST**

Loan No: 404154276086

**(Continued)**

Page 11

the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.**

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors

**DEED OF TRUST**

**Loan No: 404154276086**          **(Continued)**                              **Page 12**

and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Andrew Stupin and Julie K. Stupin and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may

**DEED OF TRUST**
**(Continued)**

Loan No: 404154276086                                                                              Page 13

be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means First Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated April 30, 2015, **in the original principal amount of $340,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means First Bank, whose address is 600 James S. McDonnell Blvd., Hazelwood, MO 63042 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Andrew Stupin and Julie K. Stupin.

**EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS.**

TRUSTOR:

X _____
Andrew Stupin

X _____
Julie K. Stupin

**DEED OF TRUST**
**(Continued)**

Loan No: 404154276086

Page 14

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _California_ )

) SS

COUNTY OF _Orange_ )

On _April 30th_ , 20_15_ before me, _Thomas T. Gross, Notary Public_ .
(here insert name and title of the officer)

personally appeared **Andrew Stupin**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

THOMAS T. GROSS
COMM. #1955521
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires Nov. 4, 2015

(Seal)

**DEED OF TRUST**

Loan No: 404154276086    (Continued)    Page 15

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF ____California____    )
                                 ) SS
COUNTY OF ____Orange____    )

On ____April 30th____, 20_15_ before me, ____Thomas T. Gross, Notary Public____,
                                          (here insert name and title of the officer)

personally appeared **Julie K. Stupin**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

THOMAS T. GROSS
COMM. #1955521
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
My Comm. Expires Nov. 4, 2015

(Seal)

| | DEED OF TRUST | |
|---|---|---|
| Loan No: 404154276086 | (Continued) | Page 16 |

**(DO NOT RECORD)**

## REQUEST FOR FULL RECONVEYANCE

(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____    Beneficiary: _____

                                    By: _____

                                    Its: _____

LaserPro, Ver. 14.5.10.004   Copr. D+H USA Corporation 1997, 2015.   All Rights Reserved.   - CA
C:\CFI\LPL\G01.FC  TR-181750  PR-504

# Exhibit O

*0000040000314444-1095503402023*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 03-30-2023 | 03-29-2024 | 40000314444-1 | 01C1 / R2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  ANDREW STUPIN  
JULIE K. STUPIN  
11 OFFSHORE  
NEWPORT COAST CA 92657

**Lender:**  First Bank  
Huntington Beach  
501 Main Street, Suite H  
Huntington Beach CA 92648

**Principal Amount: $2,000,000.00**                                              **Date of Note: March 30, 2023**

**PROMISE TO PAY.** ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million & 00/100 Dollars ($2,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 29, 2024. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 30, 2023, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 8.000% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.250%.** If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this Note be less than 0.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the principal and interest overdue.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note.

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

## PROMISSORY NOTE
### (Continued)

Loan No: 40000314444-1

Page 2

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and or an "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including without limitation, any loan, line of credit, revolving credit, guaranty, or letter of credit, reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and or any Affiliate with or in favor of Lender. For purposes hereof: (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns, or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge, Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release Borrower and Guarantors, and each of them acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor' s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated March 30, 2023, to a trustee in favor of Lender on real property located in Orange County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Orange County, State of California.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually. Borrower agrees to be liable for all sums either (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note. (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: First Bank Attn: Client Services P O Box 790269 St. Louis, MO 63179-0269

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower, (a) make one or more additional secured or unsecured loans or otherwise extend

**PROMISSORY NOTE**
**(Continued)**

Loan No: 40000314444-1                                                                        Page 3

additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral, and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x _____          x _____
ANDREW STUPIN                                JULIE K. STUPIN

# Exhibit P

*0000040000314444-1096003292024*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 03-29-2024 | 03-28-2025 | 40000314444-1 | 01C1 / R2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "***" has been omitted due to text length limitations.

| Borrower: | ANDREW STUPIN | Lender: | First Bank |
|---|---|---|---|
| | JULIE K. STUPIN | | Huntington Beach |
| | 11 OFFSHORE | | 501 Main Street, Suite H |
| | NEWPORT COAST, CA 92657 | | Huntington Beach, CA 92648 |

**Principal Amount: $2,000,000.00**                                  **Date of Agreement: March 29, 2024**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated March 30, 2023 in the original principal amount of $2,000,000.00, as amended.

**DESCRIPTION OF COLLATERAL.** Real property described in two (2) existing Deeds of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date from March 29, 2024 to March 28, 2025.

**PROMISE TO PAY.** ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million & 00/100 Dollars ($2,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 28, 2025. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 29, 2024, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.500% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.750%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this loan be less than 0.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**CHANGE IN TERMS AGREEMEN.**
**(Continued)**

Loan No: 40000314444-1                                                                                                                  Page 2

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest Immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Real property described in two (2) existing Deeds of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: **ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually.** Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan. the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower

## CHANGE IN TERMS AGREEMENT
(Continued)

Loan No: 40000314444-1                                                                    Page 3

authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P.O. Box 790269 St. Louis, MO 63179-0269.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

BORROWER:

X _____        X _____
ANDREW STUPIN                             JULIE K. STUPIN

LENDER:

FIRST BANK

X _____
Authorized Signer

LaserPro, Ver. 23.a.10.021 Copr. Finastra USA Corporation 1997, 2024. All Rights Reserved. - CA  C:\LaserPro\CFI\LPL\C20C.FC TR-31715 PR-68I

# Exhibit Q

*0000040000314444-1096003282025*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 03-28-2025 | 03-27-2026 | 40000314444-1 | 01C1 / R2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "***" has been omitted due to text length limitations

| Borrower: | ANDREW STUPIN<br>JULIE K. STUPIN<br>11 OFFSHORE<br>NEWPORT COAST, CA 92657 | Lender: | First Bank<br>Huntington Beach<br>501 Main Street, Suite H<br>Huntington Beach, CA 92648 |
|---|---|---|---|

**Principal Amount: $2,000,000.00**                                    **Date of Agreement: March 28, 2025**

**DESCRIPTION OF EXISTING INDEBTEDNESS**  Promissory Note dated March 30, 2023, in the original principal amount of $2,000,000.00, as amended

**DESCRIPTION OF COLLATERAL.**  Real property described in two (2) existing Deeds of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648

**DESCRIPTION OF CHANGE IN TERMS**  Extend the maturity date from March 28, 2025 to March 27, 2026

**PROMISE TO PAY.**  ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million & 00/100 Dollars ($2,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT**  Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 27, 2026.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 28, 2025, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements, then to principal due; then to any unpaid credit insurance premiums (if applicable), then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.**  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index")  The Index is not necessarily the lowest rate charged by Lender on its loans  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each day  Borrower understands that Lender may make loans based on other rates as well  The Index currently is 7.500% per annum.  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 7.750%  If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index  Lender may also amend and adjust the Margin to accompany the substitute index  The change to the Margin may be a positive or negative value, or zero  In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable.  Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower.  NOTICE  Under no circumstances will the interest rate on this loan be less than 0.000% per annum or more than the maximum rate allowed by applicable law

**INTEREST CALCULATION METHOD**  Interest on this loan is computed on a 365/360 basis, that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding  All interest payable under this loan is computed using this method  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT, MINIMUM INTEREST CHARGE.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00.  Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest  Rather, early payments will reduce the principal balance due  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn  Payment Processing, P O  Box 790269 St. Louis, MO  63179-0269.

**LATE CHARGE.**  If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.**  Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin")  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.  However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement

**Payment Default**  Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.**  Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents

**False Statements**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter

**Death or Insolvency.**  The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired

**Insecurity.**  Lender in good faith believes itself insecure

**CHANGE IN TERMS AGREEMEN .**
(Continued)

Loan No: 40000314444-1                                                                                          Page 2

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note

Cure Provisions. If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default (1) cures the default within fifteen (15) days, or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay Borrower will pay Lender that amount This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions This Agreement has been accepted by Lender in the State of California**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California

**DISHONORED ITEM FEE** Borrower will pay a fee to Lender of $25 00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Real property described in two (2) existing Deeds of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit Advances under this Agreement may be requested either orally or in writing by Borrower or as provided in this paragraph Lender may, but need not, require that all oral requests be confirmed in writing All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually Borrower agrees to be liable for all sums either (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs Lender will have no obligation to advance funds under this Agreement if (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement, (B) Borrower or any guarantor ceases doing business or is insolvent, (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender. (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender, or (E) Lender in good faith believes itself insecure

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s) It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement If any person who signed the original obligation does not sign this Agreement below. then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released "

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial

**HANGE IN TERMS AGREEMENT**

Loan No: 40000314444-1 (Continued) Page 3

condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your accounts, to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address First Bank Attn Client Services P O Box 790269 St Louis, MO 63179-0269

**MISCELLANEOUS PROVISIONS** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit, (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness, (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral, (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine, (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose, and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral, or impair, fail to realize upon or perfect Lender's security interest in the collateral, and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

BORROWER

X_____          X_____
ANDREW STUPIN                           JULIE K. STUPIN

LENDER

FIRST BANK

X_____
Authorized Signer

# Exhibit R

*0000040000314444-1096003272026*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 03-27-2026 | 09-27-2026 | 40000314444-1 | 1C28 / R2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**Principal Amount: $2,000,000.00** **Date of Agreement: March 27, 2026**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated March 30, 2023, in the original principal amount of $2,000,000.00, as amended

**DESCRIPTION OF COLLATERAL.** Real property described in two (2) existing Deeds of Trusts dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date from March 27, 2026 to September 27, 2026

**PROMISE TO PAY.** ANDREW STUPIN and JULIE K. STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million & 00/100 Dollars ($2,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 27, 2026. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 27, 2026, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 6.750% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 7.000%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this loan be less than 0.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 40000314444-1

Page 2

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

Cure Provisions. If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction) and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to personal jurisdiction of the state courts having jurisdiction over ORANGE County, State of California or, if there is federal subject matter jurisdiction, in the federal court in the federal judicial district in which ORANGE County, State of California is located. Borrower also agrees Lender may bring any action to enforce Lender's rights with respect to any of the collateral securing the Note including, without limitation, to foreclose Lender's security interest in such collateral, in any state court or, if there is federal subject matter jurisdiction, in the federal court in any federal judicial district in which any such collateral may be found, and Borrower submits to the personal jurisdiction of any such court. Borrower waives any claim of inconvenient forum or that venue is otherwise improper in any court designated in this provision.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

COLLATERAL. Borrower acknowledges this Agreement is secured by Real property described in two (2) existing Deeds of Trust dated September 18, 2008 with a property address of 209 5th Street, Huntington Beach, CA 92648 and an existing Deed of Trust and Assignment of Rents dated May 20, 2014, with a property address of 309 5th Street, Huntington Beach, CA 92648.

LINE OF CREDIT. This Agreement evidences a non-revolving line of credit. Payments made prior to termination of the line of credit do not entitle Borrower to readvances of the amounts already paid. Advances under this Agreement may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower at Lender's address shown above, written notice of revocation of such authority: ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including electronic records. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS). In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

GENERAL RELEASE OF LENDER. (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth

**CHANGE IN TERMS AGREEMENT**
(Continued)

Loan No: 40000314444-1

Page 3

in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P.O. Box 790269 St. Louis, MO 63179-0269.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness, (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral, (d) apply such security and direct the order or manner of sale thereof, including without limitation any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine, (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose, and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH OF THE UNDERSIGNED READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH OF THE UNDERSIGNED AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____
ANDREW STUPIN

X _____
JULIE K. STUPIN

LENDER:

FIRST BANK

X _____
Authorized Signer

*0000040000314444-1003503272026*

## AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 03-27-2026 | 09-27-2026 | 40000314444-1 | 1C28 / R2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

| Grantor: | ANDREW STUPIN | Lender: | First Bank |
|---|---|---|---|
| | JULIE K. STUPIN | | Huntington Beach |
| | 11 OFFSHORE | | 501 Main Street, Suite H |
| | NEWPORT COAST, CA 92657 | | Huntington Beach, CA 92648 |

INSURANCE REQUIREMENTS. Grantor, ANDREW STUPIN and JULIE K. STUPIN ("Grantor") understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to Grantor by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral")

Collateral:   209 5th Street, Huntington Beach, CA 92648.
Type: Fire and extended coverage.
Amount: Loan Amount; however in no event greater than the value of the replacement cost of the improvements
Basis: Replacement value
Endorsements: Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
Deductibles: $1,000.00
Latest Delivery Date: By the loan closing date

INSURANCE COMPANY. Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

FLOOD INSURANCE. Flood Insurance for the Collateral securing this loan is described as follows:

Real Estate at 209 5th Street, Huntington Beach, CA 92648.
Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

INSURANCE MAILING ADDRESS. All documents and other materials relating to insurance for this loan should be mailed, delivered or directed to the following address:

FIRST BANK
ISAOA/ATIMA
PO BOX 139
Coppell, TX 75019

FAILURE TO PROVIDE INSURANCE. Grantor agrees to deliver to Lender, on the latest delivery date stated above, evidence of the required insurance as provided above, with an effective date of March 27, 2026, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL. HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS

AUTHORIZATION. For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 27, 2026.

GRANTOR:

X _____   X _____
ANDREW STUPIN                          JULIE K STUPIN

| FOR LENDER USE ONLY |
|---|
| INSURANCE VERIFICATION |

DATE: _____   PHONE _____

AGENT'S NAME: _____
AGENCY: TRAVELERS CASUALTY INSURANCE OF AMERICA
ADDRESS _____
INSURANCE COMPANY: WESTERN REPUBLIC INSURANCE SERVICES
POLICY NUMBER: 6808535N285
EFFECTIVE DATES: _____

COMMENTS: _____



*0000040000314444-1016003272026*

# HAZARD INSURANCE DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 03-27-2026 | 09-27-2026 | 40000314444-1 | 1C2B / R2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

## HAZARD INSURANCE DISCLOSURE

**Made Pursuant to California Civil Code Section 2955.5**

**IMPORTANT**

**DO NOT SIGN THIS FORM UNTIL YOU CAREFULLY READ IT AND UNDERSTAND ITS CONTENT**

You have applied for a loan or credit accommodation that will be secured by real property. As a condition of the loan or credit accommodation, Lender may require you to maintain hazard insurance coverage for the real property. California law provides that Lender cannot require you, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the property (such as fire and other perils) in an amount exceeding the replacement value of the building or structures attached to the property.

**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, RECEIVED AND UNDERSTAND THIS HAZARD INSURANCE DISCLOSURE. THIS DISCLOSURE IS DATED MARCH 27, 2026.**

**BORROWER:**

x [signature]
ANDREW STUPIN

x [signature: Julie K. Stupin]
JULIE K. STUPIN



*0000040000314444-1034503272026*

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,000,000.00 | 03-27-2026 | 09-27-2026 | 40000314444-1 | 1C2B / R2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

LOAN TYPE. This is a Variable Rate Nondisclosable Draw Down Line of Credit Loan to two Individuals for $2,000,000.00 due on September 27, 2026. This is a secured renewal loan.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Renewal of existing Revolving Line of Credit.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $2,000,000.00 as follows:

| | | |
|---|---|---|
| Amount paid to Borrower directly: | | $1,998,627.00 |
| $1,998,627.00 Deposited to Loan Account # 40000314444-1 (Renewal balance as of March 27, 2026) | | |
| Undisbursed Funds: | $1,373.00 | |
| Note Principal: | | $2,000,000.00 |

**AUTOMATIC PAYMENTS.** Borrower hereby authorizes Lender automatically to deduct from Borrower's DDA Checking account numbered 404561116, the amount of any loan payment. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, Borrower or Lender may voluntarily terminate Automatic Payments.

**FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED MARCH 27, 2026.**

**BORROWER:**

X [signature] ANDREW STUPIN

X [signature] JULIE K. STUPIN

# Exhibit S

FIDELITY NATIONAL TITLE COMPANY

**RECORDATION REQUESTED BY:**
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**WHEN RECORDED MAIL TO:**
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**SEND TAX NOTICES TO:**
Andrew Stupin
Julie K. Stupin
215 5th Street, #A
Huntington Beach, CA 92648

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
**30.00**
**2008000448677 08:00am 09/25/08**
113 92 D11 9
0.00 0.00 0.00 0.00 24.00 0.00 0.00 0.00

**FOR RECORDER'S USE ONLY**

725117448-AJ

## DEED OF TRUST

THIS DEED OF TRUST is dated September 18, 2008, among Andrew Stupin and Julie K. Stupin, Husband and Wife as Community Property with Right of Survivorship; whose address is 215 5th Street, #A, Huntington Beach, CA 92648 ("Trustor"); First Bank, whose address is Huntington Beach, 501 Main Street, Suite H, Huntington Beach, CA 92648 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and First Bank, whose address is 501 Main Street, Suite H, Huntington Beach, CA 92648 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Orange County, State of California:

LOT 9 BLOCK 205 OF HUNTINGTON BEACH TRACT, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, AS PER MAP RECORDED IN BOOK 3, PAGE(S) 36, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

The Real Property or its address is commonly known as 209 - 5th Street, Huntington, CA 92648. The Assessor's Parcel Number for the Real Property is 024-146-14.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property

**DEED OF TRUST**
**(Continued)**

shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252465                                                                                     Page 3

endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies.   Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired. Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

Trustor's Report on Insurance. Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing:  (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy;  (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and  (5)  the expiration date of the policy.  Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Trustor warrants that:  (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and  (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title.  Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

Proceedings. If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to

**DEED OF TRUST**
**(Continued)**

Loan No: 404084252465

Page 4

Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default In Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the

## DEED OF TRUST
**(Continued)**

Loan No: 404084252465                                                                   Page 6

Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Orange County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Andrew Stupin and Julie K. Stupin and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental

**DEED OF TRUST**

Loan No: 404084252465                        **(Continued)**                                    Page 8

Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means First Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated September 18, 2008, **in the original principal amount of $1,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means First Bank, whose address is 501 Main Street, Suite H, Huntington Beach, CA  92648 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Andrew Stupin and Julie K. Stupin.

**EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

TRUSTOR:

X _____
   Andrew Stupin

X _____
   Julie K. Stupin

**DEED OF TRUST**
(Continued)

Loan No: 404084252465

Page 9

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Calif_ )

) SS

COUNTY OF _Orange_ )

On _9-19_ , 20 _08_ before me, _Susan L. Caine, Notary Public._

(here insert name and title of the officer)

personally appeared **Andrew Stupin and Julie K. Stupin, husband and wife as community property**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Susan L Caine_

SUSAN L. CAINE
Commission # 1595755
Notary Public - California
Orange County
My Comm. Expires Aug 4, 2009

(Seal)

---

### (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ , Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 5.40.00.003    Copr. Harland Financial Solutions, Inc. 1997, 2008.    All Rights Reserved.    - CA
C:\CFI\LPL\G01.FC  TR-147014  PR-504

# Exhibit T

*0000040000316663-1095501122024*

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 01-12-2024 | 03-29-2024 | 40000316663-1 | 01E2 / X2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations

| Borrower: | ANDREW STUPIN<br>JULIE KRISTINE STUPIN<br>11 OFFSHORE<br>NEWPORT COAST, CA 92657 | Lender: | First Bank<br>Huntington Beach<br>501 Main Street, Suite H<br>Huntington Beach, CA 92648 |
|---|---|---|---|

**Principal Amount: $1,000,000.00**                                        **Date of Note: January 12, 2024**

**PROMISE TO PAY.** ANDREW STUPIN and JULIE KRISTINE STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 29, 2024. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning March 12, 2024, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 8.500% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.750%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this Note be less than 0.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon maturity of this Note, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Note, the interest rate on this Note shall immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the

**PROMISSORY NOTE**
**(Continued)**

Loan No: 40000316663-1 Page 2

same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical

ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS). In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

GENERAL RELEASE OF LENDER. (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated January 12, 2024, to a trustee in favor of Lender on real property located in ORANGE County, State of California. That agreement contains the following due on sale provision. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in ORANGE County, State of California.

LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

PERIODIC REVIEW. Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the

**PROMISSORY NOTE**
**(Continued)**

Loan No: 40000316663-1

Page 3

specific inaccuracy(ies) should be sent to Lender at the following address: First Bank Attn: Client Services P.O Box 790269 St. Louis, MO 63179-0269.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower  (a) make one or more additional secured or unsecured loans or otherwise extend additional credit.  (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness;  (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral;  (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine;  (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  and  (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
ANDREW STUPIN

X _____
JULIE KRISTINE STUPIN

LaserPro Ver 23.4.10.031  Copr. Finastra USA Corporation 1997. 2024   All Rights Reserved   - CA  C:\LaserPro\CFI\PL\D81.FC  TR-339002  PR-999

# Exhibit U



*0000040000316663-1096003292024*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 03-29-2024 | 03-28-2025 | 40000316663-1 | 01E2 / X2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE KRISTINE STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**Principal Amount: $1,000,000.00** **Date of Agreement: March 29, 2024**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note dated January 12, 2024 in the original principal amount of $1,000,000.00, as amended.

**DESCRIPTION OF COLLATERAL.** Real property described in an existing Deed of Trust dated January 12, 2024 and an Assignment of Rents dated January 12, 2024 with a property address of 311 5th Street, Huntington Beach, CA 92648.

**DESCRIPTION OF CHANGE IN TERMS.** Extend the maturity date from March 29, 2024 to March 28, 2025.

**PROMISE TO PAY. ANDREW STUPIN and JULIE KRISTINE STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.**

**PAYMENT.** **Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 28, 2025. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 29, 2024, with all subsequent interest payments to be due on the same day of each month after that.** Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The Index currently is 8.500% per annum.** Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.750%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific Index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this loan be less than 0.000% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.**

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a **minimum interest charge of $100.00.** Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269 St. Louis, MO 63179-0269.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment.**

**INTEREST AFTER DEFAULT.** Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or

**CHANGE IN TERMS AGREEMENT.**
(Continued)

Loan No: 40000316663-1

Page 2

performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default (1) cures the default within fifteen (15) days or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by real property described in an existing Deed of Trust dated January 12, 2024 and an Assignment of Rents dated January 12, 2024 with a property address of 311 5th Street, Huntington Beach, CA 92648.

**LINE OF CREDIT.** This Agreement evidences a revolving line of credit. Advances under this Agreement may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor('s) disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**CHANGE IN TERMS AGREEMENT**

Loan No: 40000316663-1 | (Continued) | Page 3

---

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P.O. Box 790269 St. Louis, MO 63179-0269.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

**PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

BORROWER:

X _____
ANDREW STUPIN

X _____
JULIE KRISTINE STUPIN

LENDER:

FIRST BANK

X _____
Authorized Signer

LaserPro, Ver. 23.4.10.021  Copr. Finastra USA Corporation 1997, 2024.  All Rights Reserved.  - CA  C:\LaserPro\CFI\LPL\D20C.FC  TR 31716C  PR 988

# Exhibit V

*0000040000316663-1096003282025*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 03-28-2025 | 03-27-2026 | 40000316663-1 | 01E2 / X2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "****" has been omitted due to text length limitations

| Borrower: | ANDREW STUPIN<br>JULIE K. STUPIN<br>11 OFFSHORE<br>NEWPORT COAST, CA 92657 | Lender: | First Bank<br>Huntington Beach<br>501 Main Street, Suite H<br>Huntington Beach, CA 92648 |
|---|---|---|---|

**Principal Amount: $1,000,000.00**                                                  **Date of Agreement: March 28, 2025**

DESCRIPTION OF EXISTING INDEBTEDNESS  Promissory Note dated January 12, 2024, in the original principal amount of $1,000,000.00, as amended

DESCRIPTION OF COLLATERAL.  Real property described in an existing Deed of Trust dated January 12, 2024 and an Assignment of Rents dated January 12, 2024 with the property address of 311 5th Street, Huntington Beach, CA 92648

DESCRIPTION OF CHANGE IN TERMS.  Extend the maturity date from March 28, 2025 to March 27, 2026.

PROMISE TO PAY.  ANDREW STUPIN and JULIE K STUPIN ("Borrower") jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT.  Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on March 27, 2026.  In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 28, 2025, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements, then to principal due, then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements, and then to any unpaid collection costs.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing

VARIABLE INTEREST RATE.  The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index")  The Index is not necessarily the lowest rate charged by Lender on its loans  Lender will tell Borrower the current Index rate upon Borrower's request  The interest rate change will not occur more often than each day  Borrower understands that Lender may make loans based on other rates as well.  The Index currently is 7.500% per annum  Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), resulting in an initial rate of 7 750%.  If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this loan by designating a substantially similar substitute index  Lender may also amend and adjust the Margin to accompany the substitute index.  The change to the Margin may be a positive or negative value, or zero  In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable.  Such an amendment to the terms of this loan will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower.  NOTICE  Under no circumstances will the interest rate on this loan be more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding  All interest payable under this loan is computed using this method.  This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents

PREPAYMENT, MINIMUM INTEREST CHARGE.  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00  Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest  Rather, early payments will reduce the principal balance due  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to.  First Bank, Attn  Payment Processing, P O. Box 790269 St. Louis, MO  63179-0269.

LATE CHARGE.  If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

INTEREST AFTER DEFAULT.  Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by adding an additional 5 000 percentage point margin ("Default Rate Margin").  The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default  However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law

DEFAULT.  Each of the following shall constitute an Event of Default under this Agreement

Payment Default  Borrower fails to make any payment when due under the Indebtedness

Other Defaults  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower

Default in Favor of Third Parties.  Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents

False Statements.  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency.  The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower

Creditor or Forfeiture Proceedings.  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute

Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired

Insecurity.  Lender in good faith believes itself insecure

Events Affecting Guarantor  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

**CHANGE IN TERMS AGREEMEN⁊**
**(Continued)**

Loan No: 40000316663-1                                                                                                      Page 2

of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note

Cure Provisions. If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default (1) cures the default within fifteen (15) days, or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical

**LENDER'S RIGHTS** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of ORANGE COUNTY County, State of California

**DISHONORED ITEM FEE** Borrower will pay a fee to Lender of $25 00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored

**COLLATERAL.** Borrower acknowledges this Agreement is secured by the following collateral described in the security instrument listed herein a Deed of Trust dated January 12, 2024, to a trustee in favor of Lender on real property located in Orange County, State of California

**LINE OF CREDIT** This Agreement evidences a revolving line of credit Advances under this Agreement may be requested either orally or in writing by Borrower or as provided in this paragraph Lender may, but need not, require that all oral requests be confirmed in writing All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually Borrower agrees to be liable for all sums either (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including daily computer print-outs Lender will have no obligation to advance funds under this Agreement if (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement, (B) Borrower or any guarantor ceases doing business or is insolvent, (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender, (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender, or (E) Lender in good faith believes itself insecure

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms Nothing in this Agreement will constitute a satisfaction of the obligation(s) It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity, directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise

**GENERAL RELEASE OF LENDER** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, in the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States, or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released "

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor'(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness

**HANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 40000316663-1                                                                                                    Page 3

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P.O. Box 790269 St. Louis, MO 63179-0269.

MISCELLANEOUS PROVISIONS. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit, (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness including increases and decreases of the rate of interest on the indebtedness, (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral, (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine, (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose, and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral, or impair, fail to realize upon or perfect Lender's security interest in the collateral, and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER

X _____                    X _____
   ANDREW STUPIN                                        JULIE K. STUPIN

LENDER

FIRST BANK

X _____
   Authorized Signer

LaserPro Ver 24.4.20.030 Copr. Finastra USA Corporation 1997, 2025 All Rights Reserved.  - CA  C:\LaserPro\CFI\PL\D20F.FC TR-31669I PR-182

# Exhibit W

*0000040000316663-1096003272026*

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 03-27-2026 | 09-27-2026 | 40000316663-1 | 01E2 / X2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

Lender:  First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

Principal Amount: $1,000,000.00                      Date of Agreement:  March 27, 2026

DESCRIPTION OF EXISTING INDEBTEDNESS. Promissory Note dated January 12, 2024, in the original principal amount of $1,000,000.00, as amended.

DESCRIPTION OF COLLATERAL. Real property described in an existing Deed of Trust dated January 12, 2024 and an Assignment of Rents dated January 12, 2024 with the property address of 211 5th Street, Huntington Beach CA 92648.

DESCRIPTION OF CHANGE IN TERMS. Extend the maturity date from March 27, 2026 to September 27, 2026.

PROMISE TO PAY. ANDREW STUPIN jointly and severally promise to pay to First Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million & 00/100 Dollars ($1,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT. Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on September 27, 2026. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 27, 2026, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to past due amounts first, then to any interest shown as due on the periodic loan statements; then to principal due; then to any unpaid credit insurance premiums (if applicable); then to any late charges shown as due on the periodic loan statements; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the First Bank Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 6.750% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 0.250 percentage points over the Index (the "Margin"), adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 7.000%. If Lender determines, in its sole discretion, that the Index has become unavailable or unreliable, either temporarily, indefinitely, or permanently, during the term of this loan, Lender may amend this Note by designating a substantially similar substitute index. Lender may also amend and adjust the Margin to accompany the substitute index. The change to the Margin may be a positive or negative value, or zero. In making these amendments, Lender may take into consideration any then-prevailing market convention for selecting a substitute index and margin for the specific index that is unavailable or unreliable. Such an amendment to the terms of this Note will become effective and bind Borrower 10 business days after Lender gives written notice to Borrower without any action or consent of the Borrower. NOTICE: Under no circumstances will the interest rate on this loan be less than 0.000% per annum or more than the maximum rate allowed by applicable law.

INTEREST CALCULATION METHOD. Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in the loan documents.

PREPAYMENT; MINIMUM INTEREST CHARGE. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn: Payment Processing, P.O. Box 790269, St. Louis, MO 63179-0269.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

INTEREST AFTER DEFAULT. Upon maturity of this loan, whether the scheduled maturity date or due to this loan being accelerated by Lender because of a default under this Agreement, the interest rate on this loan shall immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate applied under this paragraph exceed the maximum interest rate permitted under applicable law.

DEFAULT. Each of the following shall constitute an Event of Default under this Agreement.

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party

# CHANGE IN TERMS AGREEMENT
Loan No: 40000316663-1                               (Continued)                                    Page 2

of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to personal jurisdiction of the state courts having jurisdiction over ORANGE County, State of California or, if there is federal subject matter jurisdiction, in the federal court in the federal judicial district in which ORANGE County, State of California is located. Borrower also agrees Lender may bring any action to enforce Lender's rights with respect to any of the collateral securing the Note including, without limitation, to foreclose Lender's security interest in such collateral, in any state court or, if there is federal subject matter jurisdiction, in the federal court in any federal judicial district in which any such collateral may be found, and Borrower submits to the personal jurisdiction of any such court. Borrower waives any claim of inconvenient forum or that venue is otherwise improper in any court designated in this provision.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by real property described in an existing Deed of Trust dated January 12, 2024 and an Assignment of Rents dated January 12, 2024 with the property address of 311 5th Street, Huntington Beach, CA 92648.

**LINE OF CREDIT.** This Agreement evidences a non-revolving line of credit. Payments made prior to termination of the line of credit do not entitle Borrower to readvances of the amounts already paid. Advances under this Agreement may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following person or persons are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: ANDREW STUPIN, Individually; and JULIE K. STUPIN, Individually. Borrower agrees to be liable for all sums either (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records, including electronic records. Lender will have no obligation to advance funds under this Agreement if: (A) Borrower or any guarantor is in default under the terms of this Agreement or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Agreement; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL EVENT OF DEFAULT (CROSS-DEFAULTS).** In addition to the Events of Default provided elsewhere in this Note, it shall be an Event of Default if Borrower, any other "Obligor" (as hereinafter defined) and/or any "Affiliate" (as hereinafter defined) shall be in default under or in respect of any present or future obligation to Lender, including, without limitation, any loan, line of credit, revolving credit, guaranty or letter of credit reimbursement obligation, or any default or event of default shall occur under or within the meaning of any agreement, document or instrument heretofore, now or hereafter executed by Borrower, any other Obligor and/or any Affiliate with or in favor of Lender. For purposes hereof, (a) "Obligor" shall mean Borrower, each guarantor of any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and each other person or entity who or which grants Lender a security interest in or lien or any of the property or assets of such person or entity as security for any or all of the indebtedness, liabilities and/or obligations of Borrower to Lender and (b) "Affiliate" shall mean any person or entity (i) which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with Borrower or any other Obligor, (ii) which directly or indirectly through one or more intermediaries beneficially owns or holds or has the power to direct the voting power of Five Percent (5%) or more of any class of capital stock, membership interests or other equity interests of Borrower or any other Obligor, (iii) which has Five Percent (5%) or more of any class of its capital stock, membership interests or other equity interests beneficially owned or held, directly or indirectly, by Borrower and/or any other Obligor or (iv) who is a director, officer, manager or employee of Borrower or any other Obligor. For purposes of this definition, "control" shall mean the power to direct the management and policies of a person or entity directly or indirectly, whether through the ownership of capital stock, membership interests or other equity interests, by contract or otherwise.

**GENERAL RELEASE OF LENDER.** (a) Except for the executory rights and obligations arising out of this Agreement, and as further consideration for the Lender's entering into this Agreement, and without which the Lender would not have entered into this Agreement, Borrower and Guarantors, and each of them, on behalf of themselves, their respective heirs, executors, personal representatives, successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge Lender and its predecessors, successors and assigns and their respective past and present attorneys, accountants, insurers, agents, representatives, affiliates, partners, subsidiaries, parent corporations, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees and expenses ), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which Borrower or any Guarantor, now owns or holds or has at any time heretofore owned or held against the Released Parties, or any of them, by reason of any acts, facts, transactions or circumstances whatsoever occurring or existing prior to the recordation of this Agreement (or if not recorded, then the date of this Agreement) including but not limited to, those based upon, arising out of, appertaining to, or in connection with the Loan, the instruments, agreements and documents executed in connection with the Loan, the facts pertaining to this Agreement, any collateral heretofore granted to Lender or granted in connection herewith, or to any other obligations of Borrower and/or any Guarantors to Lender, or the lending arrangements between Lender and Borrower.

(b) Borrower and Guarantors, and each of them, expressly waive and release any right or benefit which they have or may have under any law of any state, territory, commonwealth or possession of the United States or of the United States that provides, in effect, that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor, to the full extent that they may waive all such rights and benefits pertaining to the matters released herein. In connection with such waiver and release, Borrower and Guarantors, and each of them, acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the intention of Borrower and Guarantors, and each of them, through this Agreement fully, finally and forever to release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed. In furtherance of such intention, the release herein given shall be and remain in effect as a full and complete release of such matters notwithstanding the discovery or existence of any such additional or different claims or facts relative thereto.

(c) Borrower and Guarantors, and each of them, are the sole and lawful owners of all right, title and interest in and to every claim and other matter which they purport to release herein, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released."

(d) Neither the Borrower nor any Guarantor has relied on any representation of the Lender or any employee or agent of the Lender not set forth in this Agreement, and the Lender is relying on the Borrower's and Guarantor(s)' disclaimer of reliance on any such representation as a material inducement in entering into this Agreement.

**CHANGE IN TERMS AGREEMENT**
**(Continued)**

Loan No: 40000316663-1                                                                    Page 3

**PERIODIC REVIEW.** Borrower agrees to provide Lender with current financial statements and tax returns on Borrower annually, on forms provided by Lender. Borrower also agrees Lender may obtain credit reports on it at any time and from time to time, at Lender's sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in the financial condition. Borrower authorizes Lender to release information about it to third parties as permitted by law. Based upon a material adverse change in financial condition or payment habits, Lender may declare a default and exercise any rights available to it.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: First Bank Attn: Client Services P.O. Box 790269 St. Louis, MO 63179-0269

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, EACH OF THE UNDERSIGNED READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH OF THE UNDERSIGNED AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____          X _____
ANDREW STUPIN                        JULIE K. STUPIN

LENDER:

FIRST BANK

X _____
Authorized Signer

||||||||||||||||||||||||||||||||||||||
"0000040000316663-1003503272026"

## AGREEMENT TO PROVIDE INSURANCE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 03-27-2026 | 09-27-2026 | 40000316663-1 | 01E2 / X2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "***" has been omitted due to text length limitations.

| Grantor: | ANDREW STUPIN<br>JULIE K. STUPIN<br>11 OFFSHORE<br>NEWPORT COAST, CA 92657 | Lender: | First Bank<br>Huntington Beach<br>501 Main Street, Suite H<br>Huntington Beach, CA 92648 |
|---|---|---|---|

**INSURANCE REQUIREMENTS.** Grantor, ANDREW STUPIN and JULIE K. STUPIN ("Grantor") understands that insurance coverage is required in connection with the extending of a loan or the providing of other financial accommodations to Grantor by Lender. These requirements are set forth in the security documents for the loan. The following minimum insurance coverages must be provided on the following described collateral (the "Collateral"):

Collateral: 311 5th Street, Huntington Beach, CA 92648.
Type: Fire and extended coverage.
Amount: Loan Amount; however in no event greater than the value of the replacement cost of the improvements.
Basis: Replacement value.
Endorsements: Standard mortgagee's clause with stipulation that coverage will not be cancelled or diminished without a minimum of 30 days prior written notice to Lender, and without disclaimer of the insurer's liability for failure to give such notice.
Deductibles: $2,500.00
Latest Delivery Date: By the loan closing date.

**INSURANCE COMPANY.** Grantor may obtain insurance from any insurance company Grantor may choose that is reasonably acceptable to Lender. Grantor understands that credit may not be denied solely because insurance was not purchased through Lender.

**FLOOD INSURANCE.** Flood Insurance for the Collateral securing this loan is described as follows:

Real Estate at 311 5th Street, Huntington Beach, CA 92648.
Should the Collateral at any time be deemed to be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**INSURANCE MAILING ADDRESS.** All documents and other materials relating to insurance for this loan should be mailed, delivered or directed to the following address:

FIRST BANK
ISAOA/ATIMA
PO BOX 139
Coppell, TX 75019

**FAILURE TO PROVIDE INSURANCE.** Grantor agrees to deliver to Lender, on the latest delivery date stated above, evidence of the required insurance as provided above, with an effective date of March 27, 2026, or earlier. Grantor acknowledges and agrees that if Grantor fails to provide any required insurance or fails to continue such insurance in force, Lender may do so at Grantor's expense as provided in the applicable security document. The cost of any such insurance, at the option of Lender, shall be added to the indebtedness as provided in the security document. GRANTOR ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE WILL PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO AN AMOUNT EQUAL TO THE LESSER OF (1) THE UNPAID BALANCE OF THE DEBT, EXCLUDING ANY UNEARNED FINANCE CHARGES, OR (2) THE VALUE OF THE COLLATERAL. HOWEVER, GRANTOR'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**AUTHORIZATION.** For purposes of insurance coverage on the Collateral, Grantor authorizes Lender to provide to any person (including any insurance agent or company) all information Lender deems appropriate, whether regarding the Collateral, the loan or other financial accommodations, or both.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT TO PROVIDE INSURANCE AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 27, 2026.**

GRANTOR:

X _____  X _____
ANDREW STUPIN                JULIE K. STUPIN

| FOR LENDER USE ONLY<br>INSURANCE VERIFICATION | | |
|---|---|---|
| DATE: | | PHONE |
| AGENT'S NAME: | | |
| AGENCY: EVANSTON INSURANCE COMPANY | | |
| ADDRESS: | | |
| INSURANCE COMPANY: WESTERN REPUBLIC INSURANCE SERVICES | | |
| POLICY NUMBER: 1AA346980 | | |
| EFFECTIVE DATES: | | |
| COMMENTS: | | |



*0000040000316663 1016003272026*

# HAZARD INSURANCE DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 03-27-2026 | 09-27-2026 | 40000316663-1 | 01E2 / X2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

## HAZARD INSURANCE DISCLOSURE

**Made Pursuant to California Civil Code Section 2955.5**

**IMPORTANT**

**DO NOT SIGN THIS FORM UNTIL YOU CAREFULLY READ IT AND UNDERSTAND ITS CONTENT**

You have applied for a loan or credit accommodation that will be secured by real property. As a condition of the loan or credit accommodation, Lender may require you to maintain hazard insurance coverage for the real property. California law provides that Lender cannot require you, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the property (such as fire and other perils) in an amount exceeding the replacement value of the building or structures attached to the property.

**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, RECEIVED AND UNDERSTAND THIS HAZARD INSURANCE DISCLOSURE. THIS DISCLOSURE IS DATED MARCH 27, 2026.**

**BORROWER:**

X ______________________ ANDREW STUPIN

X Julie K. Stupin ______________________ JULIE K. STUPIN



*0000040000316663-1034503272026*

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,000,000.00 | 03-27-2026 | 09-27-2026 | 40000316663-1 | 01E2 / X2 | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ANDREW STUPIN
JULIE K. STUPIN
11 OFFSHORE
NEWPORT COAST, CA 92657

**Lender:** First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA 92648

**LOAN TYPE.** This is a Variable Rate Nondisclosable Draw Down Line of Credit Loan to two individuals for $1,000,000.00 due on September 27, 2026. This is a secured renewal loan.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ Personal, Family, or Household Purposes or Personal Investment.

☒ Business (Including Real Estate Investment).

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Renewal of existing Revolving Line of Credit.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,000,000.00 as follows:

| | | |
|---|---|---|
| Amount paid to Borrower directly: | | $999,992.00 |
| $999,992.00 Deposited to Loan Account # 40000316663-1 (Renewal balance of March 27, 2026) | | |
| Undisbursed Funds: | $8.00 | |
| Note Principal: | | $1,000,000.00 |

**AUTOMATIC PAYMENTS.** Borrower hereby authorizes Lender automatically to deduct from Borrower's DDA Checking account, numbered 404561116, the amount of any loan payment. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, Borrower or Lender may voluntarily terminate Automatic Payments.

**FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED MARCH 27, 2026.**

**BORROWER:**

x [signature]
ANDREW STUPIN

x Julie K. Stupin
JULIE K. STUPIN

# Exhibit X

Recording Requested by:
Orange Coast Title Co.
of Southern California

**RECORDATION REQUESTED BY:**
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

**WHEN RECORDED MAIL TO:**
First Bank
ATTN:   Collateral Management
#M1-199-060
P.O. Box 790269
Saint Louis, MO  63179-0269

**SEND TAX NOTICES TO:**
First Bank
Attn: RE Tax Department
P.O. Box 790269
St. Louis, MO  63179-0269

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

130.00

* S R 0 0 1 4 7 4 7 6 0 ´ S *

**2024000011789 1:42 pm 01/18/24**
90 CR-SC06 D11   16
0.00 0.00 0.00 0.00 45.00 0.00 0.000.0075.00 3.00

**FOR RECORDER'S USE ONLY**

∞≠ 238157
: apo #024·142·14



*0000040000316663-1034001122024*

## DEED OF TRUST

Variable Interest Rate

Revolving Line of Credit

**MAXIMUM LIEN.** The lien of this Deed of Trust shall not exceed at any one time $1,000,000.00.

**THIS DEED OF TRUST** is dated January 12, 2024, among ANDREW STUPIN and JULIE KRISTINE STUPIN, husband and wife as community property with right of survivorship, whose address is 11 OFFSHORE, NEWPORT COAST, CA 92657 ("Trustor"); First Bank, whose address is Huntington Beach, 501 Main Street, Suite H, Huntington Beach, CA   92648 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and FIRST LAND TRUSTEE CORP., whose address is 1 First Missouri Center, St. Louis, MO 63141 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in ORANGE County, State of California:

The land referred to in this report is situated in the City of Huntington Beach, the County of Orange, State of California, and is described as follows:

Lot 11 in Block 305 of Huntington Beach, in the City of Huntington Beach, County of Orange, State of California, as per Map recorded in Book 3, Page 26 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California.

Assessor's Parcel Numbers(s): 024-142-14

Recording Requested by:
Orange Coast Title Co.
of Southern California

**RECORDATION REQUESTED BY:**
First Bank
Huntington Beach
501 Main Street, Suite H
Huntington Beach, CA  92648

**WHEN RECORDED MAIL TO:**
First Bank
ATTN:   Collateral Management
#M1-199-060
P.O. Box 790269
Saint Louis, MO  63179-0269

**SEND TAX NOTICES TO:**
First Bank
Attn: RE Tax Department
P.O. Box 790269
St. Louis, MO  63179-0269

**FOR RECORDER'S USE ONLY**

*⑳≠ 238157*
*Apo #024-142-14*



*0000040000316663-1034001122024*

## DEED OF TRUST

Variable Interest Rate

Revolving Line of Credit

**MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $1,000,000.00.**

**THIS DEED OF TRUST is dated January 12, 2024,** among ANDREW STUPIN and JULIE KRISTINE STUPIN, husband and wife as community property with right of survivorship, whose address is 11 OFFSHORE, NEWPORT COAST, CA  92657 ("Trustor"); First Bank, whose address is Huntington Beach, 501 Main Street, Suite H, Huntington Beach, CA  92648 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and FIRST LAND TRUSTEE CORP., whose address is 1 First Missouri Center, St. Louis, MO 63141 (referred to below as "Trustee").

**CONVEYANCE AND GRANT. For valuable consideration,** Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in ORANGE County, State of California:

The land referred to in this report is situated in the City of Huntington Beach, the County of Orange, State of California, and is described as follows:

Lot 11 in Block 305 of Huntington Beach, in the City of Huntington Beach, County of Orange, State of California, as per Map recorded in Book 3, Page 26 of Miscellaneous Maps, in the Office of the County Recorder of Orange County, California.

Assessor's Parcel Numbers(s): 024-142-14

## DEED OF TRUST
### (Continued)

Loan No: 40000316663-1                                                                    Page 2

The Real Property or its address is commonly known as  311 5TH STREET, HUNTINGTON BEACH, CA  92648.
The Assessor's Parcel Number for the Real Property is 024-142-14.

**REVOLVING LINE OF CREDIT.**  This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Trustor so long as Trustor complies with all the terms of the Note.  Notwithstanding the amount outstanding at any particular time, this Deed of Trust secures the total amount of the Note.  The unpaid balance of the revolving line of credit under the Note may at certain times be Zero Dollars ($0.00).  A zero balance does not affect Lender's agreement to make advances to Trustor under the Note.  Therefore, Lender's interest under this Deed of Trust will remain in full force and effect notwithstanding a zero balance on the Note.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938.  In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person.  The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for

**DEED OF TRUST**

Loan No: 40000316663-1 **(Continued)** Page 3

cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**DEED OF TRUST**

Loan No: 40000316663-1                    **(Continued)**                            **Page 4**

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the

**DEED OF TRUST**
**(Continued)**

Loan No: 40000316663-1

Page 5

Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by

**DEED OF TRUST**
**(Continued)**

Loan No: 40000316663-1

Page 6

counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on

**DEED OF TRUST**
**(Continued)**

payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve  (1)   Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and  (2)   the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

## DEED OF TRUST
**Loan No: 40000316663-1**            (Continued)            Page 8

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or Trustor's ability to perform Trustor's obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is Impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or

**DEED OF TRUST**
**(Continued)**

a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment, is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Trustor demanding cure of such default:  (1) cures the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.**  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.**  Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record.  Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby.  After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law.  Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including Trustor, Trustee or Beneficiary may purchase at such sale.  After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of:  all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.**  With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.**  Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the

**DEED OF TRUST**
**(Continued)**

Loan No: 40000316663-1

Page **10**

proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**DEED OF TRUST**
**(Continued)**

Loan No: 40000316663-1

Page 11

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of ORANGE County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**DEED OF TRUST**

Loan No: 40000316663-1                            **(Continued)**                              Page 12

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means First Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means ANDREW STUPIN and JULIE KRISTINE STUPIN and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization

**DEED OF TRUST**
**(Continued)**

Loan No: 40000316663-1

Page 13

Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means First Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated January 12, 2024, **in the original principal amount of $1,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties,

**DEED OF TRUST**

Loan No: 40000316663-1

**(Continued)**

**Page 14**

profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means FIRST LAND TRUSTEE CORP., whose address is 1 First Missouri Center, St. Louis, MO 63141 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means ANDREW STUPIN and JULIE KRISTINE STUPIN.

**EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

**TRUSTOR:**

X _____
**ANDREW STUPIN**

X _____
**JULIE KRISTINE STUPIN**

**DEED OF TRUST**

Loan No: 40000316663-1       **(Continued)**       **Page 15**

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF ___CALIFORNIA___       )

      ) SS

COUNTY OF ___ORANGE___       )

On ___1/16/24___, 20___ before me, ___CLAIRE H. LAND, Notary Public___
(here insert name and title of the officer)

personally appeared **ANDREW STUPIN and JULIE KRISTINE STUPIN, husband and wife as community property with right of survivorship,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

CLAIRE H. LAND
COMM. # 2407955
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. JUNE 14, 2026

(Seal)

**DEED OF TRUST**

Loan No: 40000316663-1 **(Continued)** Page 16

**(DO NOT RECORD)**

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

_____.

Date: _____ Beneficiary: _____

By: _____

Its: _____

LaserPro, Ver. 23.4.10.021 Copr. Finastra USA Corporation 1997, 2024. All Rights Reserved. - CA
C:\LaserPro\CFI\LPL\G01.FC TR-316663 PR-988

**Andrew & Julie Stupin Cash Collateral Budget**
**First Bank**
**309, 311, and 209 5th St**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | | | | | | | | | | | | | | Weeks 1-13 |
| Week Ending | 05/01/26 | 05/08/26 | 05/15/26 | 05/22/26 | 05/29/26 | 06/05/26 | 06/12/26 | 06/19/26 | 06/26/26 | 07/03/26 | 07/10/26 | 07/17/26 | 07/24/26 | |
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Property Income | $ - | $ 12,425 | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ 45,275 |
| **Total Cash Receipts** | - | 12,425 | - | - | - | 16,425 | - | - | - | - | 16,425 | - | - | 45,275 |
| | | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | | |
| Rental Mortgages | - | (10,348) | - | - | - | (14,412) | - | - | - | - | (14,153) | - | - | (38,913) |
| Rental Property Operating Expenses | - | (490) | - | - | - | (490) | - | - | - | - | (490) | - | - | (1,471) |
| Management Fees | - | (746) | - | - | - | (986) | - | - | - | - | (986) | - | - | (2,717) |
| Insurance | - | (384) | - | - | - | (384) | - | - | - | - | (384) | - | - | (1,153) |
| Utilities | - | (152) | - | - | - | (152) | - | - | - | - | (152) | - | - | (457) |
| Utility Deposits | - | - | (305) | - | - | - | - | - | - | - | - | - | - | (305) |
| | | | | | | | | | | | | | | |
| **Total Disbursements** | - | (12,120) | (305) | - | - | (16,425) | - | - | - | - | (16,165) | - | - | (45,015) |
| | | | | | | | | | | | | | | |
| **Operating Cash Flow** | - | 305 | (305) | - | - | - | - | - | - | - | 260 | - | - | 260 |
| | | | | | | | | | | | | | | |
| **Restructuring Costs** | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | (260) | (260) |
| | | | | | | | | | | | | | | |
| **Total Restructuring Costs** | - | - | - | - | - | - | - | - | - | - | - | - | (260) | (260) |
| | | | | | | | | | | | | | | |
| **Net Cash Flow** | - | 305 | (305) | - | - | - | - | - | - | - | 260 | - | (260) | (0) |

**Collateral Package Summary**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cumulative Net Cash Flow** | - | 305 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 260 | 260 | 0 | 0 |
| **Estimated Real Estate Value** | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 |
| **Estimated Total Collateral Value** | 7,000,000 | 7,000,305 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,260 | 7,000,260 | 7,000,000 | 7,000,000 |
| **Debt Balance** | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 |
| **Estimated Collateral in Excess of Debt** | 3,115,496 | 3,115,801 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,756 | 3,115,756 | 3,115,496 | 3,115,496 |

**Andrew & Julie Stupin Cash Collateral Budget**
**First Bank**
**309, 311, and 209 5th St**

| | Week # 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Cumulative Weeks 14-26 | Cumulative Weeks 1-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 07/31/26 | 08/07/26 | 08/14/26 | 08/21/26 | 08/28/26 | 09/04/26 | 09/11/26 | 09/18/26 | 09/25/26 | 10/02/26 | 10/09/26 | 10/16/26 | 10/23/26 | | |
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Rental Property Income | $ - | $ 16,425 | $ - | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ 49,275 | $ 94,550 |
| **Total Cash Receipts** | - | 16,425 | - | - | - | - | 16,425 | - | - | - | 16,425 | - | - | 49,275 | 94,550 |
| | | | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | | | |
| Rental Mortgages | - | (14,412) | - | - | - | - | (14,412) | - | - | - | (13,969) | - | - | (42,794) | (81,706) |
| Rental Property Operating Expenses | - | (490) | - | - | - | - | (490) | - | - | - | (490) | - | - | (1,471) | (2,942) |
| Management Fees | - | (986) | - | - | - | - | (986) | - | - | - | (986) | - | - | (2,957) | (5,673) |
| Insurance | - | (384) | - | - | - | - | (384) | - | - | - | (384) | - | - | (1,153) | (2,307) |
| Utilities | - | (152) | - | - | - | - | (152) | - | - | - | (152) | - | - | (457) | (914) |
| Utility Deposits | - | - | - | - | - | - | - | | | | | | | - | (305) |
| **Total Disbursements** | - | (16,425) | - | - | - | - | (16,425) | - | - | - | (15,982) | - | - | (48,832) | (93,847) |
| | | | | | | | | | | | | | | | |
| **Operating Cash Flow** | - | - | - | - | - | - | - | - | - | - | 443 | - | - | 443 | 703 |
| | | | | | | | | | | | | | | | |
| **Restructuring Costs** | | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | (443) | (443) | (703) |
| | | | | | | | | | | | | | | | |
| **Total Restructuring Costs** | - | - | - | - | - | - | - | - | - | - | - | - | (443) | (443) | (703) |
| | | | | | | | | | | | | | | | |
| **Net Cash Flow** | - | - | - | - | - | - | - | - | - | - | 443 | - | (443) | (0) | - |

**Collateral Package Summary**

| | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Weeks 14-26 | Weeks 1-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cumulative Net Cash Flow** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 443 | 443 | 0 | 0 | 0 |
| **Estimated Real Estate Value** | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 |
| **Estimated Total Collateral Value** | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,443 | 7,000,443 | 7,000,000 | 7,000,000 | 7,000,000 |
| **Debt Balance** | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 |
| **Estimated Collateral in Excess of Debt** | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,940 | 3,115,940 | 3,115,496 | 3,115,496 | 3,115,496 |

# EXHIBIT "2"

**Andrew & Julie Stupin Cash Collateral Budget**
**First Bank**
**309, 311, and 209 5th St**

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 05/01/26 | 05/08/26 | 05/15/26 | 05/22/26 | 05/29/26 | 06/05/26 | 06/12/26 | 06/19/26 | 06/26/26 | 07/03/26 | 07/10/26 | 07/17/26 | 07/24/26 | Weeks 1-13 |
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Property Income | $ - | $ 12,425 | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ 45,275 |
| **Total Cash Receipts** | - | 12,425 | - | - | - | 16,425 | - | - | - | - | 16,425 | - | - | 45,275 |
| | | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | | |
| Rental Mortgages | - | (10,348) | - | - | - | (14,412) | - | - | - | - | (14,153) | - | - | (38,913) |
| Rental Property Operating Expenses | - | (490) | - | - | - | (490) | - | - | - | - | (490) | - | - | (1,471) |
| Management Fees | - | (746) | - | - | - | (986) | - | - | - | - | (986) | - | - | (2,717) |
| Insurance | - | (384) | - | - | - | (384) | - | - | - | - | (384) | - | - | (1,153) |
| Utilities | - | (152) | - | - | - | (152) | - | - | - | - | (152) | - | - | (457) |
| Utility Deposits | - | - | (305) | - | - | - | - | - | - | - | - | - | - | (305) |
| | | | | | | | | | | | | | | |
| **Total Disbursements** | - | (12,120) | (305) | - | - | (16,425) | - | - | - | - | (16,165) | - | - | (45,015) |
| | | | | | | | | | | | | | | |
| **Operating Cash Flow** | - | 305 | (305) | - | - | - | - | - | - | - | 260 | - | - | 260 |
| | | | | | | | | | | | | | | |
| **Restructuring Costs** | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | (260) | (260) |
| | | | | | | | | | | | | | | |
| **Total Restructuring Costs** | - | - | - | - | - | - | - | - | - | - | - | - | (260) | (260) |
| | | | | | | | | | | | | | | |
| **Net Cash Flow** | - | 305 | (305) | - | - | - | - | - | - | - | 260 | - | (260) | (0) |

**Collateral Package Summary**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cumulative Net Cash Flow** | - | 305 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 260 | 260 | 0 | 0 |
| **Estimated Real Estate Value** | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 |
| **Estimated Total Collateral Value** | 7,000,000 | 7,000,305 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,260 | 7,000,260 | 7,000,000 | 7,000,000 |
| **Debt Balance** | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 |
| **Estimated Collateral in Excess of Debt** | 3,115,496 | 3,115,801 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,756 | 3,115,756 | 3,115,496 | 3,115,496 |

**Andrew & Julie Stupin Cash Collateral Budget**
**First Bank**
**309, 311, and 209 5th St**

| | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Cumulative | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | | | | | | | | | | | | | | | |
| Week Ending | 07/31/26 | 08/07/26 | 08/14/26 | 08/21/26 | 08/28/26 | 09/04/26 | 09/11/26 | 09/18/26 | 09/25/26 | 10/02/26 | 10/09/26 | 10/16/26 | 10/23/26 | Weeks 14-26 | Weeks 1-26 |
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Rental Property Income | $ - | $ 16,425 | $ - | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ - | $ 16,425 | $ - | $ - | $ 49,275 | $ 94,550 |
| **Total Cash Receipts** | - | 16,425 | - | - | - | - | 16,425 | - | - | - | 16,425 | - | - | 49,275 | 94,550 |
| | | | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | | | |
| Rental Mortgages | - | (14,412) | - | - | - | - | (14,412) | - | - | - | (13,969) | - | - | (42,794) | (81,706) |
| Rental Property Operating Expenses | - | (490) | - | - | - | - | (490) | - | - | - | (490) | - | - | (1,471) | (2,942) |
| Management Fees | - | (986) | - | - | - | - | (986) | - | - | - | (986) | - | - | (2,957) | (5,673) |
| Insurance | - | (384) | - | - | - | - | (384) | - | - | - | (384) | - | - | (1,153) | (2,307) |
| Utilities | - | (152) | - | - | - | - | (152) | - | - | - | (152) | - | - | (457) | (914) |
| Utility Deposits | - | - | - | - | - | - | - | | | | | | | - | (305) |
| **Total Disbursements** | - | (16,425) | - | - | - | - | (16,425) | - | - | - | (15,982) | - | - | (48,832) | (93,847) |
| | | | | | | | | | | | | | | | |
| **Operating Cash Flow** | - | - | - | - | - | - | - | - | - | - | 443 | - | - | 443 | 703 |
| | | | | | | | | | | | | | | | |
| **Restructuring Costs** | | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | (443) | (443) | (703) |
| **Total Restructuring Costs** | - | - | - | - | - | - | - | - | - | - | - | - | (443) | (443) | (703) |
| | | | | | | | | | | | | | | | |
| **Net Cash Flow** | - | - | - | - | - | - | - | - | - | - | 443 | - | (443) | (0) | - |

**Collateral Package Summary**

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cumulative Net Cash Flow** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 443 | 443 | 0 | 0 | 0 |
| **Estimated Real Estate Value** | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 |
| **Estimated Total Collateral Value** | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,000 | 7,000,443 | 7,000,443 | 7,000,000 | 7,000,000 | 7,000,000 |
| **Debt Balance** | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 | 3,884,504 |
| **Estimated Collateral in Excess of Debt** | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,496 | 3,115,940 | 3,115,940 | 3,115,496 | 3,115,496 | 3,115,496 |

# EXHIBIT "3"

DAVID B. GOLUBCHIK (State Bar No. 185520)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:   (310) 229-1244
Email: DBG@LNBYG.COM; CTP@LNBYG.COM

[Proposed] Attorneys for Chapter 11
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | ) Case No.: 8:26-bk-11202-SC |
| | ) |
| ANDREW STUPIN and JULIE STUPIN, | ) Chapter 11 Case |
| | ) Subchapter V |
| Debtors and Debtors in Possession. | ) |
| | ) **ORDER APPROVING STIPULATION AND AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE** |
| | ) |
| | ) **SECURED CREDITOR: FIRST BANK** |
| | ) |
| | ) Hearing on Regular Notice: |
| | ) Date:  August 26, 2026 |
| | ) Time:  1:30 p.m. |
| | ) Place:  Courtroom 5C |
| | )           411 West Fourth Street |
| | )           Santa Ana, CA 92701 |
| | ) |

1

On August 26, 2026, at 1:30 p.m., the Honorable Scott Clarkson, United States Bankruptcy Judge for the Central District of California (the "Court"), held a hearing (the "Hearing") in Courtroom 5C of the United States Bankruptcy Courthouse located at 411 West Fourth Street, Santa Ana, California, to consider the "*Notice of Motion and Motion for Order Approving Stipulation and Authorizing Use of Cash Collateral and Providing Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code*" (the "Motion") filed by Andrew Stupin and Julie Stupin (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, chapter 11 bankruptcy case, in relation to the cash collateral of secured creditor First Bank ("Secured Creditor"). Appearances were made as set forth on the Court's record of the hearing.

The Court, having read and considered the Motion and all papers in support of the Motion, including the declaration of Andrew Stupin (the "Declaration"), the statements of counsel made orally at the Hearing, the record in the case, the docket in the case, and for good cause appearing, therefor,

**HEREBY FINDS** that notice of the Motion and Hearing were good and proper under the circumstances and pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules, and

**HEREBY ORDERS AS FOLLOWS:**

(1)     The Motion is granted as set forth in this Order;

(2)     The Stipulation is approved;

(3)     The Debtors are authorized to use cash collateral to pay all of the expenses set forth in the Budget, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis; and

/ / /

/ / /

/ / /

/ / /

2

(4)    The stay of FRBP 6004 is waived.

**SO ORDERED.**

###

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled: **Notice Of Motion And Motion For Order Approving Stipulation And Authorizing Use Of Cash Collateral And Providing Adequate Protection Pursuant To Sections 361 And 363 Of The Bankruptcy Code; Memorandum Of Points And Authorities; Declaration Of Andrew Stupin In Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 5, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Scott R Albrecht    salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Kyra E Andrassy    kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- Raymond H. Aver    ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com;jesus@averlaw.com
- Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law
- John Bistritz    jack.bistritz@afslaw.com
- Michael E Bubman    mbubman@mbn.law, aacosta@mbnlawyers.com
- Greg P Campbell    ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Steven Casselberry    Steve.Casselberry@procopio.com, jessica.perez@procopio.com;emily.marsh@procopio.com;calendaringbankruptcy@procopio.com;evangelina.myers@procopio.com;lauren.hill@procopio.com
- David Coats    dacoats@raslg.com
- Marcus Colabianchi    mcolabianchi@duanemorris.com, marcus-colabianchi-2595@ecf.pacerpro.com
- Michael G D'Alba    mgd@lnbyg.com
- Dora Duru    dora.duru@bclplaw.com, verlisa.lewis@bclplaw.com,dora-duru-0321@ecf.pacerpro.com
- Amir Gamliel    amir.gamliel@ashurstperkins.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Craig S Ganz    ganzc@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Nichole Glowin    bankruptcy@zbslaw.com, nglowin@ecf.courtdrive.com
- David B Golubchik    dbg@lnbyg.com, dbg@lnbyg.com
- Arnold L Graff    agraff@wrightlegal.net, nvbkfiling@wrightlegal.net;jpowell@wrightlegal.net
- Adam M Greely    agreely@fbfk.law, dstolar@vrslaw.net
- Steven T Gubner
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Sarah Rose Hasselberger    shasselberger@marshackhays.com, shasselberger@ecf.courtdrive.com;cbastida@marshackhays.com;alinares@ecf.courtdrive.com
- Golsa Honarfar    ghonarfar@rutan.com, dmircheff@rutan.com
- Mark S Horoupian    mark.horoupian@gmlaw.com, mhoroupian@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;karen.files@gmlaw.com;courtmail@gmlaw.com
- Robert B. Kaplan    rkaplan@jeffer.com, rbk@ecf.courtdrive.com
- Ira David Kharasch    ikharasch@pszjlaw.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com;courtmail@gmlaw.com
- Marc A Lieberman    marc.lieberman@flpllp.com, addy@flpllp.com,ethan@flpllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**

- Aaron J Malo    amalo@sheppardmullin.com, hudenka@sheppard.com;mlinker@sheppard.com
- Sam Maralan    sm@maralanlaw.com
- Matthew J Marino    mmarino@allenmatkins.com, csandoval@allenmatkins.com
- Elissa Miller    elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;courtmail@gmlaw.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- John A Moe    john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
- Michael S Myers    myersm@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Carmela Pagay    ctp@lnbyg.com
- David M Poitras    dpoitras@bg.law
- Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Joseph M Rothberg    jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
- Joshua L Scheer    jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com
- Zev Shechtman    Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- Robyn B Sokol    robyn.sokol@stinson.com, lydia.moya@stinson.com;dennette.mulvaney@stinson.com;dbender@leechtishman.com;jnaiya.herd@stinson.com;michelle.hemer@stinson.com
- Michael G Spector    mgspector@aol.com, mgslawoffice@aol.com
- Martin W Taylor    marty.taylor@bclplaw.com, shawn.williams@bclplaw.com,marty-taylor-5681@ecf.pacerpro.com
- Jennifer R Tullius    jtullius@tulliuslaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Christopher A Ward    cward@lowenstein.com, lsuprum@lowenstein.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- David Wood    dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

**2. SERVED BY UNITED STATES MAIL**: On **August 5, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 5, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 5, 2026 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

Andrew & Julie Stupin - #11155 – Secured

Clearedge Lending
20 Enterprise, Suite 300
Aliso Viejo, CA 92656

Comerica Bank
1717 Main Street
Dallas, TX 75201

County of Orange
P.O. Box 1438
Santa Ana, CA 92702-1438

First Bank
Attn: Payment Processing
PO Box 790269
Saint Louis, MO 63179

First Bank
Attn: Payment Processing
PO Box 790269
Saint Louis, MO 63179

First Bank
Attn: Payment Processing
PO Box 790269
Saint Louis, MO 63179

First Choice Bank
17785 Center Court Drive, Suite 750
Cerritos, CA 90703

Rocket Mortgage
PO Box 6577
Carol Stream, IL 60197-6577

Secured Income Fund-II c/o
PLM Lender Services, Inc
5446 Thornwood Drive,2nd Floor
San Jose, CA 95123

The Evergeen Advantage
1424 4th Street, Suite 777
Santa Monica, CA 90401

VL Ventures LLC
1303 Avocado Av, Suite 200
Newport Beach, CA 92660