Marc A. Lieberman, Esq. (Bar No. 157318)
marc.lieberman@flpllp.com
Alan W. Forsley, Esq. (Bar No. 180958)
alan.forsley@flpllp.com
FLP LAW GROUP LLP
1875 Century Park East, Suite 2230
Los Angeles, California 90067
Telephone: (310) 284-7350
Facsimile: (310) 432-5999

Attorneys for Plaintiffs Tayler Carano and Natali Carano,
as Co-Trustees of The Carano Family Trust

**UNITED STATES BANKRUPTCY COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>ANDREW STUPIN and JULIE STUPIN,<br><br>Debtors. | Case No. **8:26-bk-11202-SC**<br><br>Chapter 11<br><br>Adv. Proc. No. 8:26-bk- |
| TAYLER CARANO and NATALI CARANO, as Co-Trustees of THE CARANO FAMILY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW STUPIN, an individual; and JULIE STUPIN, an individual,<br>Defendants | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND FOR MONEY JUDGMENT**<br><br>[11 U.S.C. §§ 523(a)(2)(A), (a)(4), (a)(6), (a)(19); 523(a) and 524(a)(3)] |

///

///

///

Plaintiffs Tayler Carano ("**Tayler**") and Natali Carano ("**Natali**") (collectively, "**Plaintiffs**"), Co-Trustees of The Carano Family Trust (the "**Trust**"), for their Complaint against Defendant Andrew Stupin ("**Andrew**") and Defendant Julie Stupin ("**Julie**") (together with Andrew, "**Defendants**"), allege as follows:[1]

## I.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. On April 17, 2026 (the "**Petition Date**"), Andrew and his spouse, Julie, filed a joint voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing the instant case (the "**Bankruptcy Case**").

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and General Order No. 13-05 of the United States District Court for the Central District of California, because this adversary proceeding arises under the Bankruptcy Code and arises in and relates to the Bankruptcy Case.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) as a proceeding to determine the dischargeability of a particular debt. This adversary proceeding is commenced pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and 11 U.S.C. § 523.

4. Pursuant to Bankruptcy Rule 7008 and Local Bankruptcy Rule 7008-1, Plaintiffs consent to the entry of final orders and judgment by the bankruptcy court in this adversary proceeding. This Court has the authority to liquidate the underlying debt and to enter a money judgment thereon in connection with its determination of nondischargeability. *Cohen v. de la Cruz,* 523 U.S. 213, 218-19 (1998); *Sasson v. Sokoloff* (*In re Sasson*), 424 F.3d 864, 869-70 (9th Cir. 2005).

///

[1] For clarity, husband-and-wife parties who share a last name are referred to by their first names. No disrespect is intended.

5. Venue is proper pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises under the Bankruptcy Code and arises in and relates to the Bankruptcy Case, which is pending in this district. This Complaint is timely. Pursuant to Bankruptcy Rule 4007(c) and the Notice of Chapter 11 Bankruptcy Case entered on the docket on April 22, 2026 [Doc 23], the deadline to file a complaint under 11 U.S.C. § 523(a)(2), (4), or (6) was extended, as to Plaintiffs, through September 15, 2026, by stipulation and order of this Court. Plaintiffs' claim under 11 U.S.C. § 523(a)(19) is not subject to the deadline of Bankruptcy Rule 4007(c) but is asserted herein in an abundance of caution. See 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(b).

## II.

## THE PARTIES

6. Plaintiffs at all relevant times have been the duly appointed and acting co-trustees of the Trust, and bring this action in their capacities as co-trustees on behalf of the Trust. Plaintiffs are creditors of Andrew within the meaning of 11 U.S.C. § 101(10).

7. Andrew is an individual and a debtor in the Bankruptcy Case. Plaintiffs are informed and believe, and thereon allege, that at all relevant times Defendants resided in and conducted business in Orange County, California, within this district.

8. Defendant Julie Stupin is an individual, a debtor in the Bankruptcy Case, and, on information and belief, was at all relevant times, and is, the spouse of Andrew. Julie is named as a defendant herein solely to obtain a determination, binding in the Bankruptcy Case, that the debt alleged herein is a community claim within the meaning of 11 U.S.C. § 101(7) that is excepted from any discharge entered in the Bankruptcy Case, including the community discharge arising under 11 U.S.C. § 524(a)(3), and to preserve Plaintiffs' right to enforce their claim against the community property of Defendants whenever acquired. Except as expressly alleged in the Fifth Claim for Relief, Plaintiffs do

///

not allege that Julie personally participated in the wrongful conduct alleged herein, and Plaintiffs do not seek recovery from the separate property of Julie.

9. Plaintiffs are informed and believe, and thereon allege, that at all relevant times Andrew was the founder, principal, control person, and/or authorized representative of Coastline Real Estate Investments, LLC ("**Coastline**"), through which Andrew solicited Plaintiffs and to which Plaintiffs' funds were wired, and that Andrew directed and controlled the receipt and disposition of those funds. The Investment was offered under the name Harbor Island Group LLC ("**Harbor Island**"), a Delaware limited liability company whose Managing Member of record is Forcing Rosser Manager LLC; Plaintiffs are informed and believe, and thereon allege, that Andrew controlled, was affiliated with, and/or acted in concert with Coastline and the persons managing Harbor Island in soliciting and accepting Plaintiffs' investment. Coastline and Harbor Island are referred to collectively as the "Entity Affiliates." Neither Coastline nor Harbor Island is a debtor in the Bankruptcy Case, and neither is named as a defendant herein.

## III.

## GENERAL ALLEGATIONS

### A. The Solicitation

10. In or around late 2021, Tayler was introduced to Andrew after Tayler's father-in-law had invested with Andrew, and that investment appeared, at that time, to be legitimate and successful.

11. Based on that introduction and Andrew's representations, Tayler requested further information regarding investment opportunities offered by Andrew. Andrew met with Tayler and provided him with information regarding a purported hotel and resort investment opportunity involving properties in Laguna Beach, California.

12. Andrew represented to Tayler that the investment involved the acquisition, ownership, improvement, remodeling, operation, and eventual sale or refinancing of a

///

portfolio of hotel and luxury coastal properties in or around Laguna Beach, California, identified as the "Hotel Laguna Resort Collection," also identified as doing business as Harbor Island Group, LLC (the "**Investment**").

13. Andrew provided Tayler with written promotional materials representing that the Hotel Laguna Resort Collection was purchasing four properties on Pacific Coast Highway in Laguna Beach at or near Hotel Laguna, consisting of: (1) a fifty-four-unit hotel; (2) eight oceanfront luxury condominiums; (3) eight additional oceanfront luxury condominiums; and (4) fourteen oceanfront luxury condominiums. Andrew further represented that the properties were currently rented and would be remodeled as vacancies occurred.

**B. Andrew's Representations**

14. Andrew represented to Tayler, orally and in the written promotional materials, among other things, that:

a. The Investment would generate a guaranteed return of fifteen percent (15%) per year, which would accrue immediately upon investment, with cash distributions to begin in 2023;

b. A $1,000,000 investment would return $150,000 annually, and a $2,000,000 investment would return $300,000 annually; projected sale proceeds would equal three times the investor's original investment, such that a $1,000,000 investment would return $3,000,000 and a $2,000,000 investment would return $6,000,000;

c. The investment group had purchased or was acquiring a substantial ownership interest in hotel and resort properties, including Hotel Laguna and related luxury coastal properties, as part of a larger portfolio of hotel, retail, commercial, and luxury properties in Laguna Beach and the surrounding coastal area;

///

d. Plaintiffs' funds would be used toward the purchase, remodeling, improvement, operation, and/or repositioning of the subject real estate portfolio;

e. Plaintiffs would receive returns within approximately six months to one year and, even before cash distributions began, would continue earning the promised return;

f. The Investment was safe, viable, profitable, and supported by the value and income potential of the Hotel Laguna and surrounding property portfolio; and

g. The Investment was an immediate and rare opportunity, and Andrew urged Plaintiffs to respond quickly so the parties could close the "incredible investment."

**C. <u>Andrew's Omissions and Concealment</u>**

15. At the time Andrew solicited Plaintiffs and accepted their investment in January 2023, Andrew concealed and failed to disclose to Plaintiffs material facts then existing, including:

a. That ownership and control of the Hotel Laguna portfolio were contested and subject to undisclosed disputes among the venture's principals;

b. That the assets underlying the Investment had been, or were being, encumbered by financing — including, on information and belief, a loan of approximately $20 million — that was disputed and improperly secured against the venture's assets;

c. That the venture and the Entity Affiliates were experiencing financial distress and instability that materially threatened the represented returns and the safety of Plaintiffs' principal;

d. That Andrew himself was embroiled in disputes concerning the very portfolio in which Plaintiffs were being solicited to invest; and

///

e. That Plaintiffs might not receive any meaningful ownership interest, documentation, updates, distributions, or proof that their funds were being used as represented.

**D. <u>Plaintiffs' Investment and Andrew's Retention of Plaintiffs' Funds</u>**

16. In reliance on Andrew's representations and omissions, Plaintiffs, as co-trustees of the Trust, invested $1,000,000. On or about January 27, 2023, Plaintiffs caused $1,000,000 to be wired from the Trust to Coastline for the Hotel Laguna Resort Collection investment. The wire documentation identifies the beneficiary as Coastline Real Estate Investments and references "Hotel Laguna Resort Collection" as the purpose of the transfer.

17. On or about January 27, 2023, Tayler executed documents in connection with the purported investment in Harbor Island. Andrew and/or the persons acting on behalf of the Entity Affiliates accepted the investment documents and acknowledged receipt of consideration.

18. Plaintiffs are informed and believe, and thereon allege, that Andrew accepted Plaintiffs' $1,000,000 while knowing that the Investment was not as represented, and while failing to disclose the material facts regarding contested ownership, the disputed encumbrance, financial distress, and the actual status of the purported investment.

19. After Plaintiffs invested, Andrew failed to provide the promised fifteen percent annual return; failed to provide the promised distributions beginning in 2023; failed to provide documentation showing that Plaintiffs' $1,000,000 was used for the purposes represented; failed to provide evidence that Plaintiffs received the ownership interest, return, security, or investment rights promised; and failed to provide meaningful updates, accounting, documentation, or proof that the Investment was legitimate and being operated as represented.

///

20. Approximately six months to one year after the Investment, Tayler contacted Andrew multiple times seeking information regarding the status of the Investment, the promised returns, and the status of Plaintiffs' funds. Andrew failed to provide adequate answers, documentation, or proof that the Investment was performing as represented; instead, Plaintiffs were led to believe that Andrew was still "figuring things out" and that Plaintiffs needed to continue waiting.

21. Plaintiffs later learned that, at the time of their investment, ownership and control of the portfolio were already contested and the venture was financially distressed, and that these conditions were not disclosed. The disputes became overt shortly after Plaintiffs invested: on information and belief, default notices removing the venture's operating principal issued in or about March 2023, a forcible takeover of Hotel Laguna occurred on or about May 2, 2023, and a temporary restraining order issued on or about May 5, 2023. Plaintiffs are informed and believe, and thereon allege, that the conditions giving rise to these events existed at the time of the January 2023 solicitation, were known to Andrew, and were concealed from Plaintiffs.

22. Plaintiffs would not have invested $1,000,000 had Andrew truthfully disclosed the contested ownership and control of the portfolio, the disputed encumbrance on the venture's assets, the financial instability of the entities involved, the absence of a reasonable basis for the promised guaranteed and three-times returns, or the risk that Plaintiffs might never receive meaningful distributions, ownership documentation, or proof that their funds were being used as represented.

23. Andrew has failed and refused to return Plaintiffs' funds, to pay the promised return, or to provide the promised distributions, documentation, accounting, or ownership confirmation. Plaintiffs are informed and believe, and thereon allege, that Andrew has retained, diverted, and/or misappropriated Plaintiffs' money without providing the promised consideration, return, or investment benefit.

///

**E. The Undisclosed Condition of the Portfolio and the Related Fraud Finding Against Andrew**

24. Plaintiffs are informed and believe, and thereon allege, that the Hotel Laguna Resort Collection was owned and controlled through a joint venture whose assets, financing, and management were, at the time of the January 2023 solicitation, already the subject of undisclosed disputes among its principals, and that the venture's assets had been encumbered by an improperly secured loan of approximately $20 million.

25. Plaintiffs are further informed and believe, and thereon allege, that in a private arbitration concerning that joint venture, an arbitrator issued a partial interim award dated on or about February 21, 2025, finding Andrew Stupin liable for fraudulent inducement in connection with the venture involving Hotel Laguna and the related coastal portfolio — the same properties and portfolio that Andrew represented to Plaintiffs the investment group had purchased or was acquiring.

26. These facts confirm that Andrew's representations concerning the acquisition, ownership, safety, and profitability of the portfolio were materially false when made, that Andrew concealed the true condition of the portfolio, and that Andrew had no reasonable basis for the guaranteed and projected returns he promised.

**F. The Investment Was a Security**

27. The Investment was marketed as a real estate investment involving membership interests, ownership interests, profits, returns, and distributions from a pooled real estate portfolio. Plaintiffs invested money in a common enterprise with the expectation of profits to be derived primarily from the efforts of Andrew, the Entity Affiliates, and/or third parties. Plaintiffs did not have control over the management, operation, remodeling, acquisition, disposition, leasing, refinancing, or sale of the subject real estate portfolio, and Plaintiffs' expected return depended entirely upon Andrew's management, control, representations, and performance.

///

28. The Investment accordingly constituted a "security" within the meaning of California Corporations Code § 25019 and Section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77b(a)(1), including without limitation an investment contract, membership interest, and/or profit-sharing arrangement. See SEC v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946); Silver Hills Country Club v. Sobieski, 55 Cal. 2d 811, 815 (1961). The Harbor Island operating documents further reflect that the membership interests are restricted securities under the Securities Act of 1933.

29. Plaintiffs are informed and believe, and thereon allege, that the Investment was not qualified, registered, or otherwise authorized for offer or sale in California as required by California Corporations Code § 25110, that no exemption from qualification applied, and that Andrew failed to provide complete and accurate disclosures required in connection with the offer and sale of the Investment.

**G. <u>Andrew's Control of, and Direct Participation in the Conduct of, the Entity Affiliates</u>**

30. Plaintiffs are informed and believe, and thereon allege, that Coastline is, and at all relevant times was, the alter ego of Andrew; that there exists such a unity of interest and ownership between Andrew and Coastline that any separateness between them has ceased to exist; that Coastline was inadequately capitalized, failed to observe company formalities, and was operated as a mere instrumentality and conduit for Andrew; that Coastline received and Andrew directed the diversion of investor funds, including Plaintiffs' funds, to Andrew and/or for Andrew's personal use and benefit; and that adherence to the fiction of the separate existence of Coastline would sanction fraud and promote injustice.

31. In addition, and independent of any alter ego liability, Andrew personally made the representations and omissions alleged herein and personally solicited, authorized, directed, participated in, and/or ratified the wrongful conduct alleged herein. Under California law, a corporate or company agent is personally liable for torts in which he

///

personally participates, authorizes, directs, or ratifies, regardless of the entity form. *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 503-04 (1986); *Michaelis v. Benavides*, 61 Cal. App. 4th 681, 685-87 (1998). The debt owed to Plaintiffs is accordingly a personal debt of Andrew within the meaning of 11 U.S.C. §§ 101(12) and 523(a).

**IV.**

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(Against Defendant Andrew Stupin)**

**(Determination of Nondischargeability of Debt — 11 U.S.C. § 523(a)(2)(A) — False Pretenses, False Representations, and Actual Fraud)**

32. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

33. Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). A creditor must establish: (1) a misrepresentation, fraudulent omission, or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor; and (5) damage proximately caused by the reliance. Turtle Rock Meadows Homeowners *Ass'n v. Slyman* (*In re Slyman*), 234 F.3d 1081, 1085 (9th Cir. 2000); see *Field v. Mans*, 516 U.S. 59, 74-75 (1995); *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359-60 (2016).

34. As alleged above, Andrew obtained $1,000,000 of Plaintiffs' money by false pretenses, false representations, and actual fraud, including Andrew's representations that the Investment would generate a guaranteed fifteen percent annual return accruing immediately, that distributions would begin in 2023, that projected sale proceeds would equal three times Plaintiffs' investment, that the investment group had purchased or was acquiring the represented portfolio, that Plaintiffs' funds would be used for the purchase,

///

improvement, and operation of the portfolio, and that the Investment was safe, viable, and profitable.

35. Those representations were false when made. As alleged above, ownership and control of the portfolio were contested, the venture's assets were subject to a disputed encumbrance, and Andrew himself was later found liable for fraudulent inducement in connection with the same portfolio. Andrew's concealment of those facts rendered his affirmative representations materially misleading. Andrew, who had superior and exclusive knowledge of the true condition of the portfolio, had a duty not to convey a false or misleading impression while withholding those material facts.

36. Andrew knew the representations were false, or made them with reckless disregard for their truth, and made them, and concealed the material facts alleged above, with the intent to deceive Plaintiffs and to induce Plaintiffs to invest. A promise made without any intention of performing it, and representations of guaranteed returns made without any reasonable basis, each constitute actionable fraud. At the time Andrew made the representations, he had no intention of performing as promised, or made the representations without any reasonable basis for believing that he or the Entity Affiliates could or would perform.

37. Plaintiffs justifiably relied upon Andrew's representations and omissions in wiring $1,000,000 on or about January 27, 2023. Plaintiffs' reliance was justifiable in light of, among other things, the apparent success of the prior investment made by Tayler's father-in-law, the detailed written promotional materials furnished by Andrew, and Andrew's superior and exclusive knowledge of the undisclosed facts.

38. As a direct and proximate result of Andrew's false pretenses, false representations, and actual fraud, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $1,000,000, plus the promised returns, prejudgment interest, and all other damages recoverable by law. The entirety of the debt arising from Andrew's fraud, including any punitive or exemplary damages and attorneys' fees awarded thereon, is nondischargeable. *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).

39. By reason of the foregoing, Plaintiffs are entitled to a judgment: (a) liquidating Andrew's debt to Plaintiffs in an amount not less than $1,000,000, plus interest, punitive damages, and costs; and (b) determining that such debt is excepted from any discharge entered in favor of Andrew pursuant to 11 U.S.C. § 523(a)(2)(A).

**SECOND CLAIM FOR RELIEF**

**(Against Defendant Andrew Stupin)**

**(Determination of Nondischargeability of Debt — 11 U.S.C. § 523(a)(4) — Embezzlement)**

40. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

41. Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Embezzlement under § 523(a)(4) requires no fiduciary relationship. It requires (1) property rightfully in the possession of a nonowner; (2) the nonowner's appropriation of the property to a use other than that for which it was entrusted; and (3) circumstances indicating fraud. Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir. 1991).

42. Plaintiffs entrusted $1,000,000 to Andrew and Coastline for the specific and exclusive purpose of funding the acquisition, remodeling, improvement, operation, and/or repositioning of the Hotel Laguna Resort Collection portfolio, as represented by Andrew. Plaintiffs are informed and believe, and thereon allege, that Andrew — who controlled Coastline and directed the receipt and disposition of the funds — appropriated Plaintiffs' funds to uses other than those for which the funds were entrusted, including diverting and funneling Plaintiffs' funds to himself and/or for his personal use and benefit, under circumstances indicating fraud, including the false representations, concealment, refusal to account, and refusal to return the funds alleged above.

///

43. As a direct and proximate result of Andrew's embezzlement, Plaintiffs have been damaged in an amount to be proven at trial, but not less than $1,000,000, plus interest, and such debt is excepted from any discharge entered in favor of Andrew pursuant to 11 U.S.C. § 523(a)(4).

**THIRD CLAIM FOR RELIEF**

**(Against Defendant Andrew Stupin)**

**(Determination of Nondischargeability of Debt — 11 U.S.C. § 523(a)(6) — Willful and Malicious Injury)**

44. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

45. Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). An injury is "willful" when the debtor harbors a subjective intent to harm, or a subjective belief that harm is substantially certain to result from his conduct. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998); *Carrillo v. Su* (*In re Su*), 290 F.3d 1140, 1142-43 (9th Cir. 2002). An injury is "malicious" when it involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *In re Su*, 290 F.3d at 1146-47; *Ormsby v. First Am. Title Co. of Nev.* (*In re Ormsby*), 591 F.3d 1199, 1207 (9th Cir. 2010).

46. Andrew's conduct in fraudulently soliciting, obtaining, retaining, diverting, and converting Plaintiffs' $1,000,000, while concealing material facts and refusing to account for or return Plaintiffs' funds, was wrongful, intentional, necessarily injurious to Plaintiffs and Plaintiffs' property, and done without just cause or excuse. Andrew subjectively intended to injure Plaintiffs or subjectively believed that injury to Plaintiffs was substantially certain to result from his conduct.

47. As a direct and proximate result of Andrew's willful and malicious conduct, Plaintiffs have been damaged in an amount to be proven at trial, but not less than

$1,000,000, plus interest, and such debt is excepted from any discharge entered in favor of Andrew pursuant to 11 U.S.C. § 523(a)(6).

**FOURTH CLAIM FOR RELIEF**

**(Against Defendant Andrew Stupin)**

**(Determination of Nondischargeability of Debt — 11 U.S.C. § 523(a)(19) — Violation of State Securities Laws and Fraud in Connection With the Sale of a Security)**

48. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

49. Section 523(a)(19) of the Bankruptcy Code excepts from discharge any debt that (A) is for (i) the violation of any federal or state securities laws, or (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security, and (B) results, before, on, or after the date on which the petition was filed, from any judgment, order, consent order, or decree entered in any federal or state judicial or administrative proceeding, any settlement agreement entered into by the debtor, or any court or administrative order for damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor. 11 U.S.C. § 523(a)(19). Because § 523(a)(19)(B) is satisfied by a judgment entered "before, on, or after" the petition date, the requisite judgment may be entered by this Court in this adversary proceeding or by another court of competent jurisdiction.

50. Andrew personally offered, sold, and materially participated in the offer and sale of the security to Plaintiffs, and personally made the untrue statements of material fact and material omissions alleged herein. Andrew is therefore a person responsible for the securities-law violations and securities fraud alleged herein. The February 21, 2025 arbitration finding of fraudulent inducement against Andrew concerning the same portfolio further confirms his personal responsibility.

///

51. The offer and sale of the security violated California Corporations Code § 25110 because the security was not qualified for sale in California and no exemption from qualification applied, rendering Andrew liable to Plaintiffs under California Corporations Code § 25503, including as a materially aiding participant and control person under California Corporations Code § 25504.

52. In connection with the offer and sale of the security, Andrew made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of California Corporations Code § 25401, rendering Andrew liable to Plaintiffs under California Corporations Code §§ 25501 and 25504.1. Andrew's conduct further constituted common law fraud, deceit, and manipulation in connection with the purchase and sale of a security within the meaning of 11 U.S.C. § 523(a)(19)(A)(ii) and California Civil Code §§ 1709 and 1710.

53. Plaintiffs are entitled to rescission and/or damages under California Corporations Code §§ 25501 and 25503, including recovery of the $1,000,000 consideration paid, together with interest thereon at the legal rate from January 27, 2023, less the amount of any income received on the security (of which there was none), plus attorneys' fees and costs as permitted by law.

54. By reason of the foregoing, Plaintiffs are entitled to a judgment: (a) determining that Andrew is liable to Plaintiffs for violations of the California Corporations Code and for common law fraud in connection with the purchase and sale of a security; (b) liquidating such debt in an amount not less than $1,000,000, plus interest, attorneys' fees, and costs; and (c) determining that such debt, together with any judgment entered thereon in this or any other proceeding, is excepted from any discharge entered in favor of Andrew pursuant to 11 U.S.C. § 523(a)(19).

///

///

**FIFTH CLAIM FOR RELIEF**

**(Against Defendants Andrew Stupin and Julie Stupin)**

**(Determination That Debt Is a Community Claim Excepted from the Community Discharge — 11 U.S.C. §§ 101(7), 523(a), and 524(a)(3))**

55. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

56. Plaintiffs are informed and believe, and thereon allege, that Andrew and Julie were married to each other at all times relevant hereto, including on January 27, 2023, when Andrew incurred the debt to Plaintiffs alleged herein, and on the Petition Date.

57. Under California law, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt. Cal. Fam. Code § 910(a). The debt owed by Andrew to Plaintiffs is accordingly a "community claim" within the meaning of 11 U.S.C. § 101(7), for which property of the kind specified in 11 U.S.C. § 541(a)(2) is liable.

58. Section 524(a)(3) of the Bankruptcy Code provides that a discharge operates as an injunction against the commencement or continuation of an action to collect from community property acquired after the commencement of the case on account of any community claim, "except a community claim that is excepted from discharge under section 523 . . . in a case concerning the debtor's spouse commenced within six years of the date of the filing of the petition." 11 U.S.C. § 524(a)(3). Absent a determination of nondischargeability with respect to each spouse, the discharge of either spouse in a joint case would shield after-acquired community property from collection of the community claim. See *In re Soderling*, 998 F.2d 730, 733-34 (9th Cir. 1993); *Rooz v. Kimmel* (*In re Kimmel*), 378 B.R. 630, 636-37 (B.A.P. 9th Cir. 2007), aff'd, 302 F. App'x 518 (9th Cir. 2008).

///

59. For the reasons alleged in the First through Fourth Claims for Relief, the community claim held by Plaintiffs is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6), and/or 523(a)(19) by reason of the conduct of Andrew. The debt is therefore excepted from discharge in the case concerning Andrew and, for purposes of 11 U.S.C. § 524(a)(3), would be excepted from discharge under 11 U.S.C. § 523 in the case concerning Julie, Andrew's spouse, which was commenced jointly with, and within six years of, Andrew's petition.

60. Plaintiffs are accordingly entitled to a judgment against Andrew and Julie determining that Plaintiffs' claim is a community claim that is excepted from any discharge entered in the Bankruptcy Case, including the community discharge otherwise arising under 11 U.S.C. § 524(a)(3), such that Plaintiffs may enforce their claim and any judgment entered hereon against all community property of Defendants, whenever acquired, in addition to the separate property of Andrew.

## V.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Tayler Carano and Natali Carano, as Co-Trustees of The Carano Family Trust, pray for judgment against Defendants Andrew Stupin and Julie Stupin as follows:

a. On the First Claim for Relief, for a judgment determining that Defendant Andrew Stupin is indebted to Plaintiffs in an amount to be proven at trial, but not less than $1,000,000, plus prejudgment interest, and that such debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

b. On the Second Claim for Relief, for a judgment determining that Defendant Andrew Stupin is indebted to Plaintiffs in an amount to be proven at trial, but not less than $1,000,000, plus prejudgment interest, and that such debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) (embezzlement);

///

c. On the Third Claim for Relief, for a judgment determining that Defendant Andrew Stupin is indebted to Plaintiffs in an amount to be proven at trial, but not less than $1,000,000, plus prejudgment interest, and that such debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6);

d. On the Fourth Claim for Relief, for a judgment determining that Defendant Andrew Stupin is liable to Plaintiffs under California Corporations Code §§ 25401, 25501, 25503, 25504, and 25504.1 and for common law fraud in connection with the purchase and sale of a security; for rescission and/or damages in an amount not less than $1,000,000, plus interest at the legal rate from January 27, 2023; and for a determination that such debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(19);

e. On the Fifth Claim for Relief, for a judgment against Defendants Andrew Stupin and Julie Stupin determining that Plaintiffs' claim is a community claim within the meaning of 11 U.S.C. § 101(7) that is excepted from any discharge entered in the Bankruptcy Case, including the community discharge otherwise arising under 11 U.S.C. § 524(a)(3), and that Plaintiffs may enforce their claim and any judgment entered hereon against all community property of Defendants, whenever acquired, in addition to the separate property of Defendant Andrew Stupin;

f. For entry of a money judgment against Defendant Andrew Stupin liquidating the nondischargeable debt in an amount to be proven at trial, but not less than $1,000,000, plus prejudgment and post-judgment interest at the maximum legal rate;

g. For punitive and exemplary damages pursuant to California Civil Code § 3294 in an amount sufficient to punish Defendant Andrew Stupin and deter similar misconduct, which damages are likewise nondischargeable (*Cohen v. de la Cruz*, 523 U.S. 213 (1998));

///

h. For attorneys' fees as permitted by contract, statute (including the California Corporations Code), or other applicable law;

i. For costs of suit incurred herein; and

j. For such other and further relief as the Court deems just and proper.

DATED: September 15, 2026

**FLP LAW GROUP LLP**

By:____________________________

Marc A. Lieberman, Esq.
Alan W. Forsley, Esq.
Attorneys for Plaintiffs Tayler Carano and Natali Carano, as Co-Trustees of The Carano Family Trust