DAVID B. GOLUBCHIK (State Bar No. 185520)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.COM; CTP@LNBYG.COM

Attorneys for Chapter 11
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>ANDREW STUPIN and JULIE STUPIN,<br><br>Debtors and Debtors in Possession. | Case No.: 8:26-bk-11202-SC<br><br>Chapter 11 Case<br>Subchapter V<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING STIPULATION AND AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ANDREW STUPIN IN SUPPORT**<br><br>**SECURED CREDITOR: SECURED INCOME FUND**<br><br><u>Hearing on Regular Notice</u>:<br>Date: October 28, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** .......... 7

**I. STATEMENT OF FACTS** .......... 7

**A. General Background** .......... 7

**B. Events Leading to the Debtors' Bankruptcy Filing** .......... 7

**C. Secured Creditor and Cash Collateral** .......... 10

**II. COMPLIANCE WITH FRBP 4001(c) & LBR 4001-2** .......... 11

**III. DISCUSSION** .......... 13

**A. The Debtors Must Be Authorized to Use Cash Collateral to Operate, Maintain and Preserve the Property and Estate in Accordance with the Budget** .......... 13

**B. Secured Creditor Is Adequately Protected** .......... 15

**C. Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2.** .......... 17

**IV. CONCLUSION** .......... 19

**DECLARATION OF ANDREW STUPIN** .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

In re Dynaco Corporation,
162 B.R. 389 (Bankr.D.N.H.1993) ....................14, 16

In re Immenhausen Corp.,
164 B.R. 347 (Bankr.M.D.Fla.1994) ....................17

In re Jug End in the Berkshires, Inc.,
46 B.R. 892 (Bankr.D.Mass.1985) ....................15

Louisville Joint Stock Land Lender v. Radford,
295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) ....................15

In re McCombs Properties VI, Ltd.,
88 B.R. 261 ....................15, 16

In re Mellor,
734 F.2d 1396 (9th Cir.1984) ....................15

In re Newark Airport/Hotel Ltd. Partnership,
156 B.R. 444 (Bankr.D.N.J.1993) ....................16

In re O'Connor,
808 F.2d 1393 (10th Cir.1987) ....................15, 17

In re Oak Glen R-Vee,
8 B.R. 213 (Bankr.C.D.Cal.1981) ....................14

Matter of Pursuit Athletic Footwear, Inc.,
193 B.R. 713 (Bankr.D.Del.1996) ....................16

In re Stein,
19 B.R. 458. (Bankr.E.D.Pa.1982) ....................16

In re Triplett,
87 B.R. 25 (Bankr.W.D.Tex.1988) ....................16

In re Tucson Industrial Partners,
129 B.R. 614 (9th Cir.B.A.P.1991) ....................14

United Savings Association v. Timbers of Inwood Forest Associates,
108 S.Ct. 626 (1988) .......... 15, 16

In re Winslow Center Associates,
32 B.R. 685 (Bankr. E.D. Pa. 1983) .......... 15

Wright v. Union Central Life Ins. Co.,
311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940) .......... 15, 16

*Wright v. Union Central Life Ins. Co.*,
311 U.S. 278 .......... 16

**Federal Statutes**

11 U.S.C.
§ 361 .......... 2, 10
§ 363(a) .......... 2, 13, 14, 15
§ 506(a) .......... 16
§ 506(c) .......... 5, 13, 19, 28

28 U.S.C.
§ 157 .......... 13
§ 1334 .......... 13
§ 1408 .......... 13
§ 1409 .......... 13

**Other Authorities**

Fifth Amendment .......... 15

**PLEASE TAKE NOTICE** that at the above-captioned date, time, and location, the Honorable Scott C. Clarkson, United States Chief Bankruptcy Judge for the Central District of California (the "Court"), will hold a hearing (the "Hearing") to consider the "Notice of Motion and Motion for Order Approving Stipulation and Authorizing Use of Cash Collateral and Providing Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code" (the "Motion") filed by Andrew Stupin and Julie Stupin (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, chapter 11 bankruptcy case, in relation to the cash collateral of secured creditor Secured Income Fund ("Secured Creditor").

The Motion is made pursuant to Rules 4001-2 and 9013-1 of the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California* (the "Local Rules"), 11 U.S.C. §§ 361 and 363(c) and Rules 4001 and 9014 of the *Federal Rules of Bankruptcy Procedure* (the "Bankruptcy Rules"). The bases of the Motion include this Notice, the Motion, the memorandum of points and authorities and declaration of Andrew Stupin (the "Declaration") annexed to the Motion, the stipulation (the "Stipulation") attached to the Declaration, the record in this case, the docket in this case, all matters of which the Court may properly take judicial notice, and the oral arguments and statements of counsel for the Debtor to be made at the Hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion seeks Court approval of the Stipulation and authority for the Debtors to use the cash collateral of Secured Creditor in accordance with the Stipulation annexed as **Exhibit 1** and the budget (the "Budget") annexed as **Exhibit 2** to the Declaration, and entry of an order in substantially the form as attached as **Exhibit 3** to the Declaration.

The Debtors commenced their bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on April 17, 2026, (the "Petition Date"). The Debtors continue to manage their financial affairs, operate their businesses, and administer their bankruptcy estate as debtors in possession. The Debtors are individuals who own in their own

personal names several residential and commercial rental properties generally described as 211, 213, 215, 217, 219, 221, 223, 225, 227, 301, and 305 5th Street, Huntington Beach, CA 92648-5117 (collectively, the "Rental Properties") that generate rental income that is the collateral and cash collateral of Secured Income Fund ("Secured Creditor"). In order to maintain and operate the Rental Properties and continue to provide further rental income to the estate, the Debtors require the use of cash collateral.

Pursuant to the Motion, the Debtors seek Court authority to use cash collateral in order to pay the expenses of maintaining and operating the Rental Properties, as set forth in the Budget. The Budget reflects the Debtor's ordinary and necessary operating expenses that must be paid post-petition to preserve the Rental Properties and to keep the mortgage debt service current, which will inure to the benefit of the entire estate by preventing the accrual of unpaid interest, late fees, default fees, and attorneys' fees and costs that could be added if the loans become delinquent. While the Budget represents the Debtors' best estimates of such expenses, the needs of Rental Properties may fluctuate. Thus, the Debtors seek authority to deviate from the total expenses contained in the Budget by no more than 15%, on a cumulative basis, and to deviate by category (provided the Debtors does not pay expenses outside any of the categories) without the need for further Court order.

The Debtors submit that the Debtors' Secured Creditor is adequately protected in multiple respects. The Secured Creditor is protected by the ongoing maintenance, operations, and rental of the Rental Properties. The Secured Creditor is protected by substantial equity cushions. The Debtors are proposing to pay monthly net rent payments to the Secured Creditor as further adequate protection.

If the Debtors are not permitted to use their cash collateral to maintain and operate their Rental Properties, then they will fall into disrepair, post-petition interest, late fees, default interest, and expenses will accrue value for the estate will be lost, and the estate will be harmed.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in detail in the accompanying Memorandum of Points and Authorities, the proposed use of cash collateral and the post-

petition financing do not include any of the provisions set forth in Bankruptcy Rule 4001(c)(1)(B)(i) – (xi) or Local Bankruptcy Rule 4001-2(b) except as set forth in the table below:

| **Provision** | **Cash Coll.** |
|---|---|
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No, though Secured Creditor can move for relief from stay upon default on shortened notice under certain circumstances. *See*, §11. |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No, though recording is not required for perfection of replacement lien. *See*, §8. |

| **Provision** | **Cash Coll.** |
|---|---|
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, applied first to interest, then to principal. §5. |
| Findings of fact on matters extraneous to the approval process. | No |

The Debtors have served notice of the Motion on the United States Trustee, secured creditors or their counsel, the Official Committee of Unsecured Creditors, and parties requesting special notice.

A copy of the proposed order granting the Motion is attached as **Exhibit 3** hereto.

**WHEREFORE,** the Debtors respectfully request that this Court enter an order:

(1) affirming the adequacy of the Notice given herein;

(2) granting the Motion on a final basis;

(3) entering an order substantially in the form of the proposed order attached as **Exhibit 3** hereto;

(4) approving the Stipulation attached as **Exhibit 1** hereto;

(5) authorizing the Debtors to use cash collateral to pay all of the expenses set forth in the Budget attached as **Exhibit 2** hereto, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis;

(6) requiring the Debtors to provide monthly budget-to-actual variance reports to the Secured Creditor and Official Committee of Unsecured Creditors (the "Committee") on the 21st day of the month covering the previous month-ending period;

(7) requiring the extension of the Stipulation will be subject to notice to the Committee with an opportunity to object;

(8) requiring adequate protection payments under the Stipulation to be applied first to interest, then to principal;

(9) waiving the stay of FRBP 6004; and

(10) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: October 7, 2026 Levene, Neale, Bender, Yoo & Golubchik L.L.P.

By: ___*/s/ John-Patrick M. Fritz*_____
DAVID GOLUBCHIK
JOHN-PATRICK M. FRITZ
CARMELA T. PAGAY
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. STATEMENT OF FACTS

### A. General Background

1. Andrew Stupin ("Andrew") and Julie Stupin ("Julie") (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession herein, commenced their bankruptcy cases by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on April 17, 2026, (the "Petition Date").

2. The Debtors continue to manage their financial affairs, operate their businesses, and administer their bankruptcy estate as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### B. Events Leading to the Debtors' Bankruptcy Filing

3. Andrew is a real estate investor. Codebtor Julie is Andrew's wife.

4. Andrew was born in 1947 in San Gabriel, California, and shortly thereafter moved to Monterey Park, where he excelled in school and sports. Wanting to be a professional baseball player, Andrew excelled at his endeavors through high school and college where an injury forced him to change his future plans and aspirations.

5. Although Andrew's initial aspirations after sports were to become an attorney, his interests turned to teaching, so he pursued and obtained a secondary teaching credential after his B.A. Degree, including teaching Sunday School at his family church where he grew up.

6. Andrew obtained a teaching position in the highly acclaimed Huntington Beach High School District at Edison High School right after receiving his teaching credential. Although challenging, Andrew enjoyed his new career, including being voted "Teacher of the Year" several times. In fact, Andrew helped start the Advanced Placement (AP) for Government in Orange County, where a student can take an AP class and take the national AP test to gain college credits while in high school. This program was very successful and has gained popularity over the years throughout the country.

7. In the 1970's, Andrew started his journey in real estate. After saving money from his teaching career, Andrew bought his first investment for $28,000 – two (2) separate houses on two (2) lots. That was in 1972 and prices were starting to increase rapidly in the "Great Orange County" boom. Andrew lived in one house and rented out the other. The rent from the rental was more than the mortgage. It was then that Andrew caught the real estate bug and thought this to be something to move forward on.

8. Over the decades, Andrew invested in many properties not only throughout Orange County, but California and other states. Andrew always focused on value added and income generating properties. Over time, many friends and others asked to invest alongside Andrew in such investments. His success continued to grow.

9. Approximately 10 years ago, Andrew (and his friend and co-investor Gerald Marcil) were approached by a third party (Mahender Makhijani) who represented that he had connections with many lenders to acquire distressed loans and real estate. He proposed to work together to acquire loans and properties.

10. Through the parties' relationship, Mr. Makhijani maintained all relationships with lenders and financing sources and managed the investments. Mr. Makhijani's staff at Continuum provided all accounting and documentation and financing with respect to such investments.

11. In the last several years, Mr. Makhijani obtained numerous warehouse loans from lenders including, without limitation, approximately $98 million from Western Alliance Bank, and approximately $60 million from Zions Bank. Mr. Makhijani represented to the lenders that the purpose of the loans was to refinance existing properties and acquire new properties. The lenders assert that Andrew and Mr. Marcil signed guaranties for such debts.

12. In the fall of 2025, Andrew learned that the foregoing banks have sued him on account of the alleged guaranties based on the follows:

a. Mr. Makhijani drew down on the entirety of the warehouse loans;

b. Mr. Makhijani did not use the proceeds of the warehouse loans to refinance the existing debt or to acquire new assets for the borrowers;

c. There is no information where the loan proceeds went or how they were utilized;

d. The lenders did not conduct title searches on any of the alleged properties to be refinanced;

e. The lenders did not request or receive reconveyances of alleged liens that were to be refinanced;

f. The lenders did not open escrows for any of the financing; and

g. The lenders did not conduct any due diligence while Mr. Makhijani withdrew almost $200 million without oversight, supervision or control.

13. In addition to the foregoing, Andrew learned that Mr. Makhijani recorded fraudulent liens on Debtors' personal properties (held through wholly-owned LLC's) and pledged the fraudulent loans to Western Alliance Bank.

14. The foregoing conduct resulted in protracted litigation. It is important to point out that none of the collection lawsuits from the lenders have asserted that Andrew engaged in any wrongful conduct. They simply assert that Andrew is obligated for their self-inflicted losses through the alleged guaranty.

15. Approximately 90 days prior to the Petition Date, Zions Bank obtained a writ of attachment as to Debtors' assets. The timing of this case was intended to terminate the writ of attachment and preserve all assets for the benefit of all creditors.

16. Through this case, the Debtors intend to preserve and operate their assets while prosecuting claims against lenders and third parties for the damage caused to the Debtors and their assets. Pending the resolution of such actions, the Debtors intend to comply with their obligations as debtors in possession

17. Accordingly, the Debtors determined in their reasonable business judgment that it was in the best interest of their estate to file this current bankruptcy case.

**C. Secured Creditor and Cash Collateral**

18. The Debtors are individuals who own in their own personal names several residential and commercial rental properties generally described as 211, 213, 215, 217, 219, 221, 223, 225, 227, 301, and 305 5th Street, Huntington Beach, CA 92648-5117 (collectively, the "Rental Properties") that generate rental income that is the collateral and cash collateral of Secured Income Fund ("Secured Creditor").

19. In order to maintain and operate the Rental Properties and continue to provide further rental income to the estate, the Debtors require the use of cash collateral.

20. Prepetition, the Debtors entered into loan agreements with Secured Creditor.

21. Secured Creditor is the current payee of a Promissory Note dated May 28, 2025, in the principal amount of $12,000,000.00 (the "Note") secured by a Deed of Trust of same date, which bears interest as specified therein. Monthly interest only installments are due each month on the first of the month in the amount of $109,900.00, and the loan is full due and payable on June 1, 2028. The indebtedness evidenced by the Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") executed and recorded in Orange County as document number 2025000154496 and which encumbers the real property generally described 211, 213, 215, 217, 219, 221, 223, 225, 227, 301, and 305 5th Street, Huntington Beach, CA 92648-5117 (the "Rental Properties") and legally described in Exhibit "A" to the Deed of Trust. The Properties consist of residential, commercial, and mixed-use buildings. True and correct copies of the Note and Deed of Trust are attached to the Stipulation as Exhibits "A" and "B", respectively, and incorporated herein by reference.

22. The rent generated from the Rental Properties constitutes the cash collateral ("Cash Collateral") of Secured Creditor, pursuant to 11 U.S.C. §§ 361, 362, 363(a), (c)(2), and (e).

23. The Debtors and Secured Creditor has stipulated to the use of cash collateral and providing of adequate protection as set forth in the Stipulation.

24. Subject to the terms and conditions of the Stipulation, the Parties agree that the Debtors are authorized to use Cash Collateral for the ordinary and necessary expenses (the "Expenses") set forth in the cash flow projections (the "Budget") attached as **Exhibit 2** hereto.

25. The Debtors shall remit adequate protection payments to Secured Creditor in the amount of net rents ("Net Rents") calculated as the gross rents actually collected, minus the Expenses actually paid, with such adequate protection payments to Secured Creditor paid no later than the 15th of each month. The first payment shall be made by no later than seven business days after the entry of an order (the "Order Date") approving the Stipulation, and shall include all the Net Rents from the Petition Date to the end of the month preceding the date of the entry of the Order.

26. The Debtors' use of Cash Collateral may be renewed upon subsequent stipulation with the Secured Creditor or by order of this Court.

27. As adequate protection, Secured Creditor shall receive a replacement lien (the "Replacement Lien") on all post-petition revenue generated from the Rental Properties to the same extent, priority, and validity that Secured Creditor's lien attached to the Cash Collateral. The Replacement Lien is valid, perfected, and enforceable and shall not be subject to dispute, avoidance, or subordination, and this Replacement Lien need not be subject to additional recording. The Secured Creditor is authorized to file a certified copy of any cash collateral order and any other necessary and related documents to further perfect its lien. Notwithstanding any of the foregoing, the Replacement Lien shall not include any liens or claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549.

28. Nothing in the Stipulation shall be construed as or constitute a waiver or acquiescence of either Party's respective rights under the Loan Documents.

29. The Debtors shall maintain insurance on the Rental Properties and designate Secured Creditor as a loss payee or additional insured in accordance with the terms of the Loan Documents.

## II. COMPLIANCE WITH FRBP 4001(c) & LBR 4001-2

Pursuant to Rules 4001(b), 4001(c)(1)(B), and 4001(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 4001-2(b) and (d), the Debtors submit that the relief requested by the Debtors pertaining to the Stipulation and use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | **Cash Coll.** |
|---|---|
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No, though Secured Creditor can move for relief from stay upon default on shortened notice under certain circumstances. *See*, §11. |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement | No, though recording is not required for perfection of replacement lien. *See*, §8. |

| **Provision** | **Cash Coll.** |
|---|---|
| liens. | |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, applied first to interest, then to principal. §5. |
| Findings of fact on matters extraneous to the approval process. | No |

## III. DISCUSSION

### A. The Debtors Must Be Authorized to Use Cash Collateral to Operate, Maintain and Preserve the Property and Estate in Accordance with the Budget

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

A debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C.§ 363(c)(l). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. See 11 U.S.C. §§1107 & 1108.

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ." 11 U.S.C. §363(a). Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr.C.D.Cal.1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir.B.A.P.1991). In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr.D.N.H.1993), quoting In re Stein, 19 B.R. 458, 459. (Bankr.E.D.Pa.1982).

One source of revenue available to the Debtors to use to maintain and operate the Rental Properties is their cash on hand and cash collateral generated from the rents of the Rental Properties. If the Debtors are not permitted to use cash collateral to maintain and operate the Rental Properties, it is a virtual certainty that the Rental Properties will fall into disrepair, the value of the Rental Properties will drop, and the estate and creditors will be harmed.

The Rental Properties' operating expenses that the Debtors must be able to pay during the pendency of this case are set forth in the Budget through October 23, 2026. The Budget reflects

the Debtors' ordinary and necessary operating expenses for the Rental Properties that must be paid postpetition to preserve the Rental Properties' value and prevent post-petition interest, fees, costs, and penalties from accruing unnecessarily. While the Budget represents the Debtors' best estimates of such expenses, the needs of the Rental Properties may fluctuate. Thus, the Debtors seek authority to deviate from the total expenses contained in the Budget by no more than 15% on a line-item and cumulative basis without the need for further Court order.

**B. Secured Creditor Is Adequately Protected**

To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d 1396, 1400 (9th Cir.1984). See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir.1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr.C.D.Cal.l988) ("McCombs").

The concept of adequate protection is derived from the Fifth Amendment protection of property interests. Wright v. Union Central Life Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); Louisville Joint Stock Land Lender v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). The principle of adequate protection reconciles the competing interests of the debtor, who needs time to reorganize free from harassing creditors, and the secured creditor, which is entitled to constitutional protection for its bargained-for property interest. See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), 1978 U.S. Code Cong. & Admin. News, p. 5787; In re Jug End in the Berkshires, Inc., 46 B.R. 892 (Bankr.D.Mass.1985). Although the notion of adequate protection is derived from constitutional grounds, it also encompasses sound policy considerations. Secured creditors should not be deprived of the benefit of their bargain. In re Jug End in the Berkshires, Inc. at 899; In re Winslow Center Associates, 32 B.R. 685, 688 (Bankr. E.D. Pa. 1983).

Pursuant to the Supreme Court case of United Savings Association v. Timbers of Inwood Forest Associates, 108 S.Ct. 626, 629 (1988) and subsequent case law, the property interest that a

debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. See also McCombs, Id., at 266. Section 506(a) "limit[s] the secured status of a creditor (*i.e.*, the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." McCombs, Id., at 266. If an entity's claim exceeds the value of its interest in the property, only the interest is entitled to protection; the remainder of the claim is unsecured and does not give rise to an interest in property that requires protection. *See* 11 U.S.C. § 506(a); *Wright v. Union Central Life Ins. Co.*, 311 U.S. 278, 278; 61 S.Ct. 196, 199 (1940). Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 266 (Bankr. C.D. Cal. l988).

The Secured Creditor's secured interests will be adequately protected by the Debtors' ongoing maintenance of the properties that are their collateral. The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. In re Triplett, 87 B.R. 25 (Bankr.W.D.Tex.1988). See also In re Stein, 19 B.R. 458 (Bankr.E.D.Pa.1982). The Stein Court determined that the use of cash collateral was necessary to the continued operations of the debtor, and that the creditor's secured position could only be enhanced by the continued operation of the debtor's business. See also, In re McCombs, supra, where the court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

As reflected in the Budget, the Debtors' continued maintenance of the properties will adequately protect the Secured Creditor as the Debtors will continue to generate new revenue and preserve the value of the estate as a going concern. Other courts have determined that a debtor's continued business operations can constitute the adequate protection of a secured creditor. See Matter of Pursuit Athletic Footwear, Inc., 193 B.R. 713 (Bankr.D.Del.1996); In re Newark Airport/Hotel Ltd. Partnership, 156 B.R. 444, 450 (Bankr.D.N.J.1993); In re Dynaco,

162 B.R. 389, 394-5 (Bankr.D.N.H.1993); In re Immenhausen Corp., 164 B.R. 347, 352 (Bankr.M.D.Fla.1994).

Additionally, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization.

In In re O'Connor, supra, the Tenth Circuit stated:

> "In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration."

808 F.2d at 1937.

The use of cash collateral is critical to the Debtors' ability to implement an effective reorganization strategy for the benefit of all creditors. As demonstrated herein, the use of the Debtors' cash collateral, in accordance with the Budget, will preserve and maximize the Debtors' assets for the benefit of the estate and all creditors. If the Debtors are not permitted to use cash collateral to operate and maintain their properties, then value will be eviscerated to the severe prejudice of all the creditors of the estate.

**C. Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2.**

Pursuant to Rules 4001(b) and 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 4001-2(b) and (d), the Debtor submits that the relief requested by the Debtor pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | **Cash Coll.** |
|---|---|
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |

| **Provision** | **Cash Coll.** |
|---|---|
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No, though Secured Creditor can move for relief from stay upon default on shortened notice under certain circumstances. *See*, §11. |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No, though recording is not required for perfection of replacement lien. *See*, §8. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |

| **Provision** | **Cash Coll.** |
|---|---|
| | |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, applied first to interest, then to principal. §5. |
| Findings of fact on matters extraneous to the approval process. | No |

Pursuant to Bankruptcy Rules 4001(b)(1)(C) and 4001(c)(1)(C), the Debtors required to serve a copy of the Motion on any entity with an interest in the Debtors' cash collateral, Official Committee of Unsecured Creditors, and any other entity that the Court directs. The Debtors have complied with the foregoing by serving a copy of the Motion, the proposed order, the supporting declarations and other pleadings on the secured creditors, the Official Committee of Unsecured Creditors, the United States Trustee, and parties requesting special notice.

In addition, in compliance with Local Bankruptcy Rule 4001-2, the Debtors have filed concurrently herewith the mandatory Court-approved Form F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which discloses whether the proposed Order contains certain provisions of findings of fact. Accordingly, the Motion complies with the procedural requirements of Local Bankruptcy Rule 4001-2.

### F. Waiver of Any Applicable Stay is Appropriate

The Debtors request a waiver of the 14-day stay provided for under Bankruptcy Rule 6004 because the Debtors need to use cash collateral transaction as soon as possible to maintain the Debtors' properties for the benefit of the Debtors' estate. The Debtors request that any applicable stay, including the stay provided under Bankruptcy Rule 6004, be waived to allow Order on this Motion to become immediately effective.

## IV. <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request that this Court enter an order:

(1) affirming the adequacy of the Notice given herein;

(2) granting the Motion on a final basis;

(3) entering an order substantially in the form of the proposed order attached as **Exhibit 3** hereto;

(4) approving the Stipulation attached as **Exhibit 1** hereto;

(5) authorizing the Debtors to use cash collateral to pay all of the expenses set forth in the Budget attached as **Exhibit 2** hereto, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis;

(6) requiring the Debtors to provide monthly budget-to-actual variance reports to the Secured Creditor and Official Committee of Unsecured Creditors (the "Committee") on the 21st day of the month covering the previous month-ending period;

(7) requiring the extension of the Stipulation will be subject to notice to the Committee with an opportunity to object;

(8) requiring adequate protection payments under the Stipulation to be applied first to interest, then to principal;

(9) waiving the stay of FRBP 6004; and

(10) granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: October 7, 2026 Levene, Neale, Bender, Yoo & Golubchik L.L.P.

By: ___*/s/ John-Patrick M. Fritz*______
DAVID GOLUBCHIK
JOHN-PATRICK M. FRITZ
CARMELA T. PAGAY
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

## DECLARATION OF ANDREW STUPIN

I, Andrew Stupin, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am one of the chapter 11 debtors and debtors-in-possession in the above-captioned chapter 11 bankruptcy case.

3. I make this declaration in support of the Motion to which it is attached. Unless otherwise stated with specificity or implied by context, initial capitalized defined terms used in this declaration have the same meanings as ascribed to them in the Motion.

4. A true and correct copy of the Stipulation is attached as **Exhibit 1** hereto.

5. A true and correct copy of the Budget is attached as **Exhibit 2** hereto.

6. A true and correct copy of the proposed Order is attached as **Exhibit 3** hereto.

7. My wife, Julie Stupin ("Julie") (a "Debtor" and, collectively with me, "Debtors"), commenced our bankruptcy case by filing a voluntary petition under chapter on April 17, 2026, (the "Petition Date").

8. We continue to manage our financial affairs, operate our businesses, and administer our bankruptcy estate as debtors in possession.

9. I am a real estate investor.

10. I was born in 1947 in San Gabriel, California, and shortly thereafter moved to Monterey Park, where I excelled in school and sports. Wanting to be a professional baseball player, I excelled at my endeavors through high school and college where an injury forced me to change my future plans and aspirations.

11. Although my initial aspirations after sports were to become an attorney, my interests turned to teaching, so I pursued and obtained a secondary teaching credential after my B.A. Degree, including teaching Sunday School at my family church where I grew up.

12. I obtained a teaching position in the highly acclaimed Huntington Beach High School District at Edison High School right after receiving my teaching credential. Although

challenging, I enjoyed my new career, including being voted "Teacher of the Year" several times. I helped start the Advanced Placement (AP) for Government in Orange County, where a student can take an AP class and take the national AP test to gain college credits while in high school. This program was very successful and has gained popularity over the years throughout the country.

13. In the 1970's, I started my journey in real estate. After saving money from my teaching career, I bought my first investment for $28,000 – two (2) separate houses on two (2) lots. That was in 1972 and prices were starting to increase rapidly in the "Great Orange County" boom. I lived in one house and rented out the other. The rent from the rental was more than the mortgage. It was then that I caught the real estate bug and thought this to be something to move forward on.

14. Over the decades, I invested in many properties not only throughout Orange County, but California and other states. I always focused on value added and income generating properties. Over time, many friends and others asked to invest alongside me in such investments. My success continued to grow.

15. Approximately 10 years ago, my friend and co-investor, Gerald Marcil, and I were approached by a third party (Mahender Makhijani) who represented that he had connections with many lenders to acquire distressed loans and real estate. He proposed to work together to acquire loans and properties.

16. Through our relationship, Mr. Makhijani maintained all relationships with lenders and financing sources and managed the investments. Mr. Makhijani's staff at Continuum provided all accounting and documentation and financing with respect to such investments.

17. In the last several years, Mr. Makhijani obtained numerous warehouse loans from lenders including, without limitation, approximately $98 million from Western Alliance Bank, and approximately $60 million from Zions Bank. Mr. Makhijani represented to the lenders that the purpose of the loans was to refinance existing properties and acquire new properties. The lenders assert that Mr. Marcil and I signed guaranties for such debts.

18. In the fall of 2025, I learned that the foregoing banks have sued me on account of the alleged guaranties based on the following:

a. Mr. Makhijani drew down on the entirety of the warehouse loans;

b. Mr. Makhijani did not use the proceeds of the warehouse loans to refinance the existing debt or to acquire new assets for the borrowers;

c. There is no information where the loan proceeds went or how they were utilized;

d. The lenders did not conduct title searches on any of the alleged properties to be refinanced;

e. The lenders did not request or receive reconveyances of alleged liens that were to be refinanced;

f. The lenders did not open escrows for any of the financing; and

g. The lenders did not conduct any due diligence while Mr. Makhijani withdrew almost $200 million without oversight, supervision or control.

19. In addition to the foregoing, I learned that Mr. Makhijani recorded fraudulent liens on my personal properties (held through wholly-owned LLC's) and pledged the fraudulent loans to Western Alliance Bank.

20. The foregoing conduct resulted in protracted litigation. It is important to point out that none of the collection lawsuits from the lenders have asserted that I engaged in any wrongful conduct. They simply assert that I am obligated for their self-inflicted losses through the alleged guaranty.

21. Approximately 90 days prior to the Petition Date, Zions Bank obtained a writ of attachment as to my assets. The timing of this case was intended to terminate the writ of attachment and preserve all assets for the benefit of all creditors.

22. Through this case, we intend to preserve and operate our assets while prosecuting claims against lenders and third parties for the damage caused to us and our assets. Pending the resolution of such actions, we intend to comply with our obligations as debtors in possession.

23. Accordingly, we determined in our reasonable business judgment that it was in the best interest of our estate to file this current bankruptcy case.

24. Julie and I own in our own personal names several residential and commercial rental properties generally described as 211, 213, 215, 217, 301, and 305 5th Street, Huntington Beach, CA 92648-5117 (collectively, the "Rental Properties") that generate rental income that is the collateral and cash collateral of Secured Income Fund ("Secured Creditor").

25. In order to maintain and operate the Rental Properties and continue to provide further rental income to the estate, the Debtors require the use of cash collateral.

26. Prepetition, we entered into loan agreements with Secured Creditor.

27. Secured Creditor is the current payee of a Promissory Note dated May 28, 2025, in the principal amount of $12,000,000.00 (the "Note") secured by a Deed of Trust of same date, which bears interest as specified therein. Monthly interest only installments are due each month on the first of the month in the amount of $109,900.00, and the loan is full due and payable on June 1, 2028. The indebtedness evidenced by the Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") executed and recorded in Orange County as document number 2025000154496 and which encumbers the real property generally described 211, 213, 215, 217, 219, 221, 223, 225, 227, 301, and 305 5th Street, Huntington Beach, CA 92648-5117 (the "Rental Properties") and legally described in Exhibit "A" to the Deed of Trust. The Properties consist of residential, commercial, and mixed-use buildings. True and correct copies of the Note and Deed of Trust are attached to the Stipulation as Exhibits "A" and "B", respectively, and incorporated herein by reference.

28. The rent generated from the Rental Properties constitutes the Cash Collateral of Secured Creditor.

29. The Secured Creditor and I have stipulated to the use of cash collateral and providing of adequate protection as set forth in the Stipulation.

30. Subject to the terms and conditions of the Stipulation, Secured Creditor and I agree that I am authorized to use Cash Collateral for the ordinary and necessary expenses (the "Expenses") set forth in the cash flow projections (the "Budget") attached as **Exhibit 2** hereto.

31. I shall remit adequate protection payments to Secured Creditor in the amount of net rents ("Net Rents") calculated as the gross rents actually collected, minus the Expenses actually paid, with such adequate protection payments to Secured Creditor paid no later than the 15th of each month. The first payment shall be made by no later than seven business days after the entry of an order (the "Order Date") approving the Stipulation, and shall include all the Net Rents from the Petition Date to last day of the month preceding the Order Date.

32. My use of Cash Collateral may be renewed upon subsequent stipulation with the Secured Creditor or by order of this Court.

33. As adequate protection, Secured Creditor shall receive a replacement lien (the "Replacement Lien") on all post-petition revenue generated from the Rental Properties to the same extent, priority, and validity that Secured Creditor's lien attached to the Cash Collateral. The Replacement Lien is valid, perfected, and enforceable and shall not be subject to dispute, avoidance, or subordination, and this Replacement Lien need not be subject to additional recording. The Secured Creditor is authorized to file a certified copy of any cash collateral order and any other necessary and related documents to further perfect its lien. Notwithstanding any of the foregoing, the Replacement Lien shall not include any liens or claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549.

34. Nothing in the Stipulation shall be construed as or constitute a waiver or acquiescence of either Party's respective rights under the Loan Documents.

35. I shall maintain insurance on the Rental Properties and designate Secured Creditor as a loss payee or additional insured in accordance with the terms of the Loan Documents.

36. I submit that the relief requested pertaining to the Stipulation and use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | **Cash Coll.** |
|---|---|

| **Provision** | **Cash Coll.** |
|---|---|
| Cross-collateralization clauses | No, except to the extent that cross-collateralization existed prepetition |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No, though Secured Creditor can move for relief from stay upon default on shortened notice under certain circumstances. *See*, §11. |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No, though recording is not required for perfection of replacement lien. *See*, §8. |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash | No |

| **Provision** | **Cash Coll.** |
|---|---|
| collateral in the absence of the secured party's consent | |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No. Though the Stipulation provides for payment of adequate protection, applied first to interest, then to principal. §5. |
| Findings of fact on matters extraneous to the approval process. | No |

37. I request that the Court grant the Motion.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on October 7, 2026, at Huntington Beach, California.

ANDREW STUPIN

# EXHIBIT "1"

DAVID B. GOLUBCHIK (State Bar No. 185520)
JOHN-PATRICK M. FRITZ (State Bar No. 245240)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.COM; JPF@LNBYG.COM; CTP@LNBYG.COM

Attorneys for Chapter 11
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>ANDREW STUPIN and JULIE STUPIN,<br><br>Debtors and Debtors in Possession. | Case No.: 8:26-bk-11202-SC<br><br>Chapter 11 Case<br><br>**STIPULATION AND AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE**<br><br>**SECURED CREDITOR: SECURED INCOME FUND**<br><br><u>Hearing on Regular Notice</u>:<br>Date: October 28, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

Andrew Stupin and Julie Stupin (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, chapter 11 bankruptcy case, on the one hand, and Secured Income Fund II ("Secured Creditor") on the other hand, by and through their respective undersigned counsel of record, hereinafter each a "Party" and, collectively, the "Parties," hereby stipulate and agree as follows:

## RECITALS

A. The Debtors commenced their bankruptcy cases by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code") on April 17, 2026, (the "Petition Date").

B. The Debtors continue to manage their financial affairs, operate their businesses, and administer their bankruptcy estate as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. Secured Creditor is the current payee of a Promissory Note dated May 28, 2025 in the principal amount of $12,000,000.00 (the "Note") secured by a Deed of Trust of same date, which bears interest as specified therein. Monthly interest only installments are due each month on the first of the month in the amount of $109,900.00 and the loan is full due and payable on June 1, 2028. The indebtedness evidenced by the Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") executed and recorded in Orange County as document number 2025000154496 and which encumbers the real property generally described 211, 213, 215, 217, 219, 221, 223, 225, 227, 301, and 305 5th Street, Huntington Beach, CA 92648-5117 (the "Rental Properties") and legally described in Exhibit "A" to the Deed of Trust. The Properties consist of residential, commercial, and mixed-use buildings. True and correct copies of the Note and Deed of Trust are attached hereto as Exhibits "A" and "B", respectively and incorporated herein by reference.

D. The Debtors' require the use of rents generated from the Rental Properties and that are Secured Creditor's cash collateral to operate the Rental Properties, which are the collateral for the Secured Creditor's secured claim.

E. Based upon the Secured Creditor's secured liens against the Rental Properties, including but not limited to, rent and cash collateral, the Debtors have requested that the Secured Creditor stipulate and permit the Debtors to use cash collateral through October 23, 2026, on the terms and conditions set forth below.

F. Pursuant to this Stipulation and subject to further order of this Court, the Secured Creditor has agreed to permit the Debtors to use cash collateral consistent with the terms and conditions set forth below.

## STIPULATION

1. The recitals set forth above are incorporated herein by reference as though set forth in full.

2. Subject to the terms and conditions of this Stipulation, the Parties agree that the rent generated from the Rental Properties constitutes the cash collateral ("Cash Collateral") of Secured Creditor, pursuant to 11 U.S.C. §§ 361, 362, 363(a), (c)(2), and (e).

3. Subject to the terms and conditions of this Stipulation, the Parties agree that the Debtors are authorized to use Cash Collateral for the ordinary and necessary expenses set forth in the cash flow projections (the "Budget") attached as **Exhibit 1** hereto for the dates set forth therein.

4. The Debtors shall remit adequate protection payments to Secured Creditor in the amount of net rents ("Net Rents") calculated as the gross rents actually collected, minus the Expenses actually paid, with such adequate protection payments to Secured Creditor paid no later than the 15th of each month. The first payment shall be made by no later than seven business days after the entry of an order (the "Order Date") approving this Stipulation, and shall include all the Net Rents from the Petition Date to the end of the month preceding the Order Date.

5. Adequate protection payments to Secured Creditor will be applied first to interest, then to principal.

6. The Debtors will provide budget-to-actual variance reporting to Secured Creditor and the Official Committee of Unsecured Creditors ("Committee") on a monthly basis by the 21st day of the month and covering the weeks in the prior month.

7. The Debtors' use of Cash Collateral may be renewed upon subsequent stipulation with the Secured Creditor or by order of this Court; however, any further extensions by stipulation will be subject to notice to the Committee and an opportunity for the Committee to object.

8. As adequate protection, Secured Creditor shall receive a replacement lien (the "Replacement Lien") on all post-petition revenue generated from the Rental Properties to the same extent, priority, and validity that Secured Creditor's lien attached to the Cash Collateral. The Replacement Lien is valid, perfected, and enforceable and shall not be subject to dispute, avoidance, or subordination, and this Replacement Lien need not be subject to additional recording. The Secured Creditor is authorized to file a certified copy of any cash collateral order and any other necessary and related documents to further perfect its lien. Notwithstanding any of the foregoing, the Replacement Lien shall not include any liens or claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549.

9. Nothing in this Stipulation shall be construed as or constitute a waiver or acquiescence of either Party's respective rights under the Loan Documents.

10. The Debtors shall maintain insurance on the Rental Properties and designate Secured Creditor as a loss payee or additional insured in accordance with the terms of the Loan Documents.

11. Default; Remedies Upon Default.

(a) The occurrence of any of the following shall be an event of default under this Stipulation:

(i) Default In Performance. Any failure of the Debtor to perform fully or satisfy the promises, duties, covenants, reporting requirements, provisions or terms of this Stipulation or any breach of a representation or warranty herein shall be an event of default under this Stipulation unless timely cured (where cure is permitted and is possible).

A default under this Stipulation shall entitle Secured Creditor to immediately seek Bankruptcy Court authority to enforce all of its rights and remedies and for relief from stay to commence or complete foreclosure on the Rental Properties and/or obtain its Cash Collateral, as detailed below. **Said motion may be brought on shortened seven (7) day notice and notice and opportunity to cure, as applicable, if the Court does not have a regularly scheduled hearing date available within 30 days of Secured Creditor providing notice of the default.**

(ii). Dismissal/Conversion. Any conversion of the above-entitled case shall be a default hereunder also entitling Secured Creditor to seek Bankruptcy Court authority to exercise any and all rights and remedies under this Stipulation on shortened notice pursuant to paragraph 9(a)(i), above. A dismissal of the case or any lifting of the stay as to the Rental Properties by operation of law shall immediately rescind any authorization for use of cash collateral and Secured Creditor can proceed with all rights and remedies allowed under state law.

(b) Upon the occurrence of an event of default Secured Creditor shall provide the Debtor through Debtor's counsel of record (if applicable) with written notice stating that a default has occurred (which notice may be given by facsimile transmission or electronic mail). Unless a cure period is otherwise waived in this Stipulation, upon the failure of the Debtor to cure such default by 5:00 p.m. on the seventh business day following the day on which such notice is given, the Debtor's right to use cash collateral shall terminate at such time, unless the Bankruptcy Court has issued an order authorizing use of cash collateral.

(c) In the event that a default is not cured within its specified period, the parties hereto agree that, subject to approval of the Court, Secured Creditor may apply for an order permitting relief from the automatic stay to foreclose on the real Property and/or obtain the Cash Collateral and any collateral given to lender as a replacement lien or otherwise under this Agreement, upon

seven days' written notice <u>if the Court does not have a regularly scheduled hearing date available within 30 days of Secured Creditor providing notice of the default</u> to the Debtors, its counsel, a Trustee if any, the U.S. Trustee, counsel for the Committee or, if such committee is disbanded or not formed, the twenty largest unsecured creditors and other persons or entities who have requested notice in this Case. Such notice may be by email transmission or by facsimile transmission if such transmission is available, but otherwise shall be by such means as may be available to permit expedited delivery. Pending the determination of the motion of Secured Creditor. Debtors shall have no right to use any of the Cash Collateral or any subsequent collateral given to Secured Creditor under this Agreement, unless authorized by the Bankruptcy Court. Nothing herein shall prohibit the Debtor from making a motion before the Bankruptcy Court to request continued use of Cash Collateral.

10. This Stipulation shall inure to the benefit of and shall be binding upon the Parties, their successors, and assigns.11. The Parties to this Stipulation represent and warrant that each has reviewed and understands its terms and contents. The Parties to this Stipulation further represent and warrant that each has the power to execute, deliver, and perform this Stipulation, that each has taken all necessary action to authorize the execution, delivery, and performance of this Stipulation, and that this Stipulation is enforceable in accordance with its terms.

12. The terms of this Stipulation may not be modified, altered, or changed without the express written consent of the Parties.

13. This Stipulation contains the entire understanding between the Parties, supersedes any prior written or oral agreements between them respecting the subject matter contained herein, and all prior negotiations concerning such subject matter are merged into this Stipulation. There are no representations, agreement, arrangements, or understandings, oral or written, between the Parties relating to the subject matter of this Stipulation that are not fully expressed herein.

14. This Stipulation may be executed in any number of identical counterparts, each of which together shall be deemed to be an original, and all of which together shall be deemed to be one and the same instrument when each party has signed one such instrument.

15. Facsimile or electronic mail signature to this Stipulation shall be sufficient to bind the party an will have the same force and effect as an original.

16. The Court shall retain jurisdiction to resolve any disputes arising regarding the enforcement and interpretation of this Stipulation.

17. The Parties will bear their own attorneys' fees, costs, and expenses in connection with this Stipulation, except to the extent that the Loan Documents otherwise allow for attorneys' fees and costs between the Parties.

Dated: October __, 2026

Andrew Stupin & Julie Stupin

By: *_/s/ John-Patrick M. Fritz_*
DAVID GOLUBCHIK
JOHN-PATRICK M. FRITZ
CARMELA T. PAGAY
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtors and Debtors in Possession

Dated: October 7, 2026

Secured Income Fund II

By: ______________________
JOSHUA L. SCHEER
SCHEER LAW GROUP, LLP
Attorneys for Secured Income Fund II

# EXHIBIT "2"

**Andrew & Julie Stupin Cash Collateral Budget**
**Secured Income Fund-II**
**211, 213, 215, 305, 301-303, and 217-227 5th St**

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 05/01/26 | 05/08/26 | 05/15/26 | 05/22/26 | 05/29/26 | 06/05/26 | 06/12/26 | 06/19/26 | 06/26/26 | 07/03/26 | 07/10/26 | 07/17/26 | 07/24/26 | Weeks 1-13 |
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Property Income | $ - | $ 51,637 | $ - | $ - | $ - | $ 51,637 | $ - | $ - | $ - | $ - | $ 51,637 | $ - | $ - | $ 154,911 |
| **Total Cash Receipts** | **-** | **51,637** | **-** | **-** | **-** | **51,637** | **-** | **-** | **-** | **-** | **51,637** | **-** | **-** | **154,911** |
| **Disbursements** | | | | | | | | | | | | | | |
| Rental Mortgages | - | (39,591) | - | - | - | (42,630) | - | - | - | - | (41,700) | - | - | (123,921) |
| Rental Property Operating Expenses | - | (3,513) | - | - | - | (3,513) | - | - | - | - | (3,513) | - | - | (10,538) |
| Management Fees | - | (3,098) | - | - | - | (3,098) | - | - | - | - | (3,098) | - | - | (9,295) |
| Insurance | - | (877) | - | - | - | (877) | - | - | - | - | (877) | - | - | (2,631) |
| Utilities | - | (1,519) | - | - | - | (1,519) | - | - | - | - | (1,519) | - | - | (4,558) |
| Utility Deposits | - | - | (3,039) | - | - | - | - | - | - | - | - | - | - | (3,039) |
| **Total Disbursements** | **-** | **(48,598)** | **(3,039)** | **-** | **-** | **(51,637)** | **-** | **-** | **-** | **-** | **(50,708)** | **-** | **-** | **(153,982)** |
| **Operating Cash Flow** | **-** | **3,039** | **(3,039)** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **929** | **-** | **-** | **929** |
| **Restructuring Costs** | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | (929) | (929) |
| **Total Restructuring Costs** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(929)** | **(929)** |
| **Net Cash Flow** | **-** | **3,039** | **(3,039)** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **929** | **-** | **(929)** | **0** |

**Collateral Package Summary**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cumulative Net Cash Flow** | **-** | **3,039** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **929** | **929** | **(0)** | **(0)** |
| **Estimated Real Estate Value** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **22,000,000** |
| **Estimated Total Collateral Value** | **23,000,000** | **23,003,039** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,929** | **23,000,929** | **23,000,000** | **22,000,000** |
| **Debt Balance** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** |
| **Estimated Collateral in Excess of Debt** | **11,000,000** | **11,003,039** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,929** | **11,000,929** | **11,000,000** | **10,000,000** |

**Andrew & Julie Stupin Cash Collateral Budget**
**Secured Income Fund-II**
**211, 213, 215, 305, 301-303, and 217-227 5th St**

| Week # | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Cumulative | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 07/31/26 | 08/07/26 | 08/14/26 | 08/21/26 | 08/28/26 | 09/04/26 | 09/11/26 | 09/18/26 | 09/25/26 | 10/02/26 | 10/09/26 | 10/16/26 | 10/23/26 | Weeks 14-26 | Weeks 1-26 |
| | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget | Budget |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Rental Property Income | $ - | $ 51,637 | $ - | $ - | $ - | $ - | $ 51,637 | $ - | $ - | $ - | $ 51,637 | $ - | $ - | $ 154,911 | $ 309,822 |
| **Total Cash Receipts** | **-** | **51,637** | **-** | **-** | **-** | **-** | **51,637** | **-** | **-** | **-** | **51,637** | **-** | **-** | **154,911** | **309,822** |
| **Disbursements** | | | | | | | | | | | | | | | |
| Rental Mortgages | - | (42,630) | - | - | - | - | (42,630) | - | - | - | (41,235) | - | - | (126,495) | (250,416) |
| Rental Property Operating Expenses | - | (3,513) | - | - | - | - | (3,513) | - | - | - | (3,513) | - | - | (10,538) | (21,076) |
| Management Fees | - | (3,098) | - | - | - | - | (3,098) | - | - | - | (3,098) | - | - | (9,295) | (18,589) |
| Insurance | - | (877) | - | - | - | - | (877) | - | - | - | (877) | - | - | (2,631) | (5,262) |
| Utilities | - | (1,519) | - | - | - | - | (1,519) | - | - | - | (1,519) | - | - | (4,558) | (9,116) |
| Utility Deposits | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (3,039) |
| **Total Disbursements** | **-** | **(51,637)** | **-** | **-** | **-** | **-** | **(51,637)** | **-** | **-** | **-** | **(50,243)** | **-** | **-** | **(153,517)** | **(307,498)** |
| **Operating Cash Flow** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **1,394** | **-** | **-** | **1,394** | **2,324** |
| **Restructuring Costs** | | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | (1,394) | (1,394) | (2,324) |
| **Total Restructuring Costs** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(1,394)** | **(1,394)** | **(2,324)** |
| **Net Cash Flow** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **1,394** | **-** | **(1,394)** | **(0)** | **0** |

**Collateral Package Summary**

| | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Cumulative Weeks 14-26 | Cumulative Weeks 1-26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cumulative Net Cash Flow** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **(0)** | **1,394** | **1,394** | **(0)** | **(0)** | **(0)** |
| **Estimated Real Estate Value** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **22,000,000** | **22,000,000** |
| **Estimated Total Collateral Value** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,000,000** | **23,001,394** | **23,001,394** | **23,000,000** | **22,000,000** | **22,000,000** |
| **Debt Balance** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** | **12,000,000** |
| **Estimated Collateral in Excess of Debt** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,000,000** | **11,001,394** | **11,001,394** | **11,000,000** | **10,000,000** | **10,000,000** |

# EXHIBIT "3"

DAVID B. GOLUBCHIK (State Bar No. 185520)
JOHN-PATRICK M. FRITZ (Sate Bar No. 245240)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.COM; JPF@LNBYG.COM; CTP@LNBYG.COM

Attorneys for Chapter 11
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>ANDREW STUPIN and JULIE STUPIN,<br><br>Debtors and Debtors in Possession. | Case No.: 8:26-bk-11202-SC<br><br>Chapter 11 Case<br>Subchapter V<br><br>**ORDER APPROVING STIPULATION AND AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE**<br><br>**SECURED CREDITOR: SECURED INCOME FUND**<br><br><u>Hearing on Regular Notice</u>:<br>Date: October 28, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701 |

On October 28, 2026, at 1:30 p.m., the Honorable Scott Clarkson, United States Bankruptcy Judge for the Central District of California (the "Court"), held a hearing (the "Hearing") in Courtroom 5C of the United States Bankruptcy Courthouse located at 411 West Fourth Street, Santa Ana, California, to consider the "*Notice of Motion and Motion for Order Approving Stipulation and Authorizing Use of Cash Collateral and Providing Adequate Protection Pursuant to Sections 361 and 363 of the Bankruptcy Code*" (the "Motion") filed by Andrew Stupin and Julie Stupin (each a "Debtor" and, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, chapter 11 bankruptcy case, in relation to the cash collateral of secured creditor Secured Income Fund ("Secured Creditor"). Appearances were made as set forth on the Court's record of the hearing.

The Court, having read and considered the Motion and all papers in support of the Motion, including the declaration of Andrew Stupin (the "Declaration"), the statements of counsel made orally at the Hearing, the record in the case, the docket in the case, and for good cause appearing, therefor,

**HEREBY FINDS** that notice of the Motion and Hearing were good and proper under the circumstances and pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules, and

**HEREBY ORDERS AS FOLLOWS:**

(1) The Motion is granted as set forth in this Order;

(2) The Stipulation is approved;

(3) The Debtors are authorized to use cash collateral to pay all of the expenses set forth in the Budget, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis;

(4) The Debtors will provide monthly budget-to-actual variance reports to the Bank and Official Committee of Unsecured Creditors (the "Committee") on the 21st day of the month covering the previous month-ending period;

(5) Any extension of the Stipulation will be subject to notice to the Committee with an opportunity to object;

(6) Adequate protection payments under the Stipulation will be applied first to interest, then to principal; and

(7) The stay of FRBP 6004 is waived.

**SO ORDERED.**

###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled: **Notice Of Motion And Motion For Order Approving Stipulation And Authorizing Use Of Cash Collateral And Providing Adequate Protection Pursuant To Sections 361 And 363 Of The Bankruptcy Code; Memorandum Of Points And Authorities; Declaration Of Andrew Stupin In Support** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 7, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Scott R Albrecht salbrecht@gsaattorneys.com, jackie.nguyen@sgsattorneys.com
- Kyra E Andrassy kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- Raymond H. Aver ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com;jesus@averlaw.com
- Jessica L Bagdanov jbagdanov@bg.law, ecf@bg.law
- John Bistritz jack.bistritz@afslaw.com
- Michael E Bubman mbubman@mbn.law, aacosta@mbnlawyers.com
- Greg P Campbell ch11ecf@aldridgepite.com, gc@ecf.inforuptcy.com;gcampbell@aldridgepite.com
- Steven Casselberry Steve.Casselberry@procopio.com, jessica.perez@procopio.com;emily.marsh@procopio.com;calendaringbankruptcy@procopio.com;evangelina.myers@procopio.com;lauren.hill@procopio.com
- David Coats dacoats@raslg.com
- Marcus Colabianchi mcolabianchi@duanemorris.com, marcus-colabianchi-2595@ecf.pacerpro.com
- Michael G D'Alba mgd@lnbyg.com
- Ryan J DeRose ryan@parkandlim.com, cathy@parkandlim.com,shelley@parkandlim.com
- William B Freeman bill.freeman@katten.com, nicole.jones@kattenlaw.com,ecf.lax.docket@kattenlaw.com
- John-Patrick M Fritz jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com
- Amir Gamliel amir.gamliel@ashurstperkins.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- Craig S Ganz ganzc@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Nichole Glowin bankruptcy@zbslaw.com, nglowin@ecf.courtdrive.com
- Robert P Goe rgoe@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- David B Golubchik dbg@lnbyg.com, dbg@lnbyg.com
- Arnold L Graff agraff@wrightlegal.net, nvbkfiling@wrightlegal.net;jpowell@wrightlegal.net
- Adam M Greely agreely@fbfk.law, dstolar@vrslaw.net
- Steven T Gubner
- Steven T Gubner sgubner@bg.law, ecf@bg.law
- Sarah Rose Hasselberger shasselberger@marshackhays.com, shasselberger@ecf.courtdrive.com;cbastida@marshackhays.com;alinares@ecf.courtdrive.com
- Golsa Honarfar ghonarfar@rutan.com, dmircheff@rutan.com
- Mark S Horoupian mark.horoupian@gmlaw.com, mhoroupian@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;karen.files@gmlaw.com;courtmail@gmlaw.com

- Robert B. Kaplan rkaplan@jeffer.com, rbk@ecf.courtdrive.com
- Lior Katz lior@katzlaw.com
- Ira David Kharasch ikharasch@pszjlaw.com
- Daniel A Lev daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com;courtmail@gmlaw.com
- Marc A Lieberman marc.lieberman@flpllp.com, addy@flpllp.com,ethan@flpllp.com
- Aaron J Malo amalo@sheppardmullin.com, hudenka@sheppard.com;mlinker@sheppard.com
- Sam Maralan sm@maralanlaw.com
- Matthew J Marino mmarino@allenmatkins.com, csandoval@allenmatkins.com
- Elissa Miller elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;courtmail@gmlaw.com
- Kenneth Misken Kenneth.M.Misken@usdoj.gov
- John A Moe john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
- Arlen Moradi arlen.moradi@katten.com, courtalertlax@katten.com
- Michael S Myers myersm@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- Alan I Nahmias anahmias@mbn.law, jdale@mbn.law
- Aram Ordubegian ordubegian.aram@arentfox.com
- Carmela Pagay ctp@lnbyg.com
- David M Poitras dpoitras@bg.law
- Thomas J Polis tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Joseph M Rothberg jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
- Joshua L Scheer jscheer@scheerlawgroup.com, jscheer@ecf.courtdrive.com
- Daren M Schlecter daren@schlecterlaw.com, assistant@schlecterlaw.com
- Zev Shechtman Zev.Shechtman@saul.com, Zev.Shechtman@ecf.courtdrive.com;hannah.richmond@saul.com;LitigationDocketing@saul.com;Shelly.Guise@saul.com;Isaiah.Bribiesca@saul.com
- Robyn B Sokol robyn.sokol@stinson.com, lydia.moya@stinson.com;dbender@leechtishman.com;jnaiya.herd@stinson.com
- Michael G Spector mgspector@aol.com, mgslawoffice@aol.com
- Martin W Taylor marty.taylor@bclplaw.com, shawn.williams@bclplaw.com,marty-taylor-5681@ecf.pacerpro.com
- Alan G Tippie Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- Jennifer R Tullius jtullius@tulliuslaw.com
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Christopher A Ward cward@lowenstein.com, lsuprum@lowenstein.com
- Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;spineda@ecf.courtdrive.com;alinares@ecf.courtdrive.com

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **October 7, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.
*X - See attached list*

*Honorable Scott C. Clarkson*
*United States Bankruptcy Court*
*411 West Fourth Street, Suite 5130 / Courtroom 5C*
*Santa Ana, CA 92701-4593*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 7, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 7, 2026 | J. Klassi | */s/ J. Klassi* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

Andrew & Julie Stupin - #11155 – Secured

Clearedge Lending
20 Enterprise, Suite 300
Aliso Viejo, CA 92656

Comerica Bank
1717 Main Street
Dallas, TX 75201

County of Orange
P.O. Box 1438
Santa Ana, CA 92702-1438

First Bank
Attn: Payment Processing
PO Box 790269
Saint Louis, MO 63179

First Bank
Attn: Payment Processing
PO Box 790269
Saint Louis, MO 63179

First Bank
Attn: Payment Processing
PO Box 790269
Saint Louis, MO 63179

First Choice Bank
17785 Center Court Drive, Suite 750
Cerritos, CA 90703

Rocket Mortgage
PO Box 6577
Carol Stream, IL 60197-6577

Secured Income Fund-II c/o
PLM Lender Services, Inc
5446 Thornwood Drive,2nd Floor
San Jose, CA 95123

The Evergeen Advantage
1424 4th Street, Suite 777
Santa Monica, CA 90401

VL Ventures LLC
1303 Avocado Av, Suite 200
Newport Beach, CA 92660