FILED & ENTERED

NOV 03 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

In re:

Andrew Stupin and
Julie Stupin,

Debtor(s).

Case No.: 8:26-bk-11202-SC

CHAPTER 11

**MEMORANDUM DECISION ON MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS [Dk. 329]**

Vacated hearing:
Date: November 4, 2026
Time: 1:30 PM
Courtroom: 5C

The Court has considered the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Dk. 329], the supporting declaration [Dk. 330], the United States Trustee's objection [Dk. 387], the Committee's reply [Dk. 420], the Debtors' joinder [Dk. 423], and the record in this case. Finding oral argument unnecessary under Local Bankruptcy Rule 9013-1(j)(3), the Court VACATES the November 4, 2026 hearing and GRANTS the Motion as set forth herein.

## I. Introduction

The Official Committee of Unsecured Creditors (the “Committee”) moves for an order permitting professionals employed in this case to receive monthly payments of 80% of their fees and 100% of their expenses, subject to objection, holdback, later interim and final review, and disgorgement (the “Motion”) [Dk. 329, 330]. The Debtors join [Dk. 423]. The United States Trustee objects that the Committee has not made the showing required by *In re Knudsen Corp.*, 84 B.R. 668 (B.A.P. 9th Cir. 1988), and alternatively asks that any monthly payments be held in trust until allowed [Dk. 387]. The Committee replied [Dk. 420]. No creditor opposed.

For the reasons below, the Court overrules the objection in substantial part and grants the Motion as modified in Part IV.

## II. Background

The Debtors filed this chapter 11 case on April 17, 2026, and remain debtors in possession. The United States Trustee appointed the Committee on May 21, 2026 [Dk. 62]. The Debtors’ amended schedules list approximately $70 million in liabilities, plus substantial disputed, contingent and unliquidated claims, and more than $90 million in assets before valuing their interests in dozens of limited liability companies [Dk. 68; Dk. 330 ¶ 5]. The Debtors hold interests in more than 15 real properties, directly or through a trust, and several of their entities own real estate. *Id.* The Debtors and the Committee are pursuing a real estate sale process and will propose a plan.

The Court has approved the Committee’s employment of Pachulski Stang Ziehl & Jones LLP [Dk. 212] and FTI Consulting, Inc. [Dk. 289]. The Debtors have sought to employ general bankruptcy counsel, a financial advisor, special white-collar and investigations counsel, special tax counsel, and accountants [Dk. 330 ¶ 8].

On October 26 and 27, 2026, seven professionals filed first interim fee applications covering the petition date through September 30, 2026 [Dks. 411-417]. Together they request more than $4.4 million in fees and expenses for more than 5,700 hours.

**III. Discussion**

**A. The Court has authority to approve monthly payment procedures.**

Section 331 allows professionals to apply for interim compensation every 120 days “or more often if the court permits.” 11 U.S.C. § 331. In *Knudsen*, the Ninth Circuit Bankruptcy Appellate Panel held that, in certain cases and with adequate safeguards, a bankruptcy court may authorize professionals to be paid periodically before allowance, as a retainer under § 328(a), provided all such payments remain subject to review and repayment until final allowance. 84 B.R. at 670-73. LBR 2016-1(b) likewise contemplates that a chapter 11 professional may request draw-down procedures and payment of interim compensation more often than every 120 days.

The United States Trustee’s contention that the procedures contravene the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the UST guidelines is not correct as a general proposition. The objection raises substantial concerns about payment before allowance, but *Knudsen* recognizes a narrow exception when the requisite findings and safeguards are present. The question is whether the *Knudsen* findings can be made on this record, and the Court does not rely on § 105(a), which cannot supply authority the Code does not otherwise give.

**B. The *Knudsen* findings.**

*Knudsen* requires findings that (1) the case is unusually large and an exceptionally large amount of fees accrues each month; (2) waiting an extended period for payment would place an undue hardship on the professionals; (3) the professionals can respond to any reassessment; and (4) the procedure is itself the subject of a noticed hearing before any payment. 84 B.R. at 672-73. The movant bears the burden. The fourth factor requires a noticed hearing on the procedure; the Court addresses below whether oral argument is necessary after notice and a full opportunity to be heard.

The United States Trustee fairly observes that the Motion, as filed, said little more than that fees “may be significant.” The record now includes the interim fee

applications at Dk. 411-417. The Court takes judicial notice of its own docket, Fed. R. Evid. 201, for the fact and amount of the requested fees, not for their reasonableness. The amounts requested bear directly on how much accrues each month, which is what the first factor asks.

1. *Unusually large case; exceptionally large monthly fees.* This is not a typical individual chapter 11 case. It involves roughly $70 million in scheduled liabilities, more than $90 million in scheduled assets, interests in many real properties and dozens of entities, significant contingent claims including bank indemnity claims, special white-collar and tax issues, and a multi-property sale process. Professional fees have averaged more than $750,000 a month in the aggregate, and more than that measured from each professional's actual retention date. The United States Trustee points to the $250,000 monthly figure in *Knudsen*, 84 B.R. at 672 n.6, and argues it must be adjusted for inflation. Even so adjusted, the aggregate monthly accrual here is comparable or greater. The case also appears to meet the threshold the United States Trustee's own Appendix B guidelines use to identify larger chapter 11 cases: $50 million or more in both assets and liabilities. The first finding is made.

2. *Undue hardship.* The Court agrees with the United States Trustee that the ordinary inconvenience of waiting for payment cannot satisfy this factor; if it did, the exception would swallow the rule. The hardship here is of a different order. At the current run rate, a 120-day cycle, plus the time needed to notice, hear and enter an order on each application, would leave roughly $3 million or more in earned but unpaid fees outstanding at any time. The record does not establish the finances of each participating firm. The finding rests instead on the magnitude of the unpaid fees, the number and nature of retained professionals, and the resulting need for professionals collectively to finance substantial estate administration costs. That is the situation *Knudsen* described: professionals compelled to finance the reorganization, a result the Panel called improper and contrary to congressional intent. 84 B.R. at 672; *see also In re Commercial Consortium of Cal.,* 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991)

(professionals entitled to payment on a basis comparable to privately retained counsel in both timing and amount). The second finding is made.

3. *Ability to respond to reassessment.* Payment of only a percentage of fees billed is one of the methods *Knudsen* identified for assuring repayment. 84 B.R. at 672. The procedures hold back 20% of fees, preserve all objections, and make every payment subject to disgorgement until final allowance. Because the Committee emphasizes that several professionals are small firms, the Court adds one safeguard. Before receiving its first payment, each participating professional must certify, on personal knowledge after reasonable inquiry, that it has the financial ability to repay amounts the Court may order disgorged, and must promptly notify the Debtors and United States Trustee if that representation ceases to be accurate. A professional that cannot so certify may still use the procedures but must hold payments in a client trust account until the related interim fee application is allowed. With that modification, the third finding is made.

4. *Noticed hearing*. The Motion was served with notice of opportunity to request a hearing [Dk. 331], the United States Trustee requested a hearing, and the hearing was noticed to creditors and parties in interest [Dk. 392]. The parties received notice and a meaningful opportunity to be heard; the United States Trustee filed a substantive objection and the Committee replied. Under 11 U.S.C. § 102(1), “after notice and a hearing” permits action without an actual hearing when appropriate under the circumstances. The Court concludes that oral argument would not assist resolution of the legal and record-based issues presented. The fourth finding is made.

**C. The United States Trustee’s alternative.**

The Court declines to require all professionals to hold monthly payments in trust pending each interim application. Trust holding is one of the *Knudsen* methods for assuring repayment, and the Court adopts it as the fallback for any professional that cannot certify its ability to repay. As a universal requirement, it would leave professionals financing the case, which is the hardship the second finding addresses.

The holdback, the two objection opportunities, the certification and the disgorgement provision adequately protect the estate.

**D. Equal treatment and continued scrutiny.**

These procedures change only when professionals are paid, not the standard under which their fees are allowed. Every dollar paid remains subject to review under § 330 on interim and final applications, and interim payments are subject to later adjustment. *See Knudsen*, 84 B.R. at 672 n.5 (procedure does not mean reduced scrutiny). The procedures apply equally to every professional whose employment has been approved.

**IV. Ruling and modifications**

The objection is OVERRULED except to the extent adopted in paragraph 4 below. The Motion is GRANTED, and the Interim Compensation Procedures are approved as modified:

1. Start date. The procedures apply to fees and expenses incurred on and after October 1, 2026. Fees and expenses through September 30, 2026 will be addressed through the pending interim applications [Dks. 411-417]. Proposed ¶ (a)'s first-statement period is deleted.
2. Eligible professionals. Only professionals whose employment under § 327 or § 1103 has been approved by order may participate, and only for services after the effective date of employment. Professionals compensated on a commission, contingency or fixed-fee basis under § 328 (including real estate brokers) are excluded unless their employment order provides otherwise.
3. Holdback and objections. As proposed: 80% of fees and 100% of expenses; 14-day objection period; only disputed amounts withheld.
4. Repayment certification. Before its first payment, each professional files a declaration that it has the financial ability to repay any amount later ordered disgorged. A professional that does not file one holds all payments in a client trust account until the Court allows the related interim fee application.

5. Source of payment. Payments may be made only from estate funds that are not cash collateral, or from cash collateral under a stipulation or order authorizing that use. Any dispute about whether the Debtors have sufficient funds is resolved by motion on regular notice.
6. Mandatory interim applications. Each participating professional must file an interim fee application at least once every 120 days, covering all monthly statements and holdbacks for the period. A professional that does not file on time receives no further monthly payments until it does.
7. Reporting. The Debtors' monthly operating reports must state each payment made to each professional under these procedures.
8. Notice. Under Fed. R. Bankr. P. 2002(i), notice of hearings on interim fee applications may be limited to the Notice Parties and parties who have requested special notice. Final fee applications require notice under Fed. R. Bankr. P. 2002(a)(6).
9. No effect on allowance. No payment, and no failure to object, binds the Court or any party at interim or final allowance. All payments remain subject to disgorgement until final allowance.
10. Modification. Any party in interest may move to modify or terminate the procedures, including as to a particular professional, on regular notice.

The Committee shall lodge a revised order consistent with this decision within 7 days, after giving the United States Trustee and the Debtors an opportunity to review its form. The revised order must delete the recital that no opposition was filed.

**IT IS SO ORDERED.**

Date: November 3, 2026

Scott C. Clarkson
United States Bankruptcy Judge